1  Stephen D. Finestone (125675)
   Jennifer C. Hayes (197252)
2  Kimberly S. Fineman (184433)
3  FINESTONE HAYES LLP
   456 Montgomery Street, 20th Floor
4  San Francisco, California 94104
   Tel. (415) 421-2624
5  Fax (415) 398-2820
   sfinestone@fhlawllp.com
6

7  Counsel for Debtor
   Professional Technical Security Services, Inc.
8

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12 | In re                                | Case No. 22-30062

13 | PROFESSIONAL TECHNICAL               | Chapter 11
   | SECURITY SERVICES, INC.              |
14 | dba PROTECH BAY AREA,                | **DEBTOR'S MOTION FOR ENTRY OF**
                                          | **AN ORDER (I) AUTHORIZING THE**
15 |          Debtor.                     | **SALE OF SUBSTANTIALLY ALL OF**
                                          | **DEBTOR'S ASSETS FREE AND CLEAR**
16                                        | **OF LIENS, (II) APPROVING THE**
                                          | **ASSIGNMENT OF EXECUTORY**
17                                        | **CONTRACTS, (III) ALLOWING**
                                          | **PAYMENT OF COMPROMISED FEE**
18                                        | **TO B. RILEY UPON CLOSING AND**
                                          | **(IV) GRANTING RELATED RELIEF**
19
20                                        **LIENS AFFECTED BY THIS MOTION:**
21                                        **City National Bank**
                                          **Internal Revenue Service**
22                                        **City and County of San Francisco**
                                          **Toyota Motor Credit**
23

24                                        TBD - Requested Hearing Date:
                                          Date:   September 22, 2022
25                                        Time:  10:00 am
                                          Judge: Hon. Hannah L. Blumenstiel
26                                        Place:  Remote appearances only

27                                        *Please check* www.canb.uscourts.gov *for*
                                          *information regarding the Court's operations due*
28                                        *to the COVID-19 pandemic*

# Table of Contents

I. JURISDICTION AND VENUE ...................................................................... 3

II. RELIEF REQUESTED ................................................................................. 3

III. BACKGROUND ......................................................................................... 4

    Table Summarizing Secured Claims............................................................4

    Table Summarizing Executory Contracts and Unexpired Leases.........................5

IV. SALE PROCESS, OFFERS, PROPOSED SALE AND CONTRACT ASSIGNMENTS. 7

    A. Marketing of Assets............................................................................7

    B. Sale Procedures.................................................................................8

    C. Offers Received, Proposed Sale and Reduced Fee to B. Riley. ............................ 9

    D. Related Lease Assumption Motion and Assignment ...................................... 12

V. BASIS FOR RELIEF ................................................................................. 13

    A. The Sale is Within the Sound Business Judgment of the Debtor and Should be Approved.............................................................................................13

    B. The Purchaser Should Be Entitled to the Protection of Section 363(m) of the Bankruptcy Code................................................................................................15

    C. The 363 Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code and Should be Approved Free and Clear of Any Liens, Claims, Interests, and Encumbrances. ... 15

    1. Purchased Assets could be Sold Free and Clear under Other Applicable Law. ................. 16

    2. Consent May Be Obtained by the Hearing. ....................................................... 17

    3. The Liens Are Subject to a Bona Fide Dispute. ................................................... 18

    4. The Court Should Authorize the Debtor to Hold the Proceeds Pending Resolution of the Lien Disputes.........................................................................................19

    D. The Assignment of Executory Contracts and Unexpired Leases Should be Approved. ... 20

    E. B. Riley's Agreed Reduced Fees Should Be Paid Upon Closing. ..................................... 23

VI. COMPLIANCE WITH GUIDELINES ..................................................... 24

VII. WAIVER OF BANKRUTPCY CODE RULE 6004(h) AND 6006(d)........................... 24

VIII. NOTICE .................................................................................................25

IX. CONCLUSION ....................................................................................... 25

Professional Technical Security Services Inc. ("Debtor") hereby files this motion (the "Sale Motion") for the entry of an order[1] (i) authorizing the sale (the "363 Sale")[2] of substantially all of the operating assets of the Debtor (the "Purchased Assets") to Paladin Security Group Ltd. or its designee (the "Purchaser" or "Paladin") free and clear of any and all liens, claims, and interests, particularly the liens of City National Bank, the Internal Revenue Service, the City and County of San Francisco and Toyota Motor Credit, (ii) approving the assumption and assignment of certain executory contracts and unexpired leases (the "Assigned Contracts") in connection therewith, (iii) allowing the payment of a reduced fee to B. Riley upon closing and (iv) granting related relief. Debtor respectfully states as follows in support of the motion:

## I. JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and B.L.R. 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The legal bases for the relief requested herein are section 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9014 and 9019 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Bankruptcy Local Rules 6004-1 and 6006-1.

## II. RELIEF REQUESTED

By this Sale Motion, Debtor requests the entry of an Order (i) authorizing the 363 Sale of the Purchased Assets to the Purchaser free and clear of all liens, claims, interests, and encumbrances; (ii) approving the assumption and assignment of the Assigned Contracts, (iii) allowing the payment of a reduced fee to B. Riley upon closing as a compromise facilitating the 363 Sale and (iv) granting

---

[1] By September 21st, the parties shall finalize and file with the Court (i) an asset purchase agreement incorporating the agreed terms described below (the "APA") and (ii) a proposed form of order approving this Sale Motion (the "Sale Order"). Debtor shall consult with the Official Committee of Unsecured Creditors (the "Committee") and secured creditor City National Bank ("CNB") regarding the same.

[2] A capitalized term used but not defined herein shall have the meaning ascribed in the Sale Procedures Motion [ECF No. 128].

related relief

III. **BACKGROUND**

   Debtor is a privately held, San Francisco-based security company, providing personalized and professional unarmed security services in high-rise and commercial properties. Debtor started with a handful of employees in 1994 and is now one of the largest regional providers of union-affiliated security services in the San Francisco Bay Area, with roughly 580 employees. Debtor's financial difficulties are a result of its rapid growth out-pacing its small-business infrastructure.

   On February 1, 2022, Debtor filed its voluntary petition for relief initiating this Bankruptcy Case (the "Petition Date"). The primary debts precipitating this bankruptcy case are taxes owing by Debtor. Debtor has very little traditional secured debt. There are only five asserted secured claims in this case:

| Secured Claims | | | | | |
|---|---|---|---|---|---|
| POC or Sch No. | Claimant Name | Basis of Claim | Total Claim Amount | Secured Portion of Total | Collateral Securing |
| Claim No. 14 | City National Bank | Commercial Loan dated 3/18/16 | $499,144.35 | $499,144.35 | All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles, Securities and Instruments |
| Claim No. 1 (as amended the 6th time on 8/25/22) | Internal Revenue Service | 2014-2022 FICA, FUTA, Corp, Penalty; Tax Liens recorded 4/3/18, 4/11/18, 10/7/21, 10/19/21, and 10/25/21 | $14,745,366.93 | $6,416,846.01 | "All of debtor's right, title and interest to property – 26 U.S.C. §6321" |
| Claim No. 4 | City and County of San Francisco | Unsecured Business Property Tax Assessment No. 2017-44208 (annual regular tax bill) for 180 Montgomery | $1,245.80 | $1,245.80 | "Other. Describe: 180 Montgomery, San Francisco, CA 94104" |
| Sch D, 2.4 | Toyota Motor | Financing of purchase of 2019 Toyota C-HR on 1/10/21 | $21,000.00 | $19,.000.00 (scheduled valued of collateral) | 2019 Toyota C-HR |

| | | Credit[3] | | | | |
|---|---|---|---|---|---|---|
| Sch D, 2.5 | Toyota Motor Credit | Financing of purchase of 2018 Toyota C-HR on 1/10/21 | $20,000.00 | $17,000.00 (scheduled value of collateral) | 2018 Toyota C-HR |
| | **TOTAL** | | | **$6,934,236.16** | |

The balance of the claims asserted against the Debtor's estate are roughly $11.7 million in priority claims (primarily tax claims) and $5.4 million in general unsecured (roughly half of which are disputed and unliquidated claims by two former employees). The professional fees accrued during the pendency of this case currently exceed $500,000.[4]

Debtor has the following three commercial office space leases and four executory contracts:

| Executory Contracts and Unexpired Leases | | | | |
|---|---|---|---|---|
| **Counterparty to Lease/Contract** | **Title of Contract** | **Subject of Lease/Contract** | **Cure Amount** (Past Due Amount as of 9/9/22) | **Comments** |
| 340 Pine Street LLC | Office Lease, dated as of 2/18/20 | Lease for office premises at 340 Pine Street, San Francisco (the "Pine Lease") | $0.00 | Commenced on 4/1/20 and expires on 10/31/23. Current rent is $11,862.33. Security deposit of $12,217.58. |
| Brickell Avenue Consulting LLC ("BAC") | Letter agreement dated 9/30/21 | Contract for Debtor's acting Controller | $0.00 | Fee is $8,500 per month |

---

[3] No proof of claim was filed by Toyota Motor Credit. Since the June 6, 2022 deadline for filing such proofs of claim has passed, the Scheduled claim amounts noted above are controlling as to the secured claims by Toyota Motor Credit.

[4] Debtor's July Monthly Operating Report [ECF No. 174] estimated accrued professional fees as of 7/31/2022 of $358,430. This total does not include the Committee's professional fees or those incurred by Debtor's employment law attorneys, Constangy Brooks.

| | | | | |
|---|---|---|---|---|
| CEP Investors XII LLC | 111 Sutter Street Office Building Lease, dated as of July 15, 2016 | Lease for offices at 111 Sutter, Suite 550, San Francisco (the "Sutter Lease") | $0.00 | Commenced 3/1/17 and expires 3/1/24, with option to extend for one additional 5-year term. Current rent is $49,629.39. The base rent increases by $1,205.98 on 4/1/23. Security deposit of $82,908.42. |
| GAB Holdings, Inc. ("GAB") | Management Agreement, dated 1/1/02, as amended by 3/18/22 | Management contact related to CEO | $0.00 | Fee is $27,500 per month during the pendency of the Bankruptcy Case |
| Service Employees International Union ("SEIU") | (1) San Francisco Bay Area Master Collective Bargaining Agreement, effective 8/5/17 as extended and (2) Agreement dated 4/16/19 covering "One Market" Building | Union collective bargaining agreement for onsite employees | $0.00 | Proof of claim filed by General Employees Trust Fund on June 3, 2022 in the amount of $2,271.66 for "Unpaid liquidated damages and interest owed pursuant to Collective Bargaining Agreement." Debtor's record indicated paid in full. |
| Tower Building Investors | Lease Agreement, dated as of 5/10/07, as amended 3/21/11, 7/31/17 and 9/1/21 | Lease for office premises at 1970 Broadway (the "Oakland Lease") | $17,360.00 | Lease expires on 3/31/25. Current rent due is $5,520.00, increasing to $5,686.00 on 4/1/23 and to $5,857 on 4/1/24 through the remainder of the term of the lease. Security deposit of $3,400.00. |
| Wells Fargo Vendor Financial Services, LLC, fbo Ricoh USA, Inc. ("Wells Fargo") | Image management Plus Agreement | Lease of Ricoh copier | $129.64 | Expires 2/25; Proof of claim filed for $22,711.71 balance owing on lease as of Petition Date; Cure amount as noted in proof of claim. |

This bankruptcy case has allowed Debtor the opportunity to reorganize and refine its bookkeeping and accounting procedures. It has also better quantified the outstanding debts to be

addressed through the claims process, with the total claims as filed being more than $2 million less than anticipated even before claim objections. Although Debtor generates almost $3.0 million in accounts receivable each month, it frequently experiences cashflow constraints. Debtor's largest expense is its payroll, which totals roughly $2.8 million monthly and is paid bi-weekly. Debtor is current on all wages and salary payments to its employees.

The Committee was appointed by the Office of the United States Trustee (the "U.S. Trustee") on May 9, 2022 [ECF No. 83].

## IV. SALE PROCESS, OFFERS, PROPOSED SALE AND CONTRACT ASSIGNMENTS

### A. Marketing of Assets

Unfortunately, Debtor continued to operate at a net loss of roughly $500,000 per month post-petition. In light thereof, Debtor quickly determined the 363 Sale, followed by a plan of reorganization tailored to the results of the 363 Sale, was in the best interest of the estate. On May 12, 2022, Debtor filed its *Application for Order Approving Employment of B. Riley Advisory Services as Financial Advisor* [ECF No. 89] to begin the 363 Sale process. On May 19, 2022, the Court entered an order approving the application and authorizing Debtor to employ B. Riley Advisory Services ("B. Riley") to serve a Debtor's Financial Advisor in the 363 Sale process [ECF No. 103]. Pursuant to the Sale Procedures, B. Riley has worked with Debtor to market the sale of (i) up to 100% of its stock and/or (ii) its assets. The marketing effort is described in the accompanying Declaration of Seth Freeman and summarized below.

In late May and June, B. Riley worked with Debtor and Debtor's counsel to develop (i) a timeline for the 363 Sale process, (ii) bid and sale procedures, (ii) a form Nondisclosure Agreement and bidder screening procedures as prerequisites for access to the virtual data room, and (iv) the due diligence materials for the virtual data room.

B. Riley developed an initial targeted list of 76 prospective buyers by researching the industry and focusing on guard services and related building services companies of sufficient size and resources to acquire a business of Debtor's scale. The research showed the universe of guard service companies capable of absorbing approximately 86 relatively large properties and over 500

union employees is very small. B Riley determined that the most qualified buyers were Debtor's direct competitors or large US and foreign players without a presence in the Bay Area. An initial email to the targeted group went out on July 14, 2022, the same day the Court entered an order approving the Sale Procedures referenced in the transmitted marketing materials. The engagement rate from this targeted solicitation was significant, with 42% of the 69 successfully delivered emails actively opened.

B. Riley also researched private equity and other financial firms with backgrounds or expressed interest in acquiring or investing in security and related services. Working with the heads of B. Riley's Securities Sponsors team, 38 fund principals were additionally identified and solicited.

In addition to direct solicitations, B. Riley began running a premium notice in the DailyDAC (Distressed Asset Central), an electronic publication with a 10,000+ distribution to distressed investors, attorneys, and related professionals. *See, e.g.,* https://www.dailydac.com/public-notice-of-363-sale-independent-building-security-guard-company/. This premium notice ran from July 25, 2022 through today.

Specifically, B. Riley has assembled and finalized various marketing materials, maintained an electronic data room of due diligence materials, actively solicited offers, and communicated directly with potential bidders on Debtor's behalf. To date, B. Riley has contacted approximately 104 potential purchasers and held discussions with 5 of them. Four potential purchasers have executed Non-Disclosure Agreements and have access to the electronic data room.

**B. Sale Procedures**

On June 21, 2022, Debtor filed *Debtor's Motion to Approve Bid and Sale Procedures and Related Relief* (the "Sale Procedures Motion") [ECF No. 128]. Pursuant to the Sale Procedures Motion, Debtor requested the entry of an order approving the procedures to be implemented in the 363 Sale process. On July 14, 2022, the Court granted the Sale Procedures Motion and entered its *Order Approving Sale Procedures* (the "Sale Procedures Order") [ECF No. 157]. The Sale Procedures Order sets forth certain deadlines related to the 363 Sale. By the stipulation of the Committee, CNB and Debtor, and orders approving such stipulations, one such deadline—the Bid Deadline—was subsequently extended to allow additional time for interested parties to formulate

their offers [ECF No. 171, 172, 184 and 185]. The key deadlines, as so modified, are as follows:

| Court-Approved Deadlines | | |
|---|---|---|
| Bid Deadline | September 9, 2022 | Any offer must be received by Debtor's counsel and B. Riley by this deadline to be considered. |
| Qualified Bid Deadline | September 15, 2022 | Deadline to satisfy the following additional requirements of a "Qualified Bid": <ul><li>Provide a $500,000 Deposit</li><li>Provide an executed APA substantially in the form provided by Debtor</li><li>Demonstrate the financial capability to consummate the 363 Sale</li><li>Be a good faith, bone fide, firm offer without contingencies other than Court approval</li><li>Fully disclose bidder's identity</li></ul> |
| Auction | September 16, 2022 | To be conducted by Debtor, virtually or in person, and open to all creditors. Only Qualified Bidders may participate. Debtor, in consultation with the Committee, will determine the highest and/or best bid(s). |
| Sale Hearing | September 22, 2022 at 10:00 a.m. | Hearing before the Court on this Sale Motion and any related motions |
| Closing Deadline | Five business days following the entry of the Order approving the Sale | |

The Sale Procedures Order also allows Debtor, in its discretion upon consultation with the Committee, to designate a Stalking Horse Bid. A flat Breakup Fee of $75,000 was approved for such Stalking Horse Bid. Additional auction procedures, including a Minimum Initial Overbid and Minimum Bid Increments, were also established by the Sale Procedures Order. Finally, the Sale Procedures Order allows Debtor to add or modify procedures if, in Debtor's business judgment, such modification will better promote the goals of the sale process, provided such modifications are not inconsistent with the Sale Procedures Order.

### C. Offers Received, Proposed Sale and Reduced Fee to B. Riley.

Debtor received two offers by the Bid Deadline—one by Paladin Security ("Paladin") and one by a local competitor (the "Second Offer"). Paladin's offer was a firm offer and proposed closing shortly after the approval of the sale. Paladin did not, however, want to participate in an auction or be designated a Stalking Horse. Instead, Paladin wanted a private sale, foreclosing

Debtor's ability to accept overbids. Since the Bid Deadline was just a few days away and another party was already actively preparing an offer, Debtor advised Paladin that it was not inclined to accept its offer until after the Bid Deadline.

The Second Offer came in a few days later, on the Bid Deadline. In contrast to Paladin's offer, the Second Offer had several inherent flaws. The offer was not firm but rather an unsigned draft. The bidder proposed a due diligence period through November 1, 2022, during which time the offer could be withdrawn at any time and for any reason. The Second Offer also had a financing contingency through December 15th and a closing deadline of December 31, 2022. The Second Offer designated itself as the Stalking Horse Bid with a much higher breakup fee, as well as reimbursement of the bidder's costs. Debtor promptly advised the bidder that each of these terms was both contrary to the Sales Procedures Order and untenable for Debtor's estate. After further conversations with the bidder and its counsel, as well as consultation with the Committee and CNB, Debtor determined the Second Offer could not meet the requirements to be designated a Qualified Bid.

Without another Qualified Bid, the Auction became superfluous. Debtor determined Paladin to be the Successful Bidder, advised the Committee and CNB of its determination and accepted Paladin's offer, subject to the Court's approval via this Sale Motion. The salient terms of the proposed 363 Sale to Paladin are as follows:

| Terms of Proposed 363 Sale to Paladin | | |
|---|---|---|
| | **Details** | **Comments** |
| Purchase Price | Equal to (i) the dollar-for-dollar value of Debtor's Accounts Receivable ("A/R") less than 90 days old and unbilled work-in-progress ("WIP") at closing plus (ii) a $1.1 million premium. | As of 7/31/22, A/R (less than 90 days old) was approximately $1.6 million and the WIP was $1.9 million. Therefore, the total Purchase Price is approximately $4.6 million. |
| A/R 90 Days or Older | The A/R over 90 days is not included in the sale. Paladin will remit dollar-for-dollar to Debtor any payments received, but Paladin is under no obligation to actively seek to collect. | Debtor already has a payment plan in place for some of the A/R over 90 days old. |
| Employees | Paladin will retain all guard employees and some, but not all, of the non-guard management employees. | |

| | | |
|---|---|---|
| Debtor's CEO Sergio Reyes, Jr. | Paladin will retain Mr. Reyes in an ongoing role. However, the Management Agreement with GAB will not be assigned to Paladin. | Terms of Mr. Reyes employment to be separately negotiated with Mr. Reyes, but his continued participation is a requirement by Paladin. |
| Equipment, office furniture and vehicles | All transferred to Paladin | Two vehicles are subject to security interests, as noted above. IF Paladin wishes to acquire the two vehicles, it will need to pay off the loans or take over the payments. |
| Leases | Paladin may want the Sutter Lease and Oakland Lease assigned but has not made a final determination. Debtor anticipates that Paladin will have discussions with the landlords prior to closing.The Assumed Contracts will, at most, include the Sutter Lease and the Oakland Lease. | Debtor has filed a motion regarding the assumption/rejection of the real property leases (the "Lease Motion"), as described below, which will be heard currently with the Sale Motion. Debtor may need to continue the hearing on the Lease Motion. |
| Executory Contracts | The executory contracts will not be assigned to Paladin. Paladin will enter a separate agreement with SEIU effective upon closing, and does not assume any outstanding liabilities, if any, Debtor owes to SEIU. | Executory Contracts are those with BAC, GAB, SEIU and Wells Fargo, as identified in the preceding table of Executory Contract and Unexpired Leases. |
| Customer Contracts | All transferred to Paladin | |
| Cash on hand at closing and Avoidance Actions | To be retained by Debtor. | |
| Timing | APA to be drafted signed as soon as possible. Sale Hearing to go forward on 9/22/22, with Closing as soon as practicable after approval of the sale. | |

Under the terms of B. Riley's employment, as approved by the Court, B. Riley's compensation for facilitating the 363 Sale includes (i) hourly compensation and reimbursement of out-of-pocket expenses and (ii) incentive compensation based upon the purchase price attained. *See* ECF Nos. 89. 90 and 103. While B. Riley did agree to a credit against the hourly compensation in the event the incentive compensation exceeded the hourly compensation by two times, that discount is not triggered under the terms of the proposed 363 Sale to Paladin. The accrued fees of B. Riley through July 2022 totaled $90,706. Significant addition time was and will be incurred by B. Riley subsequent to the end of July. Debtor estimates the total compensation that would be due to B. Riley for a sale with a $4.6 million purchase price would be roughly $375,000. However, the

estimated purchase price of $4.6 million is not sufficient to pay all secured claims in full. Debtor is working with the secured creditor to arrive at a carveout for administrative claims to allow the 363 Sale to go forward. In light thereof, B. Riley has agreed to accept a reduced total fee of $175,000, in addition to its $25,000 retainer, plus out-of-pocket expenses estimated to be between $3,500 and $4,000 paid upon closing of the 363 Sale (the "Stipulated B. Riley Fee). The fees, if approved, would be paid out of the proceeds of sale after closing. Debtor believes this proposal is a benefit to the estate and is justified under the circumstances. Without the agreement, B Riley's fees will be considerably higher and will be part of the administrative claim pool.[5] In return for payment soon, B Riley will waive a significant portion of its fees.

### D. Related Lease Assumption Motion and Assignment

As noted above, Debtor currently leases three non-residential real properties in the course of its business operations (collectively, the "Leases" or individually a "Lease"). Pursuant to section 365(d)(4)(A) of the Bankruptcy Code, the deadline for Debtor to assume the Leases was August 30, 2022. In light thereof, on August 25, 2022, Debtor filed a motion (the "Lease Motion") [ECF No. 180], pursuant to section 365(a) of the Bankruptcy Code, Bankruptcy Rules 3002 and 6006, and B.L.R. 6006-1, for the entry of an order approving:

1. Debtor's assumption of the Sutter Lease;

2. Debtor's assumption of the Oakland Lease; and

3. Debtor's rejection of the Pine Lease.

Debtor reserved the right in the Lease Motion to modify its decisions regarding the assumption or rejection of each Lease prior to the hearing on the Lease Motion, in light of the results from the pending 363 Sale and the ultimate decision by the Successful Bidder as to whether it wants to have such Leases assigned. The Lease Motion was noticed to be heard concurrently with the Sale Hearing.

---

[5] Debtor believes the case is administratively insolvent given, among other things, Debtor's inability to remain current on post-petition payroll taxes.

## V. BASIS FOR RELIEF

### A. The Sale is Within the Sound Business Judgment of the Debtor and Should be Approved.

Section 363(b)(1) of the Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *In re 240 North Brand Partners, Ltd.,* 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("[D]ebtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification."); *see Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996). Under this standard, the "bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor-in-possession, in the light of sound business justification." *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14 (B.A.P. 9th Cir. 1988).

Courts typically consider the following factors in determining whether a proposed sale satisfies the business judgment standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Idaho Photocopy & Supply, Inc.*, No. 94-01756, 1994 WL 553065 (Bankr. D. Idaho Sept. 13, 1994); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 76 (D. Del. 1991). In *In re Del. & Hudson Ry.*, the court further held that:

> [o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the [debtor-in-possession] has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the [proposed] Buyer is proceeding in good faith.

124 B.R. at 176.

The business judgment rule shields a debtor's management from judicial second-guessing. *See In re Tower Air*, 416 F.3d 229, 238 (3d Cir. 2005). Once a debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company." *Id*. Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See, e.g., In re Lionel Corp.,* 722 F.2d 1063, 1071 (2nd Cir. 1983). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc*., 107 F.3d 558, 564–65 (8th Cir. 1997) (noting that in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand"); *Integrated Res., Inc.,* 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *In re Channel One Commc'ns, Inc*., 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (approving a sale of substantially all a debtor's assets where "the Debtor's business will likely not generate sufficient revenue to permit the radio station to continue to operate").

Here, Debtor submits the decision to proceed with the 363 Sale of the Purchased Assets is based upon its sound business judgment and should be approved. Debtor's plan from the time of its initial status conference has been to effectuate a going-concern sale. Debtor has performed a robust marketing and sale process, as described in detail above, to ensure the highest or otherwise best price for the Purchased Assets is achieved. While the response has not been what Debtor hoped it would be, Debtor believes B. Riley has made its best efforts to market the opportunity and find a buyer for Debtor's assets. Debtor believes that reasonable and adequate notice of the 363 Sale is being provided to interested persons. Accordingly, Debtor respectfully submits that consummation of the 363 Sale of the Purchased Assets to the Purchaser is a sound exercise of its business judgment

and is in the best interests of Debtor's estate and stakeholders.

## B. The Purchaser Should Be Entitled to the Protection of Section 363(m) of the Bankruptcy Code.

Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *Ewell v. Diebert (In re Ewell),* 958 F. 2d 276, 281 (9th Cir. 1992); *see In re Filtercorp, Inc. v. Gateway Venture Partners III, L.P.*, 163 F.3d 570, 577 (9th Cir. 1998); *see also, In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute lack of good faith, a party's conduct in connection with the 363 Sale must amount to "fraud, collusion between the purchaser and other bidders or the [debtor-in-possession] or an attempt to take grossly unfair advantage of other bidders." *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the Sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (internal quotations omitted).

As required by section 363(m) of the Bankruptcy Code, the sale to Paladin was negotiated at arm's length by sophisticated parties, each represented by their own advisors. Paladin is a Canadian corporation with no current business operations in San Francisco or Oakland. Paladin has no connection to or prior relationship with Debtor or Mr. Reyes. Accordingly, Debtor requests that the Sale Order include a provision that the Purchaser of the Purchased Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. [6]

## C. The 363 Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code and Should be Approved Free and Clear of Any Liens, Claims, Interests, and Encumbrances.

Debtor further requests that the Purchased Assets should be sold free and clear of any liens, claims, or interests in such property pursuant to section 363(f) of the Bankruptcy Code, with any

---

[6] Debtor anticipates submitting a declaration from Paladin's principal prior in the next few days to establish a basis for Section 363(m) relief.

such liens attaching to the net sale proceeds of the Assets to the same extent and with the same priority as such liens held against the Purchased Assets immediately prior to the 363 Sale.  Under Section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if any one of the following conditions is satisfied:

1) such a sale is permitted under applicable non-bankruptcy law;

2) the party asserting such a lien, claim or interest consents to such sale;

3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;

4) the interest is the subject of a *bona fide* dispute; or

5) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, therefore, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens.  *See SEC v. Capital Cove Bancorp LLC*, 2015 U.S. Dist. LEXIS 186531, at *4-5 (C.D. Cal. Nov. 19, 2015); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that Section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).  Furthermore, a debtor possesses broad authority to sell assets free and clear of liens, and courts have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g., In re Trans World Airlines, Inc*., No. 01-0056 (PJW), 2001 WL 1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

Debtor believes that one or more of the tests of section 363(f) of the Bankruptcy Code are satisfied with respect to the transfer of the Purchased Assets.

### 1. Purchased Assets could be Sold Free and Clear under Other Applicable Law.

Section 363(f)(1) provides that property may be sold free and clear of a lien if the property could be sold free and clear of that lien under otherwise applicable law.  The Ninth Circuit recently

had an opportunity to evaluate this provision under circumstances very similar to the present. *Pinnacle Rest. at Big Sky, LLC v. CH SP Acquisitions, LLC (In re of Spanish Peaks Holdings II, LLC),* 872 F.3d. 892, 1157 (9th Cir. 2017). There, a large senior lienholder was on the eve of foreclosure when the bankruptcy case was filed and would likely complete the foreclosure in the absence of the bankruptcy sale. Were the senior lien to complete a foreclosure sale, it would transfer the underlying property free and clear of all junior liens and other interests. The Ninth Circuit explained that it saw "no reason to exclude the law governing foreclosure sales from the analogous language in section 363(f)(1)" and held that the ability to sell free and clear of junior claims and liens at the senior lien holder's foreclosure sale demonstrated that the property could be sold free and clear of junior claims and liens under otherwise applicable law and thereby satisfied the requirements of Section 363(f)(1). *Id.*

While *Spanish Peaks* dealt with a lease of real property rather than a junior lien of other business assets, Debtor submits that in the present context that is a distinction without a difference. CNB, the secured creditor in first position, will be paid from the sale escrow unless there is a dispute about its claim, in which case the undisputed portion will be paid. Based on its interactions with CNB to date, Debtor does not anticipate any dispute regarding its Claim. Under California law, CNB could enforce its security interests and liquidate any collateral free and clear of a junior creditor's lien. Junior creditors would be compelled to accept net proceeds after satisfaction of CNB's claim. Cal. Comm. Code § 9615. Therefore, the Purchased Assets may be sold free and clear pursuant to §363(f)(1).

### 2. Consent May Be Obtained by the Hearing.

Section 363(f)(2) provides a debtor may sell property free and clear of any interest in such property if the interest holder consents. As of the filing of this Sale Motion, Debtor has been in discussions with the holders of the primary liens on the Debtor's assets–City National Bank and the IRS–concerning the 363 Sale and the fact that the offers received would likely not be sufficient to satisfy the secured claims in full. Based on discussions to date, Debtor anticipates that the IRS will

consent to the sale.[7] Moreover, the Court may deem an alleged lienholders' failure to object to constitute consent to the sale. *In re Daufuskie Island Props. LLC*, 431 B.R. 626, 640 (Bankr. D.S.C. 2010), *see also Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002); *Channel One Comm., Inc.*, 117 B.R. at 496, *In re Pac. Cargo Servs., LLC*, Case No. 6:13-mc-00369-AA; 3:13-cv-01978-AA; 2014 U.S. Dist. LEXIS 65721 at *28–29 (D. Ore. May 9, 2014); *In re Blixseth*, Case No. 09-60452-7, 2011 Bankr. LEXIS 1451, at *42, 2011 WL 1519914 (Bankr. D. Mont. April 20, 2011).

### 3. The Liens Are Subject to a Bona Fide Dispute.

The Court can also authorize the sale free and clear of all liens because they are subject to *bona fide* disputes. 11 U.S.C. § 363(f)(4). Debtor contends that the IRS lien and the asserted secured claim by the City and County of San Francisco are subject to such a dispute. The Bankruptcy Code does not define the term "bona fide dispute" and so courts have looked to how that term has been interpreted in 11 U.S.C. § 303 when applying section 363(f)(4). *See In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991). Under a long line of cases, a *bona fide* dispute exists whenever "there is an objective basis for either a factual or a legal dispute as to the validity of debt." *Id. quoting In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987). Disputes concerning the priority of interests in a debtor's assets also constitute a *bona fide* dispute for section 363(f)(4) purposes. *Daufuskie Island Props.*, 431 B.R. at 646. This approach serves the underlying purpose of Bankruptcy Code section 363(f)(4), which is to allow bankruptcy courts to approve sales "where adjudication of the validity, perfection, amount and priority of a lien will result in a delay detrimental to the best interests of the estate." *In re Farina*, 9 B.R. 726, 729 (Bankr. D. Me. 1981) *citing* COLLIER ON BANKRUPTCY, 15th Ed., ¶ 363.011. A debtor/trustee must merely provide some factual grounds showing an objective basis for the dispute. *In re Gaylord Grain L.L.C.*, 306 B.R. 624, 627 (8th Cir. B.A.P. 2004). "[A] court need not determine the probable outcome of the dispute, but merely whether one exists." *Id.* The disputed lien need not be the subject of an immediate or

---

[7] Debtor also anticipates that the IRS will agree to a carveout from the sale proceeds such that the estate will receive $500,000 – to be used to pay administrative claims, and $200,000 to cover B Riley's fees. The IRS will then be paid the balance of the sale proceeds on its secured claim.

concurrent adversary proceeding. *Id*. (collecting cases).

Debtor submits that an *bona fide* dispute exists as to the IRS's claim. On June 29, 2022, the Committee filed a *Motion to Reconsider Order Authorizing Use of Cash Collateral* (the "Motion to Reconsider") [ECF No. 144]. In that motion and in oral argument at the hearing thereon, the Committee disputed that the IRS has a security interest in Debtor's cash collateral. The Committee was concerned with "the sizeable claim of the IRS, which could potentially consume all 'cash collateral' if granted a secured interest in post-petition earnings that did not exist pre-petition." Motion to Reconsider at fn. 1. Although the Motion to Reconsider was denied, the Court made clear in its ruling that the Committee still has the ability to contest the extent of the assets attached by the IRS's tax liens. Committee's counsel has continued to raise this same argument in recent discussions with Debtor's undersigned counsel. Therefore, a dispute has already been raised to the IRS's secured claim.

Likewise, a *bona fide* dispute exists as to the asserted secured claim by the City and County of San Francisco. The basis for the secured claim is asserted in the proof of claim to be "180 Montgomery, San Francisco, CA 94104." While Debtor acknowledges this is a former address from which Debtor operated prior to entering into the Sutter Lease, it is unclear how this translates into a secured claim by the City and County of San Francisco. Debtor, therefore, disputes the asserted secured claim by the City and County of San Francisco in the amount of $1,245.80.

### 4. The Court Should Authorize the Debtor to Hold the Proceeds Pending Resolution of the Lien Disputes.

As noted above, Debtor anticipates it will obtain IRS consent to the sale and agreement on a carveout, in which case the remaining proceeds will be paid to the IRS on its secured claim. If an agreement is not reached, the liens of the IRS and the City and County of San Francisco are the subject of *bona fide* disputes that will be addressed subsequently in this case either through an adversary proceeding or claim objection. Under those circumstances, it would be inappropriate to require the Debtor to distribute any amount to these entities until the issue of priority and the other claims for relief are resolved. Moreover, to the extent that the sale results in net proceeds being made available to the secured lenders on account of their lien, Debtor has rights under Bankruptcy

Code section 506(c) to surcharge that lien for expenses incurred by the estate conferring a direct and concrete benefit to them.  11 U.S.C. § 506(c); *In re Choo*, 273 B.R. 608 (B.A.P. 9th Cir. 2002).

### D.  The Assignment of Executory Contracts and Unexpired Leases Should be Approved.

Section 365(a) permits a debtor to assume or reject an executory contract or unexpired lease upon the authority of the Court after notice and a hearing.  Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  Section 365(a) of the Bankruptcy Code "enables the [debtor-in-possession] to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not." *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000).  Courts generally "approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also Durkin v. Benedor Corp. (In re G.I. Indus., Inc.),* 204 F.3d 1276, 1282 (9th Cir., 2000); *In re Miller*, No. 15-61159-12, 2016 WL 1316763, at *4 (Bankr. D. Mont. Apr. 1, 2016).

The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate. *See Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*, 34 B.R. 767, 769 (B.A.P. 9th Cir. 1983); *Pac. Shores Dev. v. At Home Corp. (In re At Home Corp.)*, 292 B.R. 195, 199 (N.D. Cal. 2003), aff'd, 392 F.3d 1064 (9th Cir. 2004) ("Bankruptcy courts generally approve rejection if the debtor demonstrates that the rejection will benefit the estate under a 'business judgment' test."); *In re Am. Suzuki Motor Corp.,* 494 B.R. 466, 475 n.4 (Bankr. C.D. Cal. 2013). Furthermore, "[c]ourts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate." *MF Glob. Holdings*, 466 B.R. at 242; *Miller*, 2016 WL 1316763, at *4 ("Although

the business judgment is the proper standard for determining whether to permit assumption or rejection of an executory contract or unexpired lease, the court should focus on the business judgment of the trustee or debtor-in-possession, not on its own business judgment."). The Court should "presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (in the context of a motion to reject under section 365(a)). Only a decision which is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice" falls foul of the rule. *Id.*

Debtor respectfully submits that its decision to assume and assign the Assumed Contracts as part of the Sale satisfies the business judgment standard. Also, Debtor submits that prior to any assumption of an Assigned Contract, Debtor and/or the Purchaser will cure any amounts necessary to assume the Assigned Contract. Indeed, as required by the Bankruptcy Code, Debtor's assumption and assignment of the Assigned Contracts will be contingent upon payment or reserve of Cure Costs in connection with the 363 Sale.

Once an executory contract is assumed, the Bankruptcy Code provides that the Debtor may elect to assign such contract. *See Rickel Home Center*, 209 F.3d at 299 ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate."). Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." Adequate assurance is not defined in the Bankruptcy Code, and "the required assurance will fall considerably short of an absolute guarantee of performance." *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001) (holding that there is no single solution for adequate assurance in every case); *Winters Nursery v. Color Spot Holdings (In re Color Spot Holdings, Inc.)*, No. 18-1246, 2018 WL 3996938, at *8 (D. Del. Aug. 21, 2018) (stating that "[c]ourts determine what constitutes adequate assurance of future performance on a case-by-case basis" (internal citation omitted)). Adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.

See *In re Bygraph, Inc.,* 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of further performance is given where assignee of lease has financial resources and expresses willingness to devote sufficient funding to the business to ensure its success); *In re Tex. Health Enters.*, 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000) ("Assurance of future performance is adequate if performance is likely (*i.e.* more probably than not)" (internal quotations omitted)).

Debtor believes that Paladin's established business reputation demonstrates adequate assurance of future performance. Paladin is the most awarded Security Company in Canada. It has been recognized as one of Canada's Best Managed Companies for excellence in business performance every year since 2012. It has also been recognized as one of Canada's Best Employers by Forbes for a third year in a row in 2022. Thus, Paladin has the financial wherewithal to perform going forward. Moreover, the types of agreements to be assumed and assigned are typical of commercial operations, and do not impose significant financial obligations on the Debtor or any assignee. Accordingly, Debtor anticipates that the counter parties to the Assumed Contracts will consent to the assumption and assignment to the Purchaser upon the terms requested herein. Any challenges to whether a proposed assignee can provide adequate assurance of future performance can be raised at the September 22nd hearing. To the extent necessary, Debtor will present facts at the Sale Hearing showing the financial credibility, willingness, and ability of the Purchaser to perform under the Assigned Contracts. The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Purchaser to provide adequate assurance of future performance under the Assigned Contracts, as required under Bankruptcy Code section 365(b)(1)(C).

Accordingly, the Debtor requests approval under Bankruptcy Code section 365 of Debtor's assumption and assignment of the Assigned Contracts, as may be designated by Paladin, in connection with the 363 Sale. Debtor further requests that the Sale Order provide that the Assigned Contracts will be transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provisions in the Assigned Contracts, including those described in Bankruptcy Code sections 365(b)(2) and (f)(1) and (f)(3) that prohibit such assignment.

**E. B. Riley's Agreed Reduced Fees Should Be Paid Upon Closing.**

Debtor also seeks approval of the Stipulated B. Riley Fee pursuant to Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, the court's discretion is not unlimited. The court may approve a compromise only if it is "fair and equitable." *A & C Properties* at 1381. In approving a proposed compromise in bankruptcy proceedings, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citations omitted).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The Court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 417 citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991). Although Debtor bears the burden of persuasion, "a court generally gives deference to a [debtor-in-possession's] business judgment in deciding whether to settle a matter." *Goodwin v. Mickey Thompson Entm't. Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.*), 292 B.R. 415, 420 (9th Cir. BAP 2003).

Debtor believes, in its reasonable business judgment, that the Stipulated B. Riley Fee fulfills

the *A & C Properties* factors.  Without the stipulation, B. Riley's administrative expense claim against the estate will roughly double.  The stipulation facilitates Debtor's negotiations with the secured creditors of a carveout to allow the 363 Sale to go forward.   Debtor believes any challenge to the compensation owing to B. Riley under the terms of its employment would be unsuccessful, particularly since such employment was approved under Bankruptcy Code section 328(a).  It is, therefore, in the estate's best interest to enter into the Stipulated B. Riley Fee.   Debtor respectfully requests that the Court approved the Stipulated B. Riley Fee and allow its payment upon closing.

## VI. COMPLIANCE WITH GUIDELINES

Debtor believes that this motion, together with the supporting declaration(s), the Sale Procedures Motion, and any subsequently filed pleadings in support of the 363 Sale substantially complies with the Court's *Guidelines for Early Disposition of Assets, Pre-Packaged Plans and the Sale of Substantially All Assets under § 363*[8] and the Court's *Guidelines Re Sale Orders*. To the extent that Debtor does not comply in every respect with such requirements, Debtor respectfully requests a waiver for any such non-compliance for the reasons set forth herein.

## VII. WAIVER OF BANKRUTPCY CODE RULE 6004(H) AND 6006(D)

Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Bankruptcy Rule 6006(d) provides that an "order authorizing the [debtor-in-possession] to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise." Debtor requests that the Sale Order be made effective immediately by providing that the fourteen day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.  Despite its best efforts, Debtor continues to operate at a net deficit post-petition, as reflected in Debtor's Monthly Operating Reports.  In light thereof, any delay in Debtor's ability to consummate the 363 Sale would

---

[8] Although these guidelines apply to sales under Section 363 within 60 days of the Petition Date, Debtor has tried to supply the same types of required information in this Sale Motion.

be detrimental to Debtor, its creditors, and estates and would impair Debtor's ability to maximize the value of the Purchased Assets through an expeditious closing of the 363 Sale.

**VIII.    NOTICE**

Concurrently herewith, Debtor will file a separate application for an order shortening time for the notice of hearing on this Motion. Expedited notice of this Motion will be provided to all creditors, the Office of the U.S. Trustee, counsel for Paladin, counsel for the Creditors Committee, any party holding a lien on any of the Purchased Assets, parties to the Executory Contracts and Unexpired Leases and those persons who have formally appeared in this Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002. Standard notice by mail will be provided to all other parties. Debtor submits that, in light of the nature of the relief requested, no other or further notice is required.

**IX.    CONCLUSION**

For the reasons set forth above, Debtor respectfully requests that the Court enter an order:

(i)    Granting this Sale Motion,

(ii)    Authorizing Debtor to sell the Purchased Assets to the Purchaser under the terms described above,

(iii)    Allowing the payment of the undisputed liens of CNB upon closing,

(iv)    Providing that the sale is free and clear of the asserted secured interests of the IRS and City and County of San Francisco with any such interests attaching to the proceeds of the sale with the same force, effect, validity and priority that existed against the Purchased Assets,

(v)    Approving the Purchaser as a buyer in good faith in accordance with Section 363(m) of the Bankruptcy Code,

(vi)    Approving the assumption and assignment of the Assigned Contracts as Purchaser may so direct upon further due diligence as to the Leases as described above,

(vii)    Approving the Stipulated B. Riley Fee and allowing payment thereof upon closing,

(viii)    Waiving the provisions of Bankruptcy Rules 6004(h) and 6006(d), and

1    (ix)    Granting such other and further relief as the Court deems just and proper under the
circumstances.

Dated: September 12, 2022                FINESTONE HAYES LLP

By:  */s/ Stephen D. Finestone*
Stephen D. Finestone
Attorneys for Debtor Professional Technical
Security Services, Inc. dba ProTech Security