Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
kfineman@fhlawllp.com

Counsel for Debtor
Professional Technical Security Services, Inc.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL TECHNICAL SECURITY SERVICES, INC., dba PROTECH BAY AREA,<br><br>    Debtor. | Case No. 22-30062<br><br>Chapter 11<br><br>**DECLARATION OF SETH R. FREEMAN IN SUPPORT OF DEBTOR'S SALE MOTION**<br><br><u>Hearing Date</u>:<br>Date:   TBD<br>Time:<br>Judge: Hon. Hannah L. Blumenstiel<br>Place:  Remote appearances only<br><br>*Please check www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic* |

I, Seth R. Freeman, declare as follows:

1. I am Managing Director of B. Riley Advisory Services a dba of GlassRatner Advisory & Capital Group LLC ("B. Riley"). In such capacity, and except as otherwise indicated herein, I have personal knowledge of the facts set forth below, and if called as a witness I could and would competently testify to the matters set forth in the declaration.

2. I submit this declaration is support of *Debtor's Motion for Entry of Order (i)*

FREEMAN DECLARATION 1

*Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, (ii) Approving the Assignment of Executory Contracts, (iii) Allowing Payment of Compromised Fee to B. Riley Upon Closing and (iv) Granting Related Relief* filed concurrently herewith (the "Sale Motion")

3. On May 12, 2022, B. Riley entered into an engagement agreement to serve as Debtor's Financial Advisor to market and manage the sale process for the sale of up to 100% of Debtor's capital stock and/or assets (the "363 Sale"). On May 19, 2022, the Court entered an order authorizing Debtor to employ B. Riley.

4. B. Riley received its retainer of $25,000 on June 24, 2022.

5. In late May and June, B. Riley worked with Debtor and Debtor's counsel to develop (i) a timeline for the 363 Sale process, (ii) bid and sale procedures, (ii) a form Nondisclosure Agreement and bidder screening procedures as prerequisites for access to the virtual data room, (iv) prepared a detailed due diligence checklist for use of the Debtor in assembling and organizing its information, and (v) reviewed and maintained new and updated due diligence materials for the virtual data room.

6. B. Riley also created a "teaser" document containing a description of the going concern asset sale and purchase opportunity and a summary of the sale procedure with deadlines. The teaser contained a call to action to request an NDA and become a qualified buyer. A link to the teaser was included in all outbound marketing and advertising.

7. To facilitate the 363 Sale, B. Riley developed an initial targeted list of prospective buyers by researching the industry and focusing on guard services and related building services companies of sufficient size and resources to acquire a business of Debtor's scale. Our team's research showed that the universe of guard service companies capable of absorbing approximately 86 downtown San Francisco, Oakland and East Bay properties and over 500 union employees is very small. The most qualified companies are regional and large US and foreign players without a presence in the Bay Area. As a result, B. Riley developed a highly targeted contact list representing 76 regional, national and international firms.

8. An initial email to the targeted group went out on July 14, 2022, the same day the

Court entered an order approving the Sale Procedures referenced in the transmitted marketing materials. The email included a brief description and link to the "teaser" document B. Riley created for the sale. The engagement rate from this targeted solicitation was significant, with 42% of the 69 successfully delivered emails actively opened. Follow-up contact was made during the course of the sale process, including announcing the extended sale date to all parties.

9. In July, B. Riley also researched private equity and other financial firms with backgrounds or expressed interest in acquiring or investing in security and related services. Working with the heads of the B. Riley Sponsor Group team, (the unit of B. Riley Financial that maintains proprietary relationships with private equity funds and managers throughout the United States and internationally) a contact list of 38 private equity fund principals were additionally identified and solicited. We received a 74% response rate from this targeted list. An NDA was issued as a result of this solicitation.

10. In addition to direct solicitations, on July 25, 2022, B. Riley began running a premium notice in the DailyDAC (Distressed Asset Central), an electronic publication with a 10,000+ distribution to distressed investors, attorneys, and related professionals. See, e.g., https://www.dailydac.com/public-notice-of-363-sale-independent-building-security-guard-company/. This premium notice ran from July 25, 2022 through today's date.

11. Since its retention by Debtor in mid-May, B. Riley has assembled and finalized various marketing materials, maintained an electronic data room of due diligence materials.

12. Throughout the sale process, B. Riley has actively assisted Debtor and its senior management in organizing and providing complete information and data for use of potential buyers in assessing the opportunity and preparing their offers and ensuring that information was available to all interested buyers. B. Riley assisted the Debtor and its management to improve the presentation of historical and current customer information and financial statements to more accurately present its gross profit and facilitate the analysis of Debtor's payroll and security guard time keeping data requested by buyers.

13. B. Riley actively solicited offers and communicated directly with potential bidders on Debtor's behalf. To date, B. Riley has contacted approximately 104 potential

FREEMAN DECLARATION 3

purchasers and held active discussions with 5 of them. Four potential purchasers executed Non-Disclosure Agreements and were given access to the electronic data room.

14. From these efforts, two parties ultimately emerged with offers—one by Paladin Security ("Paladin") and one by a local competitor (the "Second Offer"). B. Riley actively engaged with both parties to assist in optimizing the outcome of the sale process.

15. Paladin's offer was a firm offer with a proposed closing shortly after the approval of the sale. Paladin did not, however, want to participate in an auction or be designated a Stalking Horse. Instead, Paladin wanted a private sale, foreclosing Debtor's ability to consider other offers. Since the Bid Deadline was just a few days away and another party was already actively preparing an offer, Debtor advised Paladin that it was not inclined to accept its offer until after the Bid Deadline.

16. The Second Offer came in a few days later, on the Bid Deadline. In contrast to Paladin's offer, the Second Offer had several inherent flaws, as described in more detail in the Sale Motion. Extensive efforts by B. Riley and Debtor's counsel to remedy these defects with the bidder were unsuccessful. While the second bidder was clearly interested, it did not have the capacity to complete the transaction within the timeframe needed by Debtor and dictated by the Sale Procedures Order. Nor was the bidder ever able to provide a firm offer.

17. In light of the lack of other qualified bids after the extensive marketing efforts undertaken by B. Riley, the Paladin offer represents the best offer for Debtor's assets in my opinion.

18. The projected purchase price from Paladin is roughly $4.6 million. Under the terms of B. Riley's employment, as approved by the Court, B. Riley's compensation for facilitating the 363 Sale includes (i) hourly compensation and reimbursement of out-of-pocket expenses and (ii) incentive compensation based upon the purchase price attained. While B. Riley did agree to a credit against the hourly compensation in the event the incentive compensation exceeded the hourly compensation by two times, that discount is not triggered under the terms of the proposed 363 Sale to Paladin.

19. The total compensation due to B. Riley under the proposed sale to Paladin would

be approximately $375,000. However, the estimated purchase price of $4.6 million is not sufficient to pay all secured claims in full and Debtor's counsel is working with the secured creditors to arrive at a carveout for administrative claims to allow the 363 Sale to go forward. In light thereof, B. Riley has agreed to accept a reduced total fee of $175,000, in addition to its $25,000 retainer, plus out-of-pocket expenses estimated to be between $3,500 and $4,000 paid upon closing of the 363 Sale (the "Stipulated B. Riley Fee").

20. The Stipulated B. Riley Fee represents a compromise between B. Riley and Debtor to facilitate the 363 Sale. The Sale Motion, therefore, respectfully requested approval of this Stipulated B. Riley Fee as part of the order approving the proposed sale to Paladin.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed on September 12, 2022 in Moraga, California.

_____
Seth R. Freeman