

Signed and Filed: September 29, 2022

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

1  Stephen D. Finestone (125675)
   Jennifer C. Hayes (197252)
2  Kimberly S. Fineman (184433)
   FINESTONE HAYES LLP
3  456 Montgomery Street, 20th Floor
   San Francisco, California 94104
4  Tel. (415) 421-2624
   Fax (415) 398-2820
5  kfineman@fhlawllp.com

6  Counsel for Debtor
   Professional Technical Security Services, Inc.

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN FRANCISCO DIVISION**

11  In re:                              Case No. 3:22-bk-30062-HLB

12  PROFESSIONAL TECHNICAL SECURITY     Chapter 11
    SERVICES, INC.,
13                                       **ORDER GRANTING DEBTOR'S MOTION**
                Debtor.                  **FOR ENTRY OF AN ORDER (I)**
14                                       **AUTHORIZING THE SALE OF**
                                         **SUBSTANTIALLY ALL OF DEBTOR'S**
15                                       **ASSETS FREE AND CLEAR OF LIENS,**
                                         **(II) APPROVING THE ASSIGNMENT OF**
16                                       **EXECUTORY CONTRACTS, (III)**
                                         **ALLOWING PAYMENT OF**
17                                       **COMPROMISED FEE TO B. RILEY UPON**
                                         **CLOSING AND (IV) GRANTING**
18                                       **RELATED RELIEF**

19                                       Hearing Date:
                                         Date: September 22, 2022
20                                       Time: 10:00 a.m.
                                         Judge: Hon. Hannah L. Blumenstiel
21                                       Place: Remote appearances only

22

23          This Court having considered *Debtor's Motion for Entry of An Order (I) Authorizing the Sale*

24  *of Substantially All of Debtor's Assets Free and Clear of Liens, (II) Approving the Assignment of*

25  *Executory Contracts, (III) Allowing Payment of Compromised Fee to B. Riley Upon Closing and*

26  *(IV) Granting Related Relief* [ECF No. 189] (the "Motion"),[1] filed by Professional Technical Security

27  _____

28  [1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Agreement (as defined herein).

Services Inc., the above-captioned debtor and debtor in possession ("Debtor"), and upon the Declarations of Sergio Reyes, Jr., Seth R. Freeman, and Ashley Cooper in support of the sale of substantially all of Debtor's assets [ECF Nos. 190, 191, and 198, respectively] (the "Sale Declarations"); and the sale hearing (the "Sale Hearing") having been held on September 22, 2022, to consider the relief requested in the Motion and approval of Debtor's entry into and performance under that certain *Asset Purchase Agreement*, dated as of September 21, 2022, attached hereto as **Exhibit A** (together with all exhibits and schedules, each as may be amended or modified from time to time, the "Agreement"), by and between Debtor, as seller, and PalAmerican Security (California) Inc., as buyer (together with its permitted designee(s), if any, under the Agreement, "Buyer"); and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon all of the proceedings had before this Court (including any testimony or other evidence proffered or adduced at the Sale Hearing); and after due deliberation thereon; and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.    Jurisdiction.  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Approval of Debtor's entry into the Agreement and the transactions contemplated thereby (collectively the "Sale Transaction") is a core proceeding under 28 U.S.C. §§ 157(b)(2).

B.    Venue.  Venue of this case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C.    Final Order.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

D.    Statutory Predicates.  The statutory predicates for the approval of the Agreement and Sale Transaction contemplated thereby are sections 105, 363, and 365 of the Bankruptcy Code, as

---

[2] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

supplemented by Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules and any applicable Local Bankruptcy Rules.

E.  <u>Notice</u>.  Except as supplemented by paragraph 10 below, proper, timely, adequate, and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9019, and in compliance with the Local Bankruptcy Rules.  The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the Agreement, or the Sale Transaction is required.  The disclosures made by Debtor concerning the Agreement, the Sale Transaction, and the Sale Hearing were sufficient, complete, and adequate.

F.  <u>Opportunity to be Heard</u>.  Except as supplemented by paragraph 10 below, a reasonable opportunity to object or be heard regarding the relief requested in the Motion and the Sale Transaction has been afforded to all interested persons and entities.  Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

G.  <u>Marketing and Sale Process</u>.  As demonstrated by (i) the Sale Declarations, (ii) the testimony and other evidence proffered or adduced at the Sale Hearing, and (iii) the representations of counsel made on the record at the Sale Hearing, Debtor and its advisors thoroughly marketed Debtor's assets (including the Acquired Assets).  Based on the record of these proceedings, all creditors and other parties in interest and all prospective Buyers have been afforded a reasonable and fair opportunity to bid for Debtor's assets (including the Acquired Assets).  Debtor conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best offer for the Acquired Assets.  The sale process was non-collusive and substantively and procedurally fair to all parties.

H.  <u>Highest or Best Offer</u>.  Debtor determined, in a valid and sound exercise of its business judgment, that the highest or otherwise best bid for the Acquired Assets was made by Buyer.  The consideration provided by Buyer for the Acquired Assets provides fair and reasonable consideration to Debtor for the sale of the Acquired Assets and the assumption of all Assumed Obligations (as defined in the Agreement), and the performance of the other covenants set forth in

the Agreement will provide a greater recovery for Debtor's estate than would have been provided by any other available alternative.

I. **Business Judgment.** Debtor's decision to (i) enter into the Agreement and all ancillary documents filed therewith or described therein, and (ii) perform under and make payments, if any, required by such Agreement, constitutes a reasonable exercise of sound business judgment consistent with Debtor's fiduciary duties and such decisions are in the best interests of Debtor, its estate, its creditors, and all other parties in interest. Good and sufficient reasons for the approval of the Agreement and all ancillary documents filed therewith or described therein have been demonstrated by Debtor. Debtor has established that compelling circumstances exist for the Sale Transaction outside: (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (ii) a plan of reorganization, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to preserve and maximize the value of Debtor's estate.

J. **Immediate Effectiveness of Sale Order.** To maximize the value of the Acquired Assets and resources in this Case, it is essential that the sale of the Acquired Assets be approved and consummated promptly. In light of the risk of deterioration of Debtor's assets and business, the Sale Transaction contemplated by the Agreement must be consummated promptly. Further, based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing and the Sale Declarations, the prompt approval and consummation of the Sale Transaction is necessary to due to Debtor's limited liquidity and to prevent erosion in the value of Debtor's business and assets, including the Acquired Assets. Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rule 4001(a), and pursuant to Bankruptcy Rule 6004(h), to permit the immediate effectiveness of this Sale Order.

K. **Sale Free and Clear.** Except for Assumed Obligations, a sale of the Acquired Assets other than one free and clear of Liens, Claims, defenses (including rights of setoff and recoupment) and interests, in each case, in, on, or related to the Acquired Assets, including, for the avoidance of doubt security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, dedications, deeds of trust, hypothecations, liens (including but not limited to

mechanics' or materialman's liens), encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, rights of first refusal, rights of first offer, preferential transfer rights, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, conditions, equitable interests, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, Employee Retirement Income Security Act of 1974 ("ERISA"), Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), alter ego and other liabilities, causes of action, contract rights and claims, community property interests, right of way or restriction of any kind to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the Acquired Assets (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances"), and without the protections of this Sale Order would hinder Debtor's ability to obtain the consideration provided for in the Agreement and, thus, would impact materially and adversely the value that Debtor's estate would be able to obtain for the sale of such Acquired Assets. But for the protections afforded to Buyer under the Bankruptcy Code and this Sale Order, Buyer would not have offered to pay the consideration contemplated in the Agreement. In addition, each entity with an Encumbrance upon the Acquired Assets (other than Assumed Obligations), (i) has consented to the Sale Transaction or is deemed to have consented to the Sale Transaction, or (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances (other than Assumed Obligations) who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All

holders of Encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by either having the claims secured by having their Encumbrances, if any, attach to the proceeds of the Sale Transaction, in the same order of priority and with the same validity, force, and effect that such Encumbrances had before the Sale Transaction, subject to any rights, claims, and defenses of Debtor or its estate, as applicable, or as otherwise provided herein. Therefore, approval of the Agreement and the consummation of the Sale Transaction free and clear of Encumbrances (other than Assumed Obligations) is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of Debtor's estate, its creditors, and other parties in interest. Secured Creditor City National Bank ("CNB") has consented to the sale in accordance with section 363(f)(2) of the Bankruptcy Code. Toyota Motor Credit failed to oppose the motion and is deemed to have consented to the sale under 363(f)(2) of the Bankruptcy Code. As to the three remaining asserted liens and/or secured claims against Debtor, the sale is approved free and clear of such interests pursuant to section 363(f)(4) of the Bankruptcy Code in light of the *bona fide* disputes as to such claims. These disputed claims are by the Internal Revenue Service, the City and County of San Francisco, and asserted lessor First American Commercial Bancorp, Inc. ("First American").

L. The recitation in the immediately preceding paragraph of this Sale Order of specific agreements, plans, or statutes is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, commitments, or obligations referred to as "Encumbrances" therein.

M. Buyer would not have entered into the Agreement and would not consummate the sale of Acquired Assets, thus adversely affecting Debtor, its estate, creditors, and other parties in interest, if such sale was not free and clear of all Encumbrances (other than Assumed Obligations). A sale of the Acquired Assets, other than one free and clear of all Encumbrances (other than Assumed Obligations), would yield substantially less value for Debtor's estate, with less certainty than the Sale Transaction.

N. Arm's-Length Sale. The consideration to be paid by Buyer under the Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Acquired Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer

Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agreement and all ancillary documents filed therewith or described therein are fair and reasonable under these circumstances and were not entered into with the intent to, nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding Debtor or its creditors under any applicable laws. Neither Debtor nor Buyer is entering into the Agreement and all ancillary documents filed therewith or described therein or proposing to consummate the Sale Transaction fraudulently, for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction.

O.      Good Faith. Debtor, Buyer, and their respective employees, agents, and representatives actively participated in the sale process and acted in good faith. The Agreement between Buyer and Debtor was negotiated and entered into based upon arm's-length bargaining, without collusion or fraud, and in good faith as that term is used in section 363(m) of the Bankruptcy Code. Buyer is entering into the Sale Transaction in good faith and is a good faith Buyer for value within the meaning of section 363(m) of the Bankruptcy Code and the court decisions applying or interpreting such provision, and is therefore entitled to the full protection of section 363(m) of the Bankruptcy Code with respect to all aspects of the transactions contemplated by the Agreement, including the acquisition of the Acquired Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding. Debtor was free to deal with any other party interested in buying or selling on behalf of Debtor's estate, some or all of the Acquired Assets. Debtor and Buyer have not engaged in any conduct that would cause or permit the Sale Transaction, the Agreement, or any related action or the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) of the Bankruptcy Code. Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, Buyer and Debtor have not acted in a collusive manner with any person or entity. Buyer's prospective performance and payment of

amounts owing under the Agreement will be undertaken in good faith and for valid business purposes and uses.

       P.      <u>Insider Status</u>. Buyer is not an "insider" of Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors, officers, members, managers, or controlling stockholders exists between Buyer and Debtor.

       Q.      <u>Corporate Authority</u>. Debtor has (i) full corporate or other power to execute, deliver, and perform its obligations under the Agreement and all other transactions contemplated thereby and entry into the Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) all of the corporate or other power and authority necessary to consummate the Sale Transaction, and (iii) taken all actions necessary to authorize and approve the Agreement and the Sale Transaction. No consents or approvals, other than those expressly provided for herein or in the Agreement, are required for Debtor to consummate such transaction.

       R.      Except as otherwise set forth in the Agreement, Buyer shall have no obligations with respect to any Encumbrances against or in respect of Debtor or the Acquired Assets (other than Assumed Obligations).

       S.      The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), and 363(n) of the Bankruptcy Code.

       T.      The Acquired Assets constitute property of Debtor's estate and title thereto is presently vested in Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. Debtor is the sole and rightful owner of the Acquired Assets, and no other person has any ownership right, title, or interest therein, subject to the liens and claims described in the Motion. The sale of the Acquired Assets to Buyer will be, as of the Closing Date or such later date as such Acquired Assets are transferred under the Agreement, a legal, valid, and effective transfer of such Acquired Assets, and each transfer and assignment vests or will vest Buyer with all right, title, and interest of Debtor to the Acquired Assets free and clear of all Encumbrances (other than Assumed Obligations).

       U.      <u>Assumption and Assignment of Assumed Contracts and Assumed Leases</u>. The assumption and assignment of the Assumed Contracts and Assumed Leases (as defined in the

Agreement) is an integral part of the Agreement. The assumption and assignment of the Assumed Contracts and Assumed Leases does not constitute unfair discrimination, is in the best interests of Debtor, its estate, its creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by Debtor.

V. Subject to payment of all Cure Amounts as of the Closing Date, Debtor and Buyer, as applicable, have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts and Assumed Leases. Pursuant to the Agreement, other than the payment of all Cure Amounts, as of the Closing Date, Debtor and Buyer have (i) cured any default existing prior to the assignment of the Assumed Contracts and Assumed Leases to Buyer in accordance with the terms of the Agreement, under each of the Assumed Contracts and Assumed Leases to be assumed and assigned under the Agreement, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any non-Debtor counterparty for actual pecuniary loss to such party resulting from a default prior to the assignment of any of the Assumed Contracts and Assumed Leases, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Each of the Assumed Contracts and Assumed Leases to be assumed and assigned under the Agreement shall be assumed and assigned to Buyer free and clear of all Encumbrances (other than Assumed Obligations) against Buyer.

W. Buyer has demonstrated adequate assurance of its future performance within the meaning of section 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code under each Assumed Contract and Assumed Lease. Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts and Assumed Leases to be assumed and assigned under the Agreement shall be assigned and transferred to Buyer, and remain in full force and effect for the benefit of Buyer, notwithstanding any provision in the Assumed Contracts and Assumed Leases or other restrictions prohibiting their assignment or transfer.

X. No monetary or non-monetary defaults exist in Debtor's performance under the Assumed Contracts and Assumed Leases as of the date of this Sale Order other than, as applicable, the failure to pay amounts equal to the Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code. In accordance with the terms set

forth in the Agreement and this Sale Order, at Closing, Debtor shall pay the Cure Amount for each of the Assumed Contracts and Assumed Leases to be assumed and assigned to Buyer pursuant to the Agreement.

Y.     No Successor Liability.  No sale, transfer or other disposition of the Acquired Assets pursuant to the Agreement or entry into the Agreement will subject Buyer to any liability for claims, obligations, or Encumbrances asserted against Debtor or Debtor's interests in such Acquired Assets (other than Assumed Obligations as set forth in the Agreement) by reason of such transfer under any laws, including any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger, or substantial continuity or similar theories.  By virtue of the consummation of the transactions contemplated by the Agreement, (i) Buyer is not a continuation of Debtor and its estate, there is no continuity or continuity of enterprise between Buyer and Debtor, there is no common identity between Debtor and Buyer, (ii) Buyer is not holding itself out to the public as a continuation of Debtor or its estate, and (iii) the Sale Transaction does not amount to a consolidation, merger or *de facto* merger of Buyer and Debtor or Debtor's estate. Accordingly, Buyer is not and shall not be deemed a successor to Debtor or its estate as a result of the consummation of the transactions contemplated by the Agreement, and except with respect to Assumed Obligations, Buyer's acquisition of the Acquired Assets shall be free and clear of any "successor liability" claims of any nature whatsoever.  Buyer would not acquire the Acquired Assets but for the protections against any claims based upon "successor liability" theories.

Z.     No Liability for Excluded Contracts or Leases.  Under the Agreement, Buyer shall acquire the Acquired Assets free and clear of any and all liabilities, obligations, conditions, claims, or other interests associated with any executory contracts or unexpired leases not assumed in accordance with the Agreement.

AA.    No *Sub Rosa* Plan.  Entry into the Agreement and the transactions contemplated thereby and hereby neither impermissibly restructure the rights of Debtor's creditors, nor impermissibly dictate the terms of a chapter 11 plan for Debtor.  Entry into and performance under the Agreement and this Sale Order does not constitute a *sub rosa* chapter 11 plan.

BB.    No Third-Party Beneficiaries.  Except as stated expressly in the Agreement or this Sale Order, nothing in the Agreement creates any third-party beneficiary rights in any entity not a party to the Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

**A.    Motion Granted, Objections Overruled**

1.    The relief requested in the Motion is GRANTED as set forth herein.

2.    Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits with prejudice and denied.  All parties and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.    This Court's findings of fact and conclusions of law in the record of the Sale Hearing are incorporated herein by reference.

**B.    The Agreement is Approved and Authorized**

4.    The Agreement and all ancillary documents, and all terms and conditions thereof, are approved pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014 of the Bankruptcy Rules.

5.    Debtor is hereby authorized to perform under this Sale Order and the Agreement and all ancillary documents (and each of the transactions contemplated thereby is hereby approved in its entirety and is incorporated herein by reference).  The failure to include specifically any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Agreement, and all of its provisions and the payments and transactions provided for therein and herein shall be authorized and approved in their entirety.  Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

6.    Subject to the provisions of this Sale Order, Debtor and Buyer are hereby authorized, pursuant to sections 105(a), 363(b)(1), and 365 of the Bankruptcy Code, to consummate the Sale Transaction in accordance with the Agreement and all ancillary documents filed therewith or described therein.

7.     Pursuant to section 363(b) of the Bankruptcy Code, and without any further corporate action or notice to or order of this Court, Debtor, Buyer, and each of their respective officers, employees, agents, members, and managers are hereby authorized and directed to fully perform under, consummate, execute, and implement the Agreement and the terms thereof, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement and all ancillary agreements filed therewith or described therein, this Sale Order, and the Sale Transaction.

**C.     Proceeds from the Sale and Payment of Certain Secured Claims.**

8.     <u>Payment in Full to City National Bank</u>.  Debtor is authorized and directed to pay the undisputed and allowed claim of City National Bank ('CNB"), secured by an undisputed first position lien, from the proceeds of the Sale Transaction immediately upon Closing pursuant to the demand to be submitted by CNB.  If there is any dispute as to the amount of the demand, Debtor shall pay the undisputed amount in full and reserve for any disputed amount.

9.     <u>Balance Held in Trust Pending Further Court Order</u>.  The balance of the proceeds from the Sale Transaction shall be held in trust by Debtor's counsel pending further order(s) of the Court.

10.     **<u>SERVICE UPON AND REQUIRED FILING BY FIRST AMERICAN</u>**.  Debtor shall serve a copy of this order via electronic mail on counsel for First American within 24 hours of its issuance and shall file a proof of service indicating Debtor's compliance with this requirement. On or before October 4, 2022, First American shall file a statement with the Court setting forth any objection to the transfer of its property free and clear of any lien or claim. Absent such a timely filed statement, Debtor shall be authorized to include any assets arguably subject to First American's lien in the sale to Buyer. In the event First American files a timely objection, the Court will hold a hearing on the objection on October 25, 2022 at 10:00 a.m. via videoconference.  Any reply to First American's objection shall be filed no later than seven days prior to the hearing.

**D.     Sale and Transfer Free and Clear of Encumbrances**

11.     Upon the Closing Date, all of Debtor's legal, equitable, and beneficial right, title, and interest in and to, and possession of, the Acquired Assets shall be immediately vested in Buyer

pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any Lien, Claim, or Encumbrance (other than Assumed Obligations); *provided, however*, that all remaining Encumbrances shall attach to the proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect that they previously attached against the Acquired Assets. On the Closing Date, this Sale Order shall be considered, and constitute for any and all purposes, a legal, valid, binding, effective, and complete general assignment, conveyance, and transfer of the Acquired Assets and a bill of sale or assignment transferring indefeasible title in the Acquired Assets to Buyer and shall vest Buyer with good and marketable title to the Acquired Assets.

12. The holders of claims related solely to Assumed Obligations shall have the right to seek payment directly from Buyer on account of Assumed Obligations to the extent set forth in the Agreement; *provided, however*, that Buyer reserves any and all rights, defenses, or objections held at any time by Debtor and/or Buyer with regard to such Assumed Obligations, including Buyer's rights hereunder and under the Agreement; *provided further* that, from and after the closing of the Sale Transaction, Debtor's estate shall have no further liability with respect to Assumed Obligations to the extent set forth in the Agreement.

13. The Sale Transaction and transfer and assignment of the Acquired Assets to Buyer shall be effectuated on the terms set forth in the Agreement and this Sale Order and shall not be restricted or prohibited.

**E.     Order Binding**

14. All (i) entities, including all filing agents, filing officers, title agents, title companies or title agents, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state and local officials, and (ii) other persons, in each case, who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets, shall be authorized and directed to take any such actions in connection with the Sale Transaction or this Sale Order, and this Sale Order shall be binding upon such entities or persons. All entities or persons described in this paragraph are authorized and specifically directed to strike all recorded

Encumbrances (other than Assumed Obligations) against the Acquired Assets from their records, official and otherwise.

15. Except as otherwise set forth herein, this Sale Order and the terms and provisions of the Agreement and all ancillary documents shall be binding on all of Debtor's creditors (whether known or unknown), Debtor, Buyer, and each of their respective affiliates, successors and assigns, and any affected third parties, including all persons asserting an interest in the Acquired Assets, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of the Bankruptcy Code with respect to the foregoing parties, and as to such trustee, party, entity, or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Sale Order and the terms and provisions of the Agreement, and any actions taken pursuant hereto or thereto shall survive the dismissal of Debtor's chapter 11 or 7 case or entry of any order, which may be entered confirming or consummating any plan(s) of Debtor or converting this chapter 11 case from chapter 11 to chapter 7, and the terms and provisions of the Agreement, as well as the rights and interests granted pursuant to this Sale Order and the Agreement, shall continue in these or any superseding or successor cases and shall be binding upon Debtor, Buyer, and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of Debtor under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in this case shall be and hereby is authorized to operate the business of Debtor to the fullest extent necessary to permit compliance with the terms of this Sale Order and the Agreement, and Buyer and the trustee shall be and hereby are authorized to perform under the Agreement upon the appointment of such trustee without the need for further order of this Court.

16. Except with respect to Assumed Obligations, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Encumbrances, arising under or out of, in connection with, or in any way relating to, Debtor, the Acquired Assets, the ownership, sale, or operation of the Acquired Assets and the business prior to the Closing Date, or the transfer of Acquired Assets to Buyer, are hereby forever barred, estopped, and permanently enjoined from

asserting such Encumbrances against Buyer, its property, or the Acquired Assets. Except with respect to Assumed Obligations, following the Closing Date, no holder of any Encumbrance shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Encumbrance, or based on any action Debtor may take in this chapter 11 case.

17.     Upon Closing, any Encumbrances on, against, or in the Acquired Assets that are purchased by Buyer pursuant to the Agreement, which are not, by their terms as set forth in the Agreement, automatically released by this Sale Order, and Assumed Obligations, shall be automatically released and discharged without further action, and all right, title and, interest of any holder of such Encumbrances shall attach to the proceeds of the Sale Transaction in the same order of priority, and with the same extent, validity, force, and effect as existed with respect to the Acquired Assets prior to the Sale Transaction without the need for any perfection actions by any such parties. Except for Assumed Obligations, holders of any Encumbrances on, against, or in the Acquired Assets purchased by Buyer pursuant the Agreement are authorized and directed to execute and deliver to Debtor, at Debtor's expense, any documents Debtor may request to evidence the cancellation of Encumbrances and rights to the Acquired Assets securing the applicable claims. Except for Assumed Obligations, if any person or entity has filed financing statements, mortgages, dedication interests, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances against or in the Acquired Assets that are purchased by Buyer pursuant to the Agreement and this Sale Order, then such person or entity, upon reasonable request by Debtor or Buyer, shall promptly deliver to Debtor or Buyer, in proper form for filing and executed by the appropriate parties, termination statements or instruments of satisfaction or release of all Encumbrances that such person or entity has with respect to such Acquired Assets. Notwithstanding the foregoing, if any person or entity that has filed financing statements, mortgages, dedication interests, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances (other than Assumed Obligations) against or in the Acquired Assets shall not have delivered to Debtor or Buyer in proper form for filing and executed by the appropriate parties termination statements or instruments of satisfaction or release of all Encumbrances that such person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are

purchased by Buyer pursuant to the Agreement and this Sale Order, (a) Debtor is hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents of satisfaction or release of all Encumbrances on behalf of such person or entity with respect to the Acquired Assets that are necessary or appropriate to effectuate the Sale Transaction, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units[3] or as any of the officers of Debtor may determine are necessary or appropriate and (b) Buyer is hereby authorized and empowered to cause to be filed, registered, or otherwise recorded a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances (other than Assumed Obligations) against Buyer and the applicable Acquired Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

**F.      Good Faith**

18.      Debtor and Buyer (including, but not limited to its equity owners, officers, directors, employees, professionals, and other agents thereof) have not engaged in any action or inaction that would cause or permit the Sale Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Entry into the Agreement is undertaken by the parties thereto, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and Buyer shall be entitled to all of the benefits of and protections under section 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the authorization provided herein to enter into the Agreement and consummate the Sale Transaction shall not affect the validity of such Sale Transaction, unless such authorization is duly stayed pending such appeal. The Sale Transaction is not subject to avoidance pursuant to section 363(n) or chapter 5 of the Bankruptcy

---

[3] As used in this Sale Order, the term "governmental unit" shall have the meaning given to such term in section 101(27) of the Bankruptcy Code.

Code and Buyer is entitled to all the protections and immunities under section 363(m) of the Bankruptcy Code.

**G.      No Successor or Transferee Liability**

19.      Buyer shall not be deemed, as a result of any action taken in connection with the Agreement, the consummation of the Sale Transaction, or the transfer, operation, or use of the Acquired Assets, to (a) be a legal successor, or otherwise be deemed a successor to Debtor; (b) have, *de facto* or otherwise, merged with or into Debtor; or (c) be an alter ego or a mere continuation or substantial continuation or successor in any respect of Debtor, including within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, worker's compensation, unemployment insurance, environmental, or other law, rule, or regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to Debtor's liability under such law, rule, or regulation or doctrine.

20.      Except as expressly provided in the Agreement with respect to Assumed Obligations, Buyer shall have no liability whatsoever with respect to Debtor's (or its predecessors' or affiliates') business or operations or any of Debtor's (or its  predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, tax law, ERISA or benefits law, antitrust, environmental, successor or transferee liability, dedication interests, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or nonmonetary obligations on account of any settlement or injunction, or any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the business prior to the Closing Date or such later time as Buyer is assigned and assumes any Assumed Contract.

21.      Effective upon the Closing Date, other than with respect to Assumed Obligations, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative,

arbitral, or other proceeding against Buyer, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (a) Encumbrance or (b) Successor or Transferee Liability, including the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Encumbrance; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such Acquired Assets.

**H.  Assumption and Assignment of Assumed Contracts and Assumed Leases**

22.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, Debtor is authorized and directed to assume and assign the Assumed Contracts and Assumed Leases to Buyer, pursuant to the terms of the Agreement, free and clear of all Encumbrances (other than Assumed Obligations). The payment (which shall be made by Debtor in accordance with the Agreement and this Sale Order) of the Cure Amounts due under each Assumed Contract and Assumed Lease listed in the Agreement to be assumed pursuant to section 365(b) of the Bankruptcy Code by Debtor and assigned to Buyer under the Agreement: (a) cures all monetary defaults existing thereunder as of the assignment of the Assumed Contracts and Assumed Leases to Buyer in accordance with the terms of the Agreement; (b) compensates the applicable counterparties to the Assumed Contracts and Assumed Leases for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Assumed Contracts and Assumed Leases by Debtor and the assignment of the Assumed Contracts and Assumed Leases to Buyer constitutes adequate assurance of future performance thereof. Buyer has provided adequate assurance of future performance under the Assumed Contracts and Assumed Leases within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code.

23.     To the extent that any non-Debtor counterparty to an Assumed Contract or Assumed Lease did not timely file an objection to a Cure Amount by the applicable deadline, such non-Debtor

Case: 22-30062   Doc# 221   Filed: 09/29/22   Entered: 09/29/22 09:24:10   Page 18 of 68

counterparty is deemed to have consented to the proposed Cure Amount or that will otherwise be paid by Debtor in the ordinary course of business. The non-Debtor counterparties to the Assumed Contracts and Assumed Leases are forever bound by the applicable Cure Amounts and, upon payment of such Cure Amounts as provided for herein and in the Agreement, are hereby enjoined from taking any action against Buyer with respect to any claim for cure under the Assumed Contracts and Assumed Leases, except as set forth in the Agreement.

24.     Any provision in any Assumed Contract or Assumed Lease that prohibits or conditions the assignment of such Assumed Contract or Assumed Lease, or allows the counterparty to such Assumed Contract or Assumed Lease to impose any penalty, fee, increase in payment, profit sharing arrangement, or other condition on renewal or extension, or to modify any term or condition upon the assignment of such Assumed Contract or Assumed Lease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect in connection with the Sale Transaction. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by Debtor and assignment to Buyer of the Assumed Contracts and Assumed Leases have been satisfied. Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all rights, title, and interests of Debtor under the Assumed Contracts and Assumed Leases to be assumed and assigned to Buyer pursuant to the Agreement, and such Assumed Contracts and Assumed Leases shall remain in full force and effect for the benefit of Buyer.

25.     Upon the assumption and assignment of the applicable Assumed Contracts and Assumed Leases to Buyer in accordance with the terms of the Agreement, Buyer shall be deemed to be substituted for Debtor as a party to the applicable Assumed Contract and Assumed Lease, and Debtor and its estate shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contract and Assumed Lease occurring after such assignment. At or promptly after the Closing, Debtor shall pay any Cure Amounts in accordance with the Agreement and this Sale Order. There shall be no assignment or consent fees, increases, or any other fees charged to Buyer or Debtor as a result of the assumption and assignment of the Assumed Contracts and Assumed Leases pursuant to the Agreement.

26.     Each non-Debtor counterparty to an Assumed Contract or Assumed Lease is forever barred, estopped, and permanently enjoined from asserting against Debtor or Buyer or their respective property in connection with the Sale Transaction:  (a) any assignment fee, acceleration, default, breach, or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing Date, including, any breach related to or arising out of a change in control resulting from the Sale Transaction of any provision of such Assumed Contract or Assumed Lease, or any purported written or oral modification to the Assumed Contract and Assumed Lease or (b) any claim, counterclaim, defense, breach, default, condition, setoff, or other claim asserted or capable of being asserted against Debtor existing as of the Closing Date.

27.     Other than the Assumed Contracts and Assumed Leases as set forth in the Agreement to be assumed and assigned to Buyer, Buyer shall assume none of Debtor's other Contracts or Leases and shall have no liability whatsoever thereunder.

**I.     Other Provisions**

28.     <u>Excluded Liabilities</u>.  All persons, all governmental units, and all holders of Encumbrances (other than Assumed Obligations) including those based upon or arising out of the Excluded Assets, are hereby barred and estopped from taking any action against Buyer or the Acquired Assets to recover property on account of any Encumbrances or on account of any liabilities of Debtor other than Assumed Obligations.  All persons holding or asserting any Encumbrances with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Encumbrances against Buyer or the Acquired Assets for any liability whatsoever associated with the Excluded Assets.

29.     <u>No Bulk Sales; No Brokers</u>.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.  Other than retained by Debtor pursuant to order of this Court, no brokers were involved in consummating the Sale Transaction, and no brokers' commissions shall be due to any person or entity in connection with the Sale Transaction.  Buyer is not obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale Transaction.

30.     Failure to Specify Provisions.  The failure specifically to mention any particular provisions of the Agreement or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court, Debtor and Buyer that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties thereto in accordance with this Sale Order.

31.     Further Assurances.  From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm or record or otherwise in Buyer its right, title, and interest in and to the Acquired Assets.

32.     Governing Terms; Conflicts.  To the extent this Sale Order is inconsistent with any prior order or pleading in this chapter 11 case, the terms of this Sale Order shall govern.  To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Agreement (including all ancillary documents executed in connection therewith) or the Motion, the terms of this Sale Order shall govern.

33.     Modifications.  The Agreement and any related agreements, documents or other instruments executed in connection therewith may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court; *provided* that any such modification, amendment or supplement does not have a material adverse effect on Debtor's estate or creditors.

34.     Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to Debtor to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the Agreement and allow Buyer to take any and all actions permitted or required under the Agreement in accordance with the terms and conditions thereof.  Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other sale-related document.

35.    No Stay of Order; Further Instruments; Appeals.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Neither Debtor nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing Date or risk its appeal being foreclosed as moot.

36.    Retention of Jurisdiction.  This Court shall retain exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, and decide any issues or disputes concerning this Sale Order and the Agreement or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired Assets.

37.    Debtor is authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Sale Order.

38.    Notwithstanding Bankruptcy Rule 6004(h), this Sale Order is effective immediately upon entry.

39.    The requirements set forth in Bankruptcy Rule 6004(a) and any applicable local rules are satisfied.

40.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Approval as to Form:

POLSINELLI LLP


By: /s/ Randye B. Soref_____
        Randye B. Soref
        Counsel for Creditor City National Bank

BRINKMAN LAW GROUP, PC


By: /s/ Daren R. Brinkman
       Daren R. Brinkman/ Jory Cook
       Counsel for the Committee


PACHULSKI STANG ZIEHL & JONES LLP


By: /s/ Jeffrey N. Pomerantz
       Jeffrey N. Pomerantz
       Counsel for Buyer Pal American Security (California) Inc.


STEPHANIE M. HINDS
UNITED STATES ATTORNEY


By: /s/ J. Wesley Samples
       J. Wesley Samples
       Assistant United States Attorney
       Attorneys for the Internal Revenue Service


                    **END OF ORDER**

1

COURT SERVICE LIST

2    All ECF Participants

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**PROFESSIONAL TECHNICAL SECURITY SERVICES, INC., Debtor**

**AND**

**PALAMERICAN SECURITY (CALIFORNIA) INC., Buyer**

**Dated as of September 21, 2022**

# TABLE OF CONTENTS

ARTICLE I CERTAIN DEFINITIONS ................................................................................ 1

    1.1    Specific Definitions. ................................................................................. 1
    1.2    Other Terms. ............................................................................................ 4
    1.3    Other Definitional Provisions. ................................................................ 5

ARTICLE II PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES ........... 5

    2.1    Acquired Assets. ...................................................................................... 5
    2.2    Assignment of Leases and Contracts. ..................................................... 7
    2.3    Excluded Assets. ...................................................................................... 7
    2.4    Assumed Obligations. .............................................................................. 8
    2.5    No Other Liabilities Assumed. ................................................................ 8
    2.6    Right to Change Designations. ................................................................ 9

ARTICLE III PURCHASE PRICE AND PAYMENT ........................................................ 9

    3.1    Purchase Price. ........................................................................................ 9
    3.2    Required Deposit. .................................................................................... 9
    3.3    Balance Due at Closing. .......................................................................... 9
    3.4    Allocation and Apportionment of Taxes................................................. 9
    3.5    Further Assurances................................................................................. 10

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF DEBTOR ........................... 10

    4.1    Due Incorporation; Good Standing. ...................................................... 10
    4.2    Authority. ............................................................................................... 10
    4.3    Consents/Notice. .................................................................................... 11
    4.4    Title to and Condition of Acquired Assets. ........................................... 11
    4.5    Contracts and Leases............................................................................. 11
    4.6    Brokers. .................................................................................................. 11
    4.7    Operational Matters/Customers. ........................................................... 12
    4.8    Accounts. ................................................................................................ 12
    4.9    Employees............................................................................................... 12
    4.10   Intellectual Property............................................................................. 12
    4.11   Litigation............................................................................................... 13
    4.12   Permits. .................................................................................................. 13
    4.13   Compliance with Laws. ......................................................................... 13
    4.14   Disclaimer.............................................................................................. 13

ARTICLE V REPRESENTATIONS AND WARRANTIES OF BUYER ............................... 13

    5.1    Buyer's Organization; Good Standing.................................................. 14
    5.2    Buyer's Authority; No Violation. .......................................................... 14
    5.3    Consents, Approvals or Authorizations. ............................................... 14
    5.4    Brokers. .................................................................................................. 14
    5.5    Litigation................................................................................................ 14

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 27 of 68

5.6    Financial Capability and Adequate Assurances of Future Performance. ......... 14

ARTICLE VI BANKRUPTCY COURT APPROVAL AND SALE MOTION ........................ 14

6.1    Reserved. ......................................................................................................... 14
6.2    Bankruptcy Court Approval. ............................................................................ 14
6.3    Sale Motion. ..................................................................................................... 14
6.4    Reserved. ......................................................................................................... 15
6.5    Disputes Regarding Assumed Contracts. ......................................................... 15
6.6    Cooperation With Respect to Sale Motion and this Agreement. ...................... 15

ARTICLE VII MUTUAL COVENANTS ............................................................................. 15

7.1    Consents and Approvals. ................................................................................. 15
7.2    Employees. ...................................................................................................... 16
7.3    Public Statements. ........................................................................................... 16

ARTICLE VIII COVENANTS OF DEBTOR ....................................................................... 16

8.1    Conduct of the Business. .................................................................................. 16
8.2    Access to Information. ...................................................................................... 17
8.3    Notices of Certain Events. ................................................................................ 18
8.4    Name Change. .................................................................................................. 18
8.5    Taxes. ............................................................................................................... 18
8.6    Sale Order. ....................................................................................................... 18
8.7    Risk of Loss. .................................................................................................... 19
8.8    Supplements to Schedules. ............................................................................... 19
8.9    Receipt of Buyer's Assets. ............................................................................... 19

ARTICLE IX COVENANTS OF BUYER ............................................................................. 19

9.1    Assumed Obligations. ...................................................................................... 19
9.2    Reserved. ......................................................................................................... 19
9.3    Reasonable Access to Records and Certain Personnel. .................................... 19
9.4    Receipt of Debtor's Assets. .............................................................................. 19

ARTICLE X CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER ........................ 20

10.1   Representations and Warranties True as of the Effective Date and
       Closing Date. ................................................................................................... 20
10.2   Bankruptcy Condition. ..................................................................................... 20
10.3   No Material Adverse Change. ........................................................................... 20
10.4   Delivery of Acquired Assets and Agreements with Customers. ....................... 20
10.5   Lease/Contract Assumption and Assignment. .................................................. 20
10.6   Consents; Permits. ............................................................................................ 21
10.7   Release of Liens. .............................................................................................. 21
10.8   Agreement with Sergio Reyes, Jr. .................................................................... 21
10.9   Agreement Regarding Accounts. ...................................................................... 21
10.10  Transition Services. .......................................................................................... 21

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 28 of
68

ARTICLE XI CONDITIONS PRECEDENT TO OBLIGATIONS OF DEBTOR.................... 21

11.1    Representations and Warranties True as of the Effective Date and
        Closing Date. .......................................................................................... 21
11.2    Bankruptcy Condition. ............................................................................ 22
11.3    Consents; Permits. ................................................................................... 22

ARTICLE XII DISCLAIMER OF WARRANTIES AND RELEASE ...................................... 22

12.1    Disclaimer of Warranties. ....................................................................... 22
12.2    Reserved. ................................................................................................. 23

ARTICLE XIII CLOSING ......................................................................................... 23

13.1    Closing. ................................................................................................... 23
13.2    Deliveries by Debtor. .............................................................................. 23
13.3    Deliveries by Buyer. ............................................................................... 23
13.4    Insurance. ................................................................................................ 23
13.5    Possession. .............................................................................................. 24

ARTICLE XIV DEFAULT, TERMINATION AND REMEDIES ........................................... 24

14.1    Termination of Agreement. ..................................................................... 24
14.2    Procedure and Effect of Termination and Right to Proceed. .................. 25
14.3    Exclusive Remedies. ............................................................................... 25

ARTICLE XV MISCELLANEOUS ............................................................................... 26

15.1    Expenses. ................................................................................................ 26
15.2    Amendment. ............................................................................................ 26
15.3    Notices. ................................................................................................... 26
15.4    Reserved. ................................................................................................. 27
15.5    Interim Management. .............................................................................. 27
15.6    Waivers. .................................................................................................. 27
15.7    Counterparts. ........................................................................................... 27
15.8    Headings. ................................................................................................ 27
15.9    Applicable Law and Jurisdiction. ........................................................... 27
15.10   Binding Nature; Assignment. ................................................................. 28
15.11   No Third-Party Beneficiaries. ................................................................ 28
15.12   Tax Matters. ............................................................................................ 28
15.13   Construction. ........................................................................................... 28
15.14   Entire Understanding. ............................................................................. 28

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 29 of
68

LIST OF SCHEDULES

SCHEDULE 2.1(a) – Intellectual Property
SCHEDULE 2.1(c) – Fixtures and Equipment
SCHEDULE 2.1(d) – Permits
SCHEDULE 2.1(f) – Accounts
SCHEDULE 2.2 – Leases, Contracts, and Cure Amounts
SCHEDULE 2.3(a) – Excluded Accounts
SCHEDULE 2.3(j) – Excluded Assets

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("<u>Agreement</u>"), dated as of September 21, 2022 (the "<u>Effective Date</u>"), is made by and among the Professional Technical Security Services, Inc., a Delaware corporation ("<u>Debtor</u>"), and PalAmerican Security (California) Inc., a Delaware corporation ("<u>Buyer</u>").  Debtor and Buyer may be referred to individually herein as a "<u>Party</u>" and, collectively, as the "<u>Parties</u>."  In consideration of the mutual covenants, agreements and warranties herein contained, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## ARTICLE I
## CERTAIN DEFINITIONS

1.1     <u>Specific Definitions</u>.  Unless otherwise defined herein, terms used herein shall have the meanings set forth below:

"<u>Accounts</u>" shall have the meaning ascribed thereto in Section 2.1(f) hereof.

"<u>Accounts Amount</u>" shall have the meaning ascribed thereto in Section 2.1(f) hereof

"<u>Acquired Assets</u>" shall have the meaning ascribed thereto in Section 2.1 hereof.

"<u>Agreement</u>" means this Asset Purchase Agreement, including all Exhibits and Schedules hereto, as it may be amended from time to time in accordance with its terms.

"<u>Ancillary Documents</u>" shall have the meaning ascribed thereto in Section 15.9 hereof.

"<u>Assignment and Assumption</u>" shall mean an Assignment and Assumption of Leases, Contracts and other Assumed Obligations, as provided for in Section 13.2 hereof, executed and delivered by Buyer and Debtor in accordance with the terms of this Agreement.

"<u>Assumed Contracts</u>" shall mean those Contracts assigned by Debtor and assumed by Buyer by operation of Section 2.2(b) hereof.

"<u>Assumed Leases</u>" shall have the meaning ascribed thereto in Section 2.2(a) hereof.

"<u>Assumed Obligations</u>" shall have the meaning ascribed thereto in Section 2.4 hereof.

"<u>Avoidance Actions</u>" shall have the meaning ascribed thereto in Section 2.3(i) hereof.

"<u>Bankruptcy Code</u>" means Title 11, United States Code, sections 101-1330, as same shall be amended from time to time.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of California, having jurisdiction over Debtor and its assets in the Chapter 11 Case.

DOCS_SF:107878.8 68795/001

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 31 of 68

"*Bankruptcy Rules*" shall mean the Federal Rules of Bankruptcy Procedure as shall be promulgated by the Supreme Court of the United States, as same shall be applicable in the Chapter 11 Cases.

"*Bill of Sale*" shall have the meaning ascribed thereto in Section 13.2 hereof.

"*Business*" means the business of Debtor involving professional security guard services and related training to Bay Area residential and commercial properties, together with the office operations of the Debtor.

"*Business Day*" shall mean any day other than a Saturday, a Sunday, or a Federal holiday.

"*Buyer*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

"*Chapter 11 Case*" means the pending case commenced by Debtor on February 1, 2022 under Chapter 11 of the Bankruptcy Code, pending in the Bankruptcy Court under docket no. 22-30062

"*Claim*" means all claims, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, rights to payment and remedies whether at law or in equity, of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise, and shall include affirmative and defensive legal rights, as well as any other such legal assertions as fall within the definition of Claim as set forth in Section 101(5) of the Bankruptcy Code having the broadest possible meaning permitted thereunder,

"*Closing*" means the consummation of the transactions contemplated herein in accordance with Article XIII hereof.

"*Closing Date*" means the date on which the Closing shall occur, as more extensively discussed in Section 13.1 hereof.

"*Contracts*" means all contracts, leases, deeds, mortgages, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures and all other agreements, commitments and legally binding arrangements, whether written or oral.

"*Contract Rejection Option*" shall have the meaning ascribed thereto in Section 2.2(b)(ii) hereof.

"*Cure Amount*" shall mean the amounts, if any, necessary to cure all defaults, if any, and to pay all actual pecuniary losses, if any, that have resulted from defaults under the Assumed Contracts and the Assumed Leases.

"*Customer Commitment*" shall have the meaning ascribed thereto in Section 10.4 hereof.

"*Customers*" means any and all customers of Debtor for all purposes relating to the Business.

2

"*Debtor*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

"*Deposit*" shall have the meaning ascribed thereto in Section 3.2(a) hereof.

"*Effective Date*" means the date of this Agreement as stated in the first paragraph hereof.

"*Employees*" shall have the meaning ascribed thereto in Section 9.2 hereof.

"*Excluded Accounts*" shall have the meaning ascribed thereto in Section 2.3(a) hereof.

"*Excluded Accounts Amount*" shall have the meaning ascribed thereto in Section 2.3(a) hereof.

"*Excluded Assets*" shall have the meaning ascribed thereto in Section 2.3 hereof.

"*Excluded Contracts*" shall mean any Contracts or Leases or obligations of Debtor other than the Assumed Contracts.

"*Fixtures and Equipment*" shall have the meaning ascribed thereto in Section 2.1(d) hereof.

"*Hired Employees*" shall have the meaning ascribed thereto in Section 9.2 hereof.

"*Intellectual Property*" shall have the meaning ascribed thereto in Section 2.1(b)

"*Leases*" means all leases, subleases, licenses, concessions and related Contracts, including all amendments, extensions, renewals, guaranties and other agreements with respect thereto.

"*Lien*" means any security interest, lien, charge, mortgage, deed, assignment, pledge, hypothecation, encumbrance, easement, restriction or interest of another Person of any kind or nature.

"*Material Adverse Effect*" means a material adverse change or effect upon any of the Acquired Assets, the Assumed Contracts, or the operations, prospects, condition (financial or otherwise) of the Business which shall have occurred and which (a) has or will materially impaired the ability of Buyer to carry on the Business after the Closing substantially as such Business was conducted on the Effective Date, or (b) the ability of Debtor to perform its obligations under this Agreement or any of the Ancillary Documents; in each case, other than to the extent that such materially adverse impact, change, or effect directly results from (i) any change in general economic conditions in the industries or markets in which the Company operates, (ii) national or international political conditions, including any engagement in hostilities, whether or not pursuant to the declaration of a national emergency or war or the occurrence of any military or terrorist attack, or (iii) the effect of any epidemic, pandemic or disease outbreak (including Covid-19) except, in the case of clauses (i), (ii) or (iii) foregoing, to the extent such event, circumstance, change, occurrence, development, fact or effect has a disproportionate impact on Debtor or the Business as compared to other participants in any of the industries or markets in which the Company conducts its business.

3

"*Ordinary Course of Business*" means from and after the Effective Date, and unless provided otherwise herein, Debtor shall have continued to operate the Business in the same manner as conducted on the Effective Date, and (i) in a manner consistent with preserving the goodwill of the Business as a going concern for the benefit of Buyer, and (ii) otherwise in the ordinary course with respect to markdown and promotional activities in the Business consistent with past practices in effect prior to filing of the Chapter 11 Case.

"*Outside Closing Date*" shall have the meaning ascribed thereto in Section 13.1 hereof.

"*Party*" or "*Parties*" shall have the meaning ascribed thereto in the Preamble of this Agreement.

"*Permits*" shall have the meaning ascribed thereto in Section 2.1(d) hereof.

"*Permitted Designee*" shall have the meaning ascribed thereto in Section 15.10 hereof.

"*Person*" means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"*Petition Date*" means February 1, 2022.

"*Proprietary Information*" shall have the meaning ascribed thereto in Section 2.1(c) hereof.

"*Public Statement*" means a communication in either oral or written form, such as a statement or an announcement, made to the public at large either through a press release or other similar communication, and does not include (i) communications between parties that are intended to be private and not for public consumption, (ii) statements made in open court, (iii) statements made in pleadings filed with a court, (iv) statements made during a deposition or court ordered examination, and (v) statements made in responses to written discovery requests such as interrogatories or admissions.

"*Purchase Price*" shall have the meaning ascribed thereto in Section 3.1 hereof.

"*Regulation*" means any law, statute, regulation, ruling, rule or order of, administered or enforced by or on behalf of any governmental authority.

"*Sale Hearing*" shall have the meaning ascribed thereto in Section 6.3 hereof.

"*Sale Motion*" shall have the meaning ascribed thereto in Section 6.3 hereof.

"*Sale Order*" means an order of the Bankruptcy Court that grants the Sale Motion and the transactions set forth herein in form and substance acceptable to Debtor and Buyer.

A "*third party*" means any Person other than Debtor, Buyer, or any of their respective affiliates.

1.2     Other Terms.  Other terms may be defined elsewhere in the text of this Agreement and, unless otherwise indicated, shall have such meaning through this Agreement.

1.3     Other Definitional Provisions.

(a)     The words "hereof," "herein," and "hereunder" and words of similar import, when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.

(b)     The terms defined in the singular shall have a comparable meaning when used in the plural, and vice versa.

(c)     References herein to a specific Section, Subsection, Exhibit or Schedule shall refer, respectively, to Sections, Subsections, Exhibit or Schedules of this Agreement, unless the express context otherwise requires.

(d)     Wherever the word "include," or "includes," or "including" is used in this Agreement, it shall be deemed to be followed by the words "without limitation."

## ARTICLE II
## PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES

2.1     Acquired Assets.  Subject to the terms and conditions set forth in this Agreement, at the Closing, Debtor shall sell, assign, transfer and deliver to Buyer or cause to be sold, assigned, transferred and delivered to Buyer's designee, and Buyer shall purchase, acquire and take assignment and delivery of, all rights, title and interest of Debtor as of the Closing Date in and to all of Debtor's properties and assets, real, personal or mixed, tangible and intangible, of every kind and description, wherever located and whether or not carried or reflected on the books and records of Debtor that are now, or at the time of Closing will be, used or held for use in or otherwise related to, useful in or necessary for the conduct of, the Business, other than the Excluded Assets, free and clear of all Liens, Claims and encumbrances of whatever kind or nature (all of the assets to be sold, assigned, transferred and delivered to Buyer hereunder shall be deemed included in the term "Acquired Assets" as used herein), including:

(a)     All right, title and interest in and to any and all intellectual property or other general intangibles owned and utilized by Debtor or the Business, including, without limitation, all proprietary and licensed software and all contract rights relating thereto, Debtor's e-commerce tools (if any), all trademarks and trade names, including "ProTech Bay Area" and all goodwill associated therewith, all copyrights, all telephone numbers of Debtor, including all local telephone numbers and any "800" or other toll free telephone numbers, all domain rights and internet website(s), including "www.protechbayarea.com," and names and marks, and the goodwill associated therewith (collectively, the "Intellectual Property").  **Schedule 2.1(a)** hereto sets forth the Intellectual Property as of the Effective Date;

(b)     All proprietary information ("Proprietary Information") in the possession, custody and/or control of Debtor, including, but not limited to, any and all Customer, supplier, and/or mailing and email lists, databases, know how, trade secrets, research, specifications, designs, drawings, plans, processes, quality control protocols, specifications, technical information, diagrams, and schedules as well as all other proprietary information in the possession, custody and/or control of Debtor affiliates associated with the Business;

5

(c)     All (1) furniture, fixtures, furnishings, signage, computer equipment, leasehold improvements, machinery, equipment, tools, owned vehicles, goods, and other tangible personal property owned by Debtor which is used or useful in the day-to-day operation or maintenance of the Business, including but not limited to, any owned computer hardware and software and any furniture, fixtures and/or equipment which are used or useful in the day-to-day operation or maintenance of the Business (collectively, the "Fixtures and Equipment"), and (2) material and supplies located at any such locations. **Schedule 2.1(c)** hereto sets forth the Fixtures and Equipment as of the Effective Date;

(d)     All licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like applicable in any way to the Business to the extent the same are transferable by Debtor to Buyer (the "Permits"). **Schedule 2.1(d)** hereto sets forth the Permits as of the Effective Date;

(e)     All rights, claims, credits, settlement proceeds, causes of action (excluding Avoidance Actions and Excluded Assets) or rights of set off against third parties relating to the Acquired Assets (including, for the avoidance of doubt, those arising under, or otherwise relating to, the Assumed Contracts or Assumed Leases) or the Assumed Liabilities, including all rights under vendors', manufacturers', and contractors' warranties, indemnities and guarantees;

(f)     All undisputed, bona fide, and current accounts and accounts receivable, including work-in-progress or unbilled amounts, that are not older than ninety (90) days as of the Closing Date, net of any and all credits and disputed amounts (collectively, "Accounts"). **Schedule 2.1(f)** hereto sets forth the obligor and the gross amount under each of the Accounts (the "Accounts Amount") existing as of the Effective Date. Debtor shall update the Accounts Amount by 3:00 p.m. Pacific time on one (1) Business Day prior to the Closing Date to reflect the Accounts existing as of the Closing Date and Buyer shall only pay for such Accounts. Debtor and Buyer shall agree to a schedule of the Accounts as of the Closing Date as part of the Closing;

(g)     All prepaid assets, prepaid expenses, credits, refunds, rights of set-off or recoupment, all Customer deposits relating to the Acquired Assets, other than rebates or refunds related to Debtor's termination of its insurance and any security deposits for Leases that are not Assumed Leases;

(h)     To the extent relating to the Business, all books, records, manuals, information, computer files and similar materials, except for those records identified in Section 2.3(d) hereof;

(i)     Any claims, counterclaims, setoffs, rights of recoupment, equity rights or defenses that Debtor may have with respect to any Assumed Liabilities;

(j)     All rights of Debtor under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees and agents of Debtor or with third parties to the extent relating to the Business or the Acquired Assets (or any portion thereof), excluding any agreement with Generational Equity, LLC; and

(k)     All other assets that are related to, or used in connection with, the Acquired Assets or the Business (but excluding the Excluded Assets).

6

Case: 22-30062   Doc# 221   Filed: 09/29/22   Entered: 09/29/22 09:24:10   Page 36 of 68

2.2 <u>Assignment of Leases and Contracts</u>. **Schedule 2.2** sets forth a list of all Leases and Contracts, together with Debtor's good faith estimate as of the Effective Date of the estimated Cure Amounts with respect to each counterparty to any of the Leases and Contracts. Subject to the terms and conditions set forth in this Agreement, including, but not limited to this Section 2.2, Debtor will assign and transfer to Buyer, effective as of the Closing Date, all of Debtor's (x) right, title and interest in and to, and Buyer will take assignment of, the following Contracts and Leases, and (y) Debtor's obligations to pay to each counterparty of each Assumed Lease and Assumed Contract with such assignment and transfer to thereafter be free and clear of any and all Liens, Claims and encumbrances of whatever kind or nature (and the right, title and interest of Debtor under all of the following shall be deemed included in the term "Acquired Assets" as used herein):

(a) All Leases for the real property locations, if any, designated to be acquired by Buyer (the "<u>Assumed Leases</u>"), which shall expressly exclude those Leases identified as Excluded Assets in Section 2.3(e) hereof; and

(b) Any and all Contracts designated to be acquired by Buyer (the "<u>Assumed Contracts</u>"), which shall expressly exclude those Contracts and other contractual rights identified as Excluded Assets in Section 2.3(e) hereof; <u>provided</u>, <u>however</u> as to items (a) and (b) above:

(i) prior to the Effective Date, Debtor shall not reject any Leases or Contracts except as agreed by Buyer in writing, and shall not have rejected any Leases or Contracts pending the exercise or non-exercise by Buyer of the Contract Rejection Option in accordance with the terms hereof; and

(ii) Buyer shall have the right by providing written notice to Debtor and the counter-party to a Lease or Contract until the Closing to determine whether or not to acquire any Lease or Contract by way of assumption and assignment from Debtor pursuant to this Agreement (the "<u>Contract Rejection Option</u>"); <u>provided further</u> that Buyer shall have the option to designate additional Contracts and Leases, if any, that do not appear on **Schedule 2.2** for assumption by Debtor and assignment to Buyer following the Closing Date.

2.3 <u>Excluded Assets</u>. Notwithstanding anything to the contrary in this Agreement, the following assets of Debtor, shall be retained by Debtor and are not being sold or assigned to Buyer hereunder (all of the following are referred to collectively as the "<u>Excluded Assets</u>"):

(a) Any accounts and accounts receivable that do not constitute Accounts (collectively, "<u>Excluded Accounts</u>"). **Schedule 2.3(a)** hereto sets forth the obligor and the gross amount under each of the Excluded Accounts (the "<u>Excluded Accounts Amount</u>") existing as of the Effective Date. Debtor shall update the Excluded Accounts Amount immediately prior to the Closing Date to reflect the Excluded Accounts existing as of such date. To the extent that any of the Excluded Accounts are payable by the same payors as the Accounts, Buyer shall have sole and exclusive opportunity to collect such Excluded Accounts (with any proceeds applied first against the Accounts);

(b) Any capital stock held by Debtor or any other affiliates of Debtor;

(c) Subject to Section 2.1(g), cash and cash equivalents;

7

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 37 of 68

(d)     Any and all company records related to this transaction and the Chapter 11 Case, provided that Debtor may also retain a copy of the records it turns over to Buyer that are necessary for the administration of the Chapter 11 Case and shall have the right to request copies of documents for up to twenty-four (24) months from Closing at Debtor's expense;

(e)     Any Contracts and Leases that do not constitute Assumed Contracts and Assumed Leases pursuant to Section 2.2 hereof, including, without limitation, Contracts and Leases not designated by Buyer to be assigned by Debtor and assumed by Buyer or otherwise rejected by Debtor, as well as Debtor's pre-petition contract with Generational Equity, LLC and any claims arising from said contract;

(f)     Any refunds or claims for refunds of income or company taxes;

(g)     Any insurance policies and proceeds thereof owned by Debtor;

(h)     Any governmental rebates or refunds due or which may become due to Debtor pursuant to any federal or state sales, customs or excise tax laws;

(i)     All Claims arising under Section 544-550 of the Bankruptcy Code ("Avoidance Actions"), provided that Debtor acknowledges that no Avoidance Actions shall be asserted against counterparties to Assumed Contracts or Assumed Leases and any such Avoidance Actions shall be deemed waived on behalf of Debtor's estate upon the Closing Date;

(j)     Such other items mutually agreed upon by Debtor and Buyer and specified on **Schedule 2.3(j)** hereto; and

(k)     The rights which accrue or will accrue to Debtor under this Agreement and the Ancillary Documents.

2.4     Assumed Obligations.  At the Closing, except as provided in Section 2.3 and/or in Section 2.5 hereof, Buyer shall assume, and agree to pay, perform, fulfill and discharge those obligations which are required to be performed after the Closing Date under the Assumed Contracts and Assumed Leases from and after the date of the Closing; provided, however, Debtor shall pay the Cure Amounts due to any and all third parties to any Assumed Contracts and Assumed Leases, which Cure Amount shall be itemized by Debtor prior to Closing on **Schedule 2.2** hereto. The obligations and liabilities set forth in this Section 2.4 are collectively defined herein as the "Assumed Obligations."

2.5     No Other Liabilities Assumed.  Other than the Assumed Obligations, Buyer is not assuming nor agreeing to manage, discharge, or otherwise be liable for, and shall be deemed not to have assumed any liabilities or obligations of Debtor. Debtor acknowledges and agrees that pursuant to the terms and provisions of this Agreement and under any Contracts, unexpired leases, and other contractual rights of Debtor, Buyer will not assume any obligation of Debtor, other than the Assumed Obligations.  In furtherance and not in limitation of the foregoing, neither Buyer nor any of its affiliates shall assume, and shall not be deemed to have assumed, other than as specifically set forth in Section 2.4 hereof, any debt, Claim, obligation or other liability of Debtor or any of its affiliates whatsoever.  Disclosure of any obligation or liability on any schedule to this Agreement shall not create an Assumed Obligation or other liability of Buyer, except where such

8

Case: 22-30062     Doc# 221     Filed: 09/29/22     Entered: 09/29/22 09:24:10     Page 38 of 68

disclosed obligation has been expressly assumed by Buyer as an Assumed Obligation in accordance with the provisions of Section 2.4 hereof.

2.6    Right to Change Designations.  Notwithstanding anything in this Agreement to the contrary, Buyer reserves the right to designate in one or more written notices to Debtor at any time prior to the Closing Date, any Acquired Asset as an Excluded Asset and any Excluded Contract as an Assumed Contract (it being understood and agreed that such written notices shall be deemed to have automatically updated and revised the applicable schedules hereto for all purposes of this Agreement); provided, however, that from and after the Effective Date, any designation by Buyer of any Acquired Assets as Excluded Assets or Excluded Contracts shall not reduce the Purchase Price payable for the Acquired Assets.

## ARTICLE III
## PURCHASE PRICE AND PAYMENT

3.1    Purchase Price.  Upon the terms and conditions set forth herein, Debtor hereby agrees to sell to Buyer all of the Acquired Assets for the aggregate sum of: (a) the dollar-for-dollar value of the Accounts as of the Closing Date as set forth in a schedule delivered by Debtor and agreed by Buyer just prior to the Closing, *plus* (b) One Million One Hundred Thousand and No/100 Dollars ($1,100,000.00) (the "Purchase Price").  After application of the Deposit (as defined below), any remaining portion of the Purchase Price shall be payable by wire transfer or other immediately available funds upon the Closing Date.

3.2    Required Deposit.  Within three (3) Business Days of the Effective Date of this Agreement, Buyer shall deliver by immediately available funds, the sum of Five Hundred Thousand Dollars ($500,000) (the "Deposit") to Debtor's counsel, which shall be held in a trust account subject to the terms and provisions hereof.  If Buyer fails to make the Deposit within the time period required herein, this Agreement shall automatically terminate and be of no further force or effect, and neither Party shall have any rights against the other except as may be otherwise set forth in this Agreement.  The Deposit shall not be disbursed by Debtor's counsel to Debtor except on the Closing Date, or by specific order of the Bankruptcy Court, or upon written consent of Buyer.

3.3    Balance Due at Closing.  The balance of the Purchase Price shall be delivered by immediately available funds to Debtor's counsel no later than 2:00 p.m. Pacific time on the Closing Date.

3.4    Allocation and Apportionment of Taxes.  Any sales, use, transfer or other similar taxes or charges assessed at Closing or at any time thereafter on the transfer of any Acquired Assets shall be paid by Buyer.  Buyer shall cooperate in providing Debtor with any appropriate resale exemption certifications and other similar documentation.  All property taxes for a tax period which includes (but does not end on) the Closing Date shall be apportioned between Debtor, on the one hand, and Buyer, on the other hand, based on the number of days of such tax period included in the pre-Closing tax period and the number of days of such tax period after the Closing Date.  Debtor shall be liable for the proportionate amount of such property taxes that is attributable to the pre-Closing tax period, and Buyer shall be liable for the proportionate amount of such property taxes that is attributable to the post-Closing tax period.

9

3.5     Further Assurances.  From time to time after the Closing and without further consideration, (a) Debtor, upon the request of Buyer and at Debtor's expense, shall execute and deliver such documents and instruments of conveyance and transfer as Buyer may reasonably request in order to consummate more effectively the purchase and sale of the Acquired Assets as contemplated hereby and to vest in Buyer title to the Acquired Assets transferred hereunder, provided that (i) Debtor shall not be required to execute or deliver any document or instrument pursuant to this Section 3.5 which includes any provision(s) which imposes obligations upon Debtor which are greater than those imposed upon Debtor under the other provisions of this Agreement, the Ancillary Documents, the Sale Order, or the documents executed pursuant hereto, and (ii) in no event shall Debtor be required to incur any material cost or expense in the performance of its obligations under this Section 3.5 (it being understood that Buyer shall in any event be entitled to require Debtor to take such action as Debtor would otherwise be required to take pursuant to this Section 3.5 but for the cost thereof by providing to Debtor the amount Debtor reasonably anticipate incurring in excess of immaterial costs and expenses of taking such action), and (b) Buyer, upon the request of Debtor and at Buyer's expense, shall execute and deliver such documents and instruments of assumption as Debtor may reasonably request in order to confirm Buyer's liability for the obligations under the Assumed Obligations or otherwise more fully consummate the transactions contemplated by this Agreement; provided that (i) Buyer shall not be required to execute or deliver any document or instrument pursuant to this Section 3.5 which includes any provision(s) which impose obligations upon Buyer which are greater than those imposed upon Buyer under the other provisions of this Agreement or the documents executed pursuant hereto, and (ii) in no event shall Buyer be required to incur any material cost or expense in the performance of its obligations under this Section 3.5 (it being understood that notwithstanding the foregoing, Debtor shall in any event be entitled to require Buyer to take such action as Buyer would otherwise be required to take pursuant to this Section 3.5 but for the cost thereof by providing to Buyer the amounts Buyer reasonably anticipates incurring in excess of immaterial costs and expenses in taking the action).  Further, Debtor shall not convert the Chapter 11 Case to chapter 7 or dismiss the Chapter 11 Case during the term of any transition services agreement with Buyer.

# ARTICLE IV
# REPRESENTATIONS AND WARRANTIES OF DEBTOR

As an inducement for Buyer to enter into this Agreement and to purchase the Acquired Assets, Debtor represents and warrants to Buyer that to the best of its knowledge and belief, each of the following statements is true and correct as of the date of this Agreement and as of the Closing Date:

4.1     Due Incorporation; Good Standing.  Debtor is a corporation duly formed under the laws of the State of Delaware and is in good standing thereunder as of the Effective Date and as of the Closing Date. Subject to the Bankruptcy Code and the Bankruptcy Court, Debtor has full power and authority to own, use and lease its properties and to conduct its Business as such Business is currently conducted.  Debtor is qualified to do business in California as a foreign corporation and is in good standing with California's Secretary of State.

4.2     Authority.  Subject to the Sale Order, Debtor has all requisite company power and authority to enter into this Agreement and to carry out the transactions contemplated hereby, and

the execution, delivery and performance of this Agreement by Debtor shall be duly and validly authorized and approved by all necessary company action. Subject to the approval and entry of the Sale Order by the Bankruptcy Court, this Agreement shall constitute the legal and binding obligation of Debtor, enforceable against Debtor in accordance with its terms.

4.3  <u>Consents/Notice</u>.  Except for consents, approvals or authorizations of, or filings with the Bankruptcy Court, no notice to, filing with, authorization of, exemption by, or consent of any governmental authority is required in order for Debtor to consummate the transactions contemplated hereby.  Debtor has provided notice of this Agreement to all creditors, unions, governmental authorities, and other parties in interest in the Chapter 11 Case.

4.4  <u>Title to and Condition of Acquired Assets</u>.  At and as of the Closing Date, Debtor will have good and marketable title to, or a valid leasehold or license interest in, and will have, subject to the entry of the Sale Order for which no stay has been obtained, the right to sell, convey, transfer, assign and deliver to Buyer, free and clear of all Liens, Claims, interests and encumbrances of whatever kind or nature, the Acquired Assets, including, but are not limited to, the Assumed Leases the Assumed Contracts.  At and as of the Closing Date, the Bill of Sale and the Assignment and Assumption will be effective to vest in Buyer good and valid record and marketable title to the Acquired Assets, including, but not limited to, the Assumed Leases and the Assumed Contracts.  As of the Closing Date, Debtor will have good and marketable title to, and will have the right to sell, convey, transfer, assign and deliver to Buyer its interest in the Proprietary Information. Following the Closing, Debtor shall advise any warehouseman, bailee, or agent with possession of any Acquired Assets of the transaction contemplated hereby and of the Sale Order effectuating it, and, upon request of Buyer, cause such persons to transfer possession of such Acquired Assets to Buyer.  **Schedule 2.1(c)** hereof is a true and complete list of all Fixtures and Equipment.

4.5  <u>Contracts and Leases</u>.  **Schedule 2.2** hereof is a true and complete list of all Contracts and Leases that are material to the Business (*i.e.*, Contracts under which Debtor would be required to pay or be paid $50,000 or more annually to or from another party) as of the Effective Date to which a Debtor is party and which relates primarily to the Business, or to which any of the Acquired Assets or Assumed Obligations are subject.  Except as may have occurred solely as a result of the commencement of the Chapter 11 Case, and subject to payment of the Cure Amount, if any, each of the Assumed Contracts and Assumed Leases is in full force and effect and there are no material defaults thereunder on the part of any other party thereto which are not subject to an automatic stay, and the  subject to payment of the Cure Amounts, if any, Debtor is not in default in any material respect in the performance, observance or fulfillment of any of its obligations, covenants or conditions contained in any Assumed Contract and Assumed Lease to which it is a party or by which it or its property is bound which are not subject to an automatic stay.  Each Assumed Contract and Assumed Lease was entered into at arm's length and in the Ordinary Course of Business and, subject to the Sale Order and the assignment of each Assumed Contract and Assumed Lease by the Debtor in accordance with applicable Law, is a valid and binding obligation of the Debtor and the other parties thereto and is in full force and effect in accordance with its terms.

4.6  <u>Brokers</u>.  Except as disclosed in the retention agreement between B. Riley and Debtor as filed with and approved by the Bankruptcy Court, Debtor has not engaged any agent,

DOCS_SF:107878.8 68795/001

Case: 22-30062   Doc# 221   Filed: 09/29/22   Entered: 09/29/22 09:24:10   Page 41 of
68

broker or other person acting pursuant to the express or implied authority of Debtor which is or may be entitled to a commission or broker or finder's fee in connection with the transactions contemplated by this Agreement or otherwise with respect to the sale of the Acquired Assets. Debtor shall be solely responsible for the payment of any commission, broker or finder's fee due upon sale of the Acquired Assets to any person or entity retained by Debtor.

      4.7    <u>Operational Matters/Customers</u>.

      (a)    Debtor shall not have intentionally taken, and shall not intentionally take through and including the Closing Date, outside of the ordinary course of business, any actions to increase the cost of operating the Business.

      (b)    Debtor shall not have intentionally taken, and shall not intentionally take through and including the Closing Date, any actions to decrease the value of the Acquired Assets prior to the Closing Date.

      (c)    Debtor has and shall continue through and including the Closing Date to operate the Business in the Ordinary Course of Business.

      (d)    To Debtor's knowledge the amounts reflected on **Schedule 2.2** reflect the aggregate amount of Cure Amounts that Debtor would be obligated to pay for its pre-assumption arrears under the Contracts.

      (e)    Debtor's current annual projected revenue with Customers totals no less than $35,000,000.00 as of the Effective Date.

      4.8    <u>Accounts</u>.  The Accounts reflected on **Schedule 2.1(f)** hereto as of the Effective Date and as updated immediately prior to the Closing: (a) have arisen from bona fide transactions entered into by Debtor involving the rendering of services in the Ordinary Course of Business, (b) constitute Debtor's best estimate of valid Accounts of Debtor, (c) are not subject to claims of set-off or other defenses or counterclaims asserted by any obligor, and (d) have not been accelerated, discounted, deferred, or adjusted by Debtor outside the Ordinary Course of Business.

      4.9    <u>Employees</u>.  The information provided by Debtor to Buyer regarding the employees currently employed by Debtor, including compensation, bonus, benefit, length of service and other terms of employment for such employees, provided by Debtor to Buyer prior to the Effective Date, is true and complete as of the Effective Date.  Debtor is a party to a collective bargaining agreement covering its security guard employees, and such agreements were made available for Buyer's review in the due diligence materials provided by Debtor.  To the knowledge of Debtor, there are no strikes, lockouts or other material labor disputes pending or, to the knowledge of Debtor, overtly threatened by or with respect to any employees.

      4.10    <u>Intellectual Property</u>.  The trade names, service marks, assumed names, trademarks and trademark applications set forth in **Schedule 2.1(a)** are the only trade names, service marks, assumed names, trademarks and trademark applications that are currently used in the Business by Debtor.  To Debtor's knowledge, the use of the Intellectual Property by Debtor in the manner currently used by Debtor does not require the consent of any other Person.  The Intellectual Property is either owned by Debtor or is licensed to Debtor and Debtor has a legal right to use it

DOCS_SF:107878.8 68795/001

in the manner used by Debtor, and, upon approval and entry of the Sale Order by the Bankruptcy Court, the Intellectual Property owned by Debtor may be transferred by Debtor to Buyer, free and clear of any Liens.  Debtor has not granted any third party any license or right to use the Intellectual Property and, to the Debtor's Knowledge, no other Person has an interest in or a right or license to use, or the right to license any other Person to use any of the Intellectual Property owned by Debtor.  There are no Claims of any other Person pertaining thereto which have been received by Debtor and no proceedings have been instituted, are pending or, to the Debtor's knowledge, threatened, which challenge Debtor's rights in respect thereof.  To Debtor's knowledge, none of the Intellectual Property owned by Debtor is being infringed by another Person or is subject to any outstanding order, decree, ruling, charge, injunction, judgment or stipulation.  No Claim is pending or, to the Debtor's Knowledge, threatened charging Debtor with infringement of any adversely held proprietary or intellectual property right.

4.11    <u>Litigation</u>.  Other than the Chapter 11 Case and the matters and proceedings that may arise therein, as of the Effective Date and the Closing, there is no action, suit, investigation or proceeding pending against, or to the knowledge of Debtor, threatened against or affecting, the Acquired Assets before any court or arbitrator or any governmental, quasi-governmental, regulatory or administrative department, agency, commission or authority, which is reasonably likely to have a Material Adverse Effect or which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

4.12    <u>Permits</u>.  The Permits set forth on **Schedule 2.1(d)** comprise all permits required for the (i) ownership or use of the Acquired Assets, and (ii) operation of the Business, are held by Debtor and are in full force and effect.  To Debtor's knowledge, (i) debtor is in compliance with its obligations under each of the Permits and the Regulations of any governmental, quasi-governmental, regulatory or administrative department, agency, commission or authority issuing such Permits, and (ii) no condition exists that with notice or lapse of time or both would constitute a default under, or a violation of, any Permit, that individually or in the aggregate could reasonably be expected to have a Material Adverse Effect.

4.13    <u>Compliance with Laws</u>.  To Debtor's knowledge, except as to Debtor's payroll tax obligations, Debtor is not in material violation of any Regulation applicable to the Acquired Assets or the conduct of the Business (including any environmental law).

4.14    <u>Disclaimer</u>.  Debtor makes no representation or warranty to Buyer, express or implied, with respect to the Acquired Assets or the Assumed Contracts or any other matter related to this Agreement other than as expressly stated in this Article IV.  As provided in Article XII, any and all other representations or warranties are disclaimed.

**ARTICLE V**
**<u>REPRESENTATIONS AND WARRANTIES OF BUYER</u>**

As an inducement for Debtor to enter into this Agreement and sell the Acquired Assets, Buyer represents and warrants to Debtor that to the best of its knowledge and belief, each of the following statements is true and correct as of the Effective Date and as of the Closing Date:

13

5.1     Buyer's Organization; Good Standing.  Buyer is a corporation duly formed, validly existing and in good standing under the laws of the State of Delaware, with full power and authority to own, use or lease its properties and to conduct its business as such properties are owned, used or leased and as such business is currently conducted.

5.2     Buyer's Authority; No Violation.  Buyer has all requisite corporate power and authority to enter into this Agreement and to carry out the transactions contemplated hereby, and the execution, delivery and performance of this Agreement by Buyer shall be duly and validly authorized and approved by all necessary limited liability company action. This Agreement shall constitute the legal and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except that the enforceability hereof may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and that the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding may be brought.

5.3     Consents, Approvals or Authorizations.  Except for consents, approvals or authorizations of, or filings with the Bankruptcy Court, no notice to, filing with, authorization of, exemption by, or consent of any governmental authority is required in order for Buyer to consummate the transactions contemplated hereby.

5.4     Brokers.  Buyer has incurred no liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

5.5     Litigation.  There are no actions pending or, to the knowledge of Buyer, threatened, that question the validity of this Agreement or that could reasonably be expected to have a Material Adverse Effect on Buyer or on the consummation of the transactions contemplated by this Agreement.

5.6     Financial Capability and Adequate Assurances of Future Performance.  Buyer has financial capacity to immediately consummate the transaction contemplated by this Agreement and well as the resources to provide adequate assurances of future performance as to an Assumed Contract and/or Assumed Lease.

### ARTICLE VI
### BANKRUPTCY COURT APPROVAL AND SALE MOTION

6.1     Reserved.

6.2     Bankruptcy Court Approval.  This Agreement is subject to approval by the Bankruptcy Court.  Debtor agrees not to solicit further offers or overbids for the Acquired Assets while this Agreement remains in effect.

6.3     Sale Motion.  On September 12, 2022, Debtor filed a motion pursuant to Section 363(f) of the Bankruptcy Code to approve the sale of the Acquired Assets to Buyer, free and clear of all Liens other than permitted exceptions (the "Sale Motion"). The Sale Motion also asked the Bankruptcy Court to waive the stay imposed by Federal Rule of Bankruptcy Procedure 6004(h).

14

The Sale Motion included a motion to assume and assign executory contracts or unexpired leases related to the proposed sale. The hearing on the Sale Motion shall be referred to as the "Sale Hearing."

      6.4     <u>Reserved</u>.

      6.5     <u>Disputes Regarding Assumed Contracts</u>. With respect to any Assumed Contract any disputes with respect to any alleged default or the amount of a cure payment or other obligation under such Assumed Contract shall be determined at the Sale Hearing, or as soon thereafter as reasonably practical.

      6.6     <u>Cooperation With Respect to Sale Motion and this Agreement</u>. Buyer and Debtor will use their commercially reasonable efforts to take all actions and do all things necessary or appropriate to comply with and satisfy the terms and conditions of this Agreement and consummate the transactions contemplated by this Agreement. Buyer will provide evidence to establish that Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code, and cooperate with Debtor to comply with the terms and conditions of and consummate the transactions contemplated by this Agreement, and Buyer will not interfere, directly or indirectly, with such efforts by Debtor.

**ARTICLE VII**
**<u>MUTUAL COVENANTS</u>**

      7.1     <u>Consents and Approvals</u>. Debtor and Buyer shall each use their commercially reasonable best efforts (a) to obtain all consents and approvals, as reasonably requested by Buyer and Debtor, to effectively consummate the purchase and sale of the Acquired Assets and the assumption and assignment of the Assumed Contracts, Assumed Leases, and Assumed Obligations, as applicable, together with any other necessary consents and approvals to consummate the transactions contemplated hereby, (b) to make, as reasonably requested by Buyer and Debtor, all filings, applications, statements and reports to all authorities which are required to be made prior to the Closing Date by or on behalf of Buyer and/or Debtor or any of their respective affiliates pursuant to any applicable Regulation in connection with this Agreement and the transactions contemplated hereby, and (c) to obtain, as reasonably requested by Buyer and Debtor, all required consents and approvals (if any) to assign and transfer the Permits to Buyer at Closing and, to the extent that one or more of the Permits are not transferable, to obtain replacements therefor; <u>provided</u> that Debtor shall not be required to make any filing in connection with the transfer of a Permit or take any other action required by this sentence unless Buyer advances any and all fees and other charges imposed by any applicable authority or other Person in connection with such filing, transfer or other requested action. In the event that certain Permits are not transferable or replacements therefor are not obtainable on or before the Closing, but such Permits are transferable or replacements therefor are obtainable after the Closing, Buyer and Debtor shall continue to use such reasonable efforts in cooperation with the other after the Closing as may be required to obtain all required consents and approvals to transfer, or obtain replacements for, such Permits after Closing and shall do all things reasonably necessary to give Buyer the benefits which would be obtained under such Permits.

15

7.2     Employees.  Information regarding the employees with respect to the Business ("Employees") has been, and will continue to be, provided by Debtor to Buyer.  Upon the Closing, Buyer may offer to certain Employees, as Buyer may determine in its sole discretion, continued at-will employment by Buyer in accordance with the standard personnel policies of Buyer. Employees who accept offers of employment made by Buyer pursuant to this section shall be referred to hereinafter as the "Hired Employees."  Debtor shall assist Buyer in effecting the change of employment of the Hired Employees as of the Closing in an orderly fashion.  Nothing herein expressed or implied shall confer upon any Employee of Debtor, any Hired Employee, any other employee or any legal representative thereof any additional rights or remedies, including any additional right to employment or continued employment for any specified period, of any nature or kind whatsoever, under or by reason of this Agreement.  Debtor shall be solely responsible for compliance with its WARN Act, COBRA, or union obligations, as and to the extent applicable. Buyer may elect to assume the Debtor's Employee benefit plans or union contracts, but is under no obligation do so or to provide to the Hired Employees those benefits previously offered by Debtor to the Employees.  Following the Closing, Debtor shall not retain any employees for the purpose of competing with Buyer in its post-Closing operation of the Business or the Acquired Assets and Debtor shall not engage in any operations that compete or conflict with the Business or the Acquired Assets purchased by Buyer.

7.3     Public Statements.  Prior to the Closing, the Parties shall consult with each other prior to issuing any Public Statement with respect to this Agreement or the transactions contemplated hereby and shall not issue any such Public Statement without the prior written consent of the other Party, which approval shall not be unreasonably withheld, conditioned or delayed; provided, that, nothing herein shall prohibit a Party from making public disclosures or Public Statements required by applicable law, in connection with any hearing or filing with the Bankruptcy Court or pursuant to any listing or similar agreement with or rules of any securities exchange or similar regulatory body, provided that in such event the Party intending to make such release with the securities exchange or similar regulatory body shall use its commercially reasonable efforts to provide the other Party with a copy of such public disclosure contemporaneously with the making of such public disclosure.

### ARTICLE VIII
### COVENANTS OF DEBTOR

8.1     Conduct of the Business.  From the date hereof until the earlier of the termination of this Agreement or the Closing Date, except (i) as consented to in writing by Buyer (which consent Buyer may grant or withhold in its sole discretion), (ii) as may be required by the Bankruptcy Court or (iii) for any action expressly required to be taken pursuant to this Agreement, (xx) Debtor shall (A) conduct its Business in the Ordinary Course of Business consistent with Debtor's practices since the Petition Date, (B) comply in all material respects with all applicable laws (including, if applicable, maintaining any Permits held by Debtor and required for the current operation of the Business) and all Assumed Contracts and Assumed Leases, and (C) preserve the Business intact and preserve the goodwill of and relationships with governmental authorities, Customers, vendors, business partners, employees and others having business dealings with the Business in all material respects; and (yy) without limiting the generality of the foregoing, Debtor will not:

16

Case: 22-30062     Doc# 221     Filed: 09/29/22     Entered: 09/29/22 09:24:10     Page 46 of 68

(a)     with respect to the Business, acquire a material amount of assets (including any equipment or inventory) from any other Person (including by merger, share exchange, joint venture, or other extraordinary transaction);

(b)     alter, change, or terminate employee relationships or compensation other than in the Ordinary Course of Business;

(c)     sell, transfer, lease, license, mortgage, encumber, market, solicit offers for, or otherwise dispose of any Acquired Assets other than in the Ordinary Course of the Business consistent with past practice;

(d)     fail to maintain, or allow to lapse, or abandon any Intellectual Property;

(e)     fail to maintain any Customer lists or other books and records of the Business in the Ordinary Course of Business;

(f)     destroy or fail to preserve any Customer data except to the extent required by applicable law and in the Ordinary Course of Business consistent with past practice;

(g)     take any action that would reasonably be expected to cause the failure of any condition contained in this Agreement;

(h)     as to any account receivable that is an Acquired Asset: (A) sell, assign, transfer, or encumber such account receivable, (B) compromise or otherwise settle such account receivable for less than the full amount thereof, (C) grant any extension of time for the payment of such account receivable, (D) allow any credit or discount on such account receivable, (E) release, wholly or partially, any Person liable for the payment of such account receivable, (F) accelerate the time of payment of such account receivable, or (G) amend, modify or supplement such account receivable in any manner that could adversely affect the value thereof; except that in the case of each of clauses (B) – (G), Debtor may take such actions as are in the Ordinary Course of Business; or

(i)     agree or commit to do any of the foregoing.

8.2     Access to Information.  Subject to applicable law (provided, however, in any such case, Debtor and Buyer shall use commercially reasonable efforts to identify and pursue a permissible method of providing such disclosure without violating such law), from the date hereof until the earlier of the termination of this Agreement or the Closing Date, Debtor shall (a) give Buyer and its representatives reasonable access during normal business hours to the offices, properties, officers, employees, accountants, auditors, counsel and other representatives, books and records of Debtor in each case to the extent relating to the Acquired Assets, as Buyer reasonably deems necessary in connection with effectuating the Closing, (b) furnish to Buyer and its representatives such information as Buyer and its representatives reasonably request, (c) cooperate reasonably with Buyer in its investigation of the Acquired Assets or the Business, and (d) permit Buyer to access and download all information, including payroll, vendor, and Customer records, necessary in order to prepare for an orderly transition of the Business to Buyer upon the Closing Date.

8.3    <u>Notices of Certain Events</u>.  From the date hereof until the earlier of the termination of this Agreement or the Closing Date, Debtor shall promptly notify Buyer of:

(a)    any notice or other written communication from any Person alleging that the consent of such Person is or may be required in connection with the consummation of the Closing;

(b)    any material written communication from any governmental authority in connection with or relating to this Agreement and the transactions in connection therewith; or

(c)    any notice or other communication from any Customer or Employee relating to a termination, breach, or modification of service or employment, threatening litigation, or complaining about Debtor's performance, actions, or conduct.

8.4    <u>Name Change</u>.  Promptly after the Closing Date, Debtor shall use commercially reasonable efforts to take such corporate and other actions necessary to change its company name to one that is not similar to, or confusing with, its current name, including any necessary filings required by the law of the state of its organization, and shall thereafter provide Buyer with written evidence of such name change. Within seven (7) days of the Closing Date, Debtor shall also prepare and file a motion with the Bankruptcy Court to change the caption of the Chapter 11 Case to reflect such name change.

8.5    <u>Taxes</u>.  Without the prior written consent of Buyer (such consent not to be unreasonably withheld by Buyer, it being acknowledged and agreed that it shall not be unreasonable for Buyer to withhold such consent to any proposed action by Debtor which would (or would reasonably be expected to) materially adversely affect Buyer's ownership, use and/or operation of the Acquired Assets and/or the Business following the Closing), Debtor shall not make, change or revoke any tax election, file any amended tax return, enter into any closing agreement, settle or compromise any tax claim or assessment, or consent to any extension or waiver of the limitation period applicable to any claim or assessment with respect to taxes, in each case, to the extent such action would adversely affect the Acquired Assets or the Business.

8.6    <u>Sale Order</u>.  Debtor shall use its commercially reasonable efforts to secure the entry of the Sale Order containing provisions, including, (A) approving, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, (1) the execution, delivery and performance by Debtor of this Agreement, (2) the sale of the Acquired Assets to Buyer on the terms set forth herein and free and clear of all Liens, Claims, or other encumbrances (other than Assumed Liabilities), and (3) the performance by Debtor of its obligations under this Agreement; (B) authorizing and empowering Debtor to assign to Buyer the Assumed Contracts and Assumed Leases; (C) finding that Buyer is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code, not a successor to Debtor and grant Buyer the protections of section 363(m) of the Bankruptcy Code; and (D) finding that Buyer shall have no liability or responsibility for any liability or other obligation of Debtor arising under or related to the Acquired Assets other than as expressly set forth in this Agreement, including successor or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity.

18

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 48 of 68

8.7     Risk of Loss.  The risk of loss with respect to the Acquired Assets shall remain with Debtor until the Closing.  Pending the Closing, Debtor shall maintain in force the policies of property damage insurance under which any Acquired Asset is insured.

8.8     Supplements to Schedules.  From time to time up to the Closing, Debtor shall promptly supplement or amend the Schedules that it has delivered with respect to any matter first existing or occurring following the date hereof that (a) if existing or occurring at or prior to the date hereof, would have been required to be set forth or described in the Schedules, or (b) is necessary to correct any information in the Schedules that has been rendered inaccurate thereby.  All Schedules (and any revisions thereto) are subject to Buyer's approval.

8.9     Receipt of Buyer's Assets.  Debtor agrees that, from and after the Closing, in the event it receives any cash or cash equivalents that properly constitute the property of Buyer in accordance with the terms of this Agreement, specifically including any proceeds or collections of the Accounts, such cash or cash equivalents shall be held by Debtor in trust for Buyer, and further shall be accounted for and paid over to Buyer promptly after its receipt.

Whether or not fully performed by Debtor concurrently with or prior to the Closing, all of Debtor's covenants set forth in this Article VIII shall survive the Closing.

### ARTICLE IX
### COVENANTS OF BUYER

9.1     Assumed Obligations.  To the extent Buyer has identified any Contract or Lease as an Assumed Contract or Assumed Lease under this Agreement, Buyer shall be responsible, separate and apart from the payment of the Purchase Price, to provide adequate assurance of future performance.

9.2     Reserved.

9.3     Reasonable Access to Records and Certain Personnel.  Following consummation of the Closing, so long as such access does not unreasonably interfere with Buyer's business operations and for a period not to exceed twenty-four (24) months following the Closing Date, Buyer shall permit Debtor's employees, agents, counsel and other professionals employed in the Chapter 11 Case, or otherwise retained by Debtor, reasonable access to the financial and other books and records relating to the Acquired Assets or the Business (whether in documentary or data form) for the purposes of facilitating the continuing administration of the Chapter 11 Case, preparing tax returns or responding to tax-related inquiries, and other such administrative activities, which access shall include the right of such professionals to copy, at Debtor's expense, such documents and records as it may request in furtherance of the purposes described above.  Buyer may, in its discretion, move any or all of the books and records relating to the Acquired Assets and/or the Business to a location of its designation.

9.4     Receipt of Debtor's Assets.  Buyer agrees that, from and after the Closing, in the event it receives any cash or cash equivalents that properly constitute the property of Debtor in accordance with the terms of this Agreement, specifically including any proceeds or collections of the Excluded Accounts (except as set forth herein), such cash or cash equivalents shall be held by Buyer in trust for Debtor, and further shall be accounted for and paid over to Debtor promptly after

19

its receipt. Notwithstanding anything to the contrary herein, Buyer shall have no obligation from and after the Closing to attempt to collect any of the Excluded Accounts of parties who are not also payors under any Accounts.

Whether or not fully performed by Buyer concurrently with or prior to the Closing, all of Buyer's covenants set forth in this Article IX shall survive the Closing.

## ARTICLE X
## CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER

The obligations of Buyer under this Agreement are, at the option of Buyer, subject to satisfaction of the following conditions precedent on or before the Closing Date.

10.1    <u>Representations and Warranties True as of the Effective Date and Closing Date</u>. Each of the representations and warranties of Debtor contained herein shall be true and correct in all material respects on and as of the Effective Date (except for such changes as are contemplated by the terms of this Agreement and except for representations and warranties which specifically relate to an earlier date) on and as of the Closing Date with the same force and effect as though made on and as of the Closing Date. Debtor shall also have complied in all material respects with all of its covenants and obligations hereunder which are to be completed or complied with at or prior to Closing.

10.2    <u>Bankruptcy Condition</u>. The Sale Order (i) shall have been entered by the Bankruptcy Court on or before September 30, 2022, (ii) shall be a final and non-appealable order and not be subject to any appeal or stay with respect thereto (including any stay under Bankruptcy Rule 6004(h)), and (iii) shall be in effect as of the Closing Date.

10.3    <u>No Material Adverse Change</u>. Between the Effective Date and Closing Date, no Material Adverse Effect has affected the Business or the Debtor.

10.4    <u>Delivery of Acquired Assets and Agreements with Customers</u>. Debtor shall deliver possession of all Acquired Assets to Buyer, in good operating order and condition and in all events in compliance with the provisions of the Assumed Leases and Assumed Contracts, reasonable wear and tear excepted. Buyer shall have obtained agreements or commitments from Customers satisfactory to Buyer representing at least $26,250,000.00 of Debtor's current annual contracted revenue (*i.e.*, seventy-five percent (75%) of no less than $35,000,000.00 of annual contracted revenue as of the Effective Date) (the "<u>Customer Commitment</u>"), <u>provided, however</u>, that Buyer shall have until five (5) Business Days prior to the Closing Date to provide written notice to Debtor that the requirement of the Customer Commitment has not been satisfied.

10.5    <u>Lease/Contract Assumption and Assignment</u>. The Bankruptcy Court shall have entered an order approving and authorizing the assumption and assignment of the Assumed Leases and Assumed Contracts. To the extent that Buyer does not assume a Lease, Buyer shall have been provided with access to any necessary premises during a transition period of sixty (60) days after the Closing or as otherwise agreed by Buyer and applicable landlords. Buyer shall bear the rent

DOCS_SF:107878.8 68795/001

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 50 of 68

and other expenses of any such Lease on behalf of Debtor during such transition period and shall directly pay the landlord for rent and related charges incurred during the transition period.

10.6 <u>Consents; Permits</u>. To the extent not otherwise deemed consented to, approved, licensed, permitted, ordered or authorized by entry of the Sale Order or otherwise as a result of the Chapter 11 Case, Debtor shall have received (and there shall be in full force and effect) the material consents, approvals, licenses, permits, orders and other authorizations of and shall have made (and there shall be in full force and effect) to the extent required by law the filings, registrations, qualifications and declarations with any Person pursuant to any applicable Regulation or pursuant to any agreement, order or decree to which Debtor is a party or to which it is subject, in connection with the transactions contemplated by this Agreement and the sale of the Acquired Assets, including without limitation, assignment of the Assumed Leases.

10.7 <u>Release of Liens</u>. Buyer shall have received such documents or instruments as may be required, in Buyer's reasonable discretion, to demonstrate that, effective as of the Closing Date, the Acquired Assets are released from any and all Liens.

10.8 <u>Agreement with Sergio Reyes, Jr.</u> Buyer shall have executed an agreement on mutually acceptable terms with Sergio Reyes, Jr. for his employment with Buyer from and after the Closing Date, which agreement shall include standard non-competition terms in favor of Buyer in the event of a future termination of employment with Mr. Reyes. Buyer acknowledges that Mr. Reyes may also continue as the designated Responsible Individual for Debtor post-Closing to assist with the wind-down of Debtor's estate.

10.9 <u>Agreement Regarding Accounts</u>. Debtor shall update the Accounts Amount by 3:00 p.m. Pacific time on one (1) Business Day prior to the Closing Date to reflect the Accounts existing as of the Closing Date and Buyer shall only pay for such Accounts. Debtor and Buyer shall agree to a schedule of the Accounts as of the Closing Date as part of the Closing.

10.10 <u>Transition Services</u>. Debtor and Buyer shall have mutually executed and delivered a transition services agreement (in form and content reasonably satisfactory to each), pursuant to which Debtor shall agree to provide specified transition services to Buyer, for which Buyer shall reimburse Debtor, during the sixty (60) day period following the Closing or as otherwise agreed by Debtor and Buyer. Debtor shall not convert the Chapter 11 Case to chapter 7 or dismiss the Chapter 11 Case during the term of any transition services agreement with Buyer, though Debtor may schedule a hearing seeking to convert the case provided the scheduled hearing date is after the term of the transition services agreement.

**ARTICLE XI**
**CONDITIONS PRECEDENT TO OBLIGATIONS OF DEBTOR**

The obligations of Debtor under this Agreement are, at the option of Debtor, subject to the satisfaction of the following conditions precedent on or before the Closing Date:

11.1 <u>Representations and Warranties True as of the Effective Date and Closing Date</u>. The representations and warranties of Buyer contained herein shall be true and correct in all material respects on and as of the Effective Date, and shall also be true in all material respects (except for such changes as are contemplated by the terms of this Agreement, and except for

21

representations and warranties which specifically relate to an earlier date) on and as of the Closing Date with the same force and effect as though made by Buyer on and as of the Closing Date. Buyer shall also have complied with all of its covenants and obligations hereunder which are to be completed or complied with at or prior to Closing.

11.2 <u>Bankruptcy Condition</u>. The Sale Order (i) shall have been entered by the Bankruptcy Court on or before September 30, 2022, (ii) shall not be subject to any stay with respect thereto (including any stay under Bankruptcy Rule 6004(h)), and (iii) shall be in effect as of the Closing Date.

11.3 <u>Consents; Permits</u>. To the extent not otherwise deemed consented to, approved, licensed, permitted, ordered or authorized by entry of the Sale Order or otherwise as a result of the Chapter 11 Case, Debtor shall have received (and there shall be in full force and effect) the material consents, approvals, licenses, permits, orders and other authorizations of and shall have made (and there shall be in full force and effect) to the extent required by law the filings, registrations, qualifications and declarations with any Person pursuant to any applicable Regulation or pursuant to any agreement, order or decree to which Debtor is a party or to which it is subject, in connection with the transactions contemplated by this Agreement and the sale of the Acquired Assets, <u>provided</u> that Debtor shall have timely filed for and diligently pursued the same.

## ARTICLE XII
## <u>DISCLAIMER OF WARRANTIES AND RELEASE</u>

12.1 <u>Disclaimer of Warranties</u>. BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, DEBTOR HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION: (A) THE VALUE OF THE ACQUIRED ASSETS; (B) THE INCOME TO BE DERIVED FROM THE ACQUIRED ASSETS (INCLUDING, WITHOUT LIMITATION, THE AMOUNT, VALIDITY, COLLECTIBILITY OR ENFORCEABILITY OF ANY ASSUMED CONTRACT); (C) THE SUITABILITY OF THE ACQUIRED ASSETS FOR ANY AND ALL ACTIVITIES AND USES WHICH BUYER MAY CONDUCT THEREON; (D) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE ACQUIRED ASSETS; (E) THE NATURE, QUALITY OR CONDITION OF THE ACQUIRED ASSETS; (F) THE COMPLIANCE OF OR BY THE ACQUIRED ASSETS OR THEIR OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE AUTHORITY; OR (G) THE CONTENT, COMPLETENESS OR ACCURACY OF ANY DUE DILIGENCE MATERIALS.

BUYER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE ACQUIRED ASSETS AND REVIEW INFORMATION AND DOCUMENTATION AFFECTING THEM, BUYER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE ACQUIRED ASSETS AND REVIEW OF SUCH

DOCS_SF:107878.8 68795/001

INFORMATION AND DOCUMENTATION, AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY DEBTOR, OTHER THAN AS SET FORTH HEREIN. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION MADE AVAILABLE TO BUYER OR PROVIDED OR TO BE PROVIDED BY OR ON BEHALF OF DEBTOR WITH RESPECT TO THE ACQUIRED ASSETS WAS OBTAINED FROM A VARIETY OF SOURCES AND DEBTOR MAKES NO REPRESENTATIONS AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION, OTHER THAN AS SET FORTH HEREIN.

EXCEPT AS OTHERWISE SET FORTH IN THIS AGREEMENT, THE PARTIES ARE NOT LIABLE OR BOUND IN ANY MANNER BY ANY ORAL OR WRITTEN STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE ACQUIRED ASSETS, OR THE OPERATION THEREOF. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE SALE OF THE ACQUIRED ASSETS AS PROVIDED FOR HEREIN IS MADE ON AN AS- IS-WHERE-IS CONDITION AND BASIS WITH ALL FAULTS.

      12.2    <u>Reserved</u>.

**ARTICLE XIII**
**<u>CLOSING</u>**

      13.1    <u>Closing</u>. Unless otherwise mutually agreed by Buyer and Debtor in writing, the Closing shall take place no later than November 1, 2022 (the "<u>Outside Date</u>") on a date mutually agreed upon by the Parties (the "<u>Closing Date</u>").

      13.2    <u>Deliveries by Debtor</u>. At the Closing, Debtor will deliver, in addition to the other documents contemplated by this Agreement, the following to Buyer: (a) a Bill of Sale ("<u>Bill of Sale</u>") in form and content mutually satisfactory to Buyer and Debtor; (b) an Assignment and Assumption ("<u>Assignment and Assumption</u>") in form and content mutually satisfactory to Buyer and Debtor; (c) domain name assignments of domain names acquired in form and content mutually satisfactory to Buyer and Debtor; (d) with respect to each vehicle comprising part of the Acquired Assets, an original Certificate of Title (or, if unavailable, a mutually satisfactory substitution therefor), with the assignment portion completed and signed by Debtor or a separate bill of sale applicable to such vehicle; and (e) such other and additional documents of transfer that may be reasonably requested by Buyer (and/or any Permitted Designee thereof).

      13.3    <u>Deliveries by Buyer</u>. At the Closing, Buyer will deliver the following: (a) the Purchase Price payable pursuant to and in accordance with Section 3.1; and (b) duly executed originals of the Assignment and Assumption; and (c) such other additional documents as are required to consummate the transactions contemplated herein.

      13.4    <u>Insurance</u>. Subject to the terms of any transition services agreement, Buyer acknowledges and agrees that Debtor shall be entitled to terminate the Debtor's existing insurance policies as of the Closing Date and Buyer shall obtain replacement insurance policies in amounts and with coverages determined by Buyer in its sole discretion.

23

13.5     Possession.  Debtor shall deliver possession of all keys in Debtor's possession, if any, to all locks to Buyer at Closing.

## ARTICLE XIV
## DEFAULT, TERMINATION AND REMEDIES

14.1     Termination of Agreement.  This Agreement and the transactions contemplated hereby may (at the option of the Party having the right to do so or by operation of this Agreement) be terminated at any time on or prior to the Closing Date:

(a)     Mutual Consent.  By mutual written consent of Buyer and Debtor;

(b)     Court Order.  By Buyer or Debtor if a court of competent jurisdiction or a governmental, quasi-governmental, regulatory or administrative department, agency, commission or authority shall have issued an order, decree or ruling or taken any other action (which order, decree, ruling or action the Parties hereto shall use their best efforts to lift or dissolve), in each case restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement or attempting to do the same, or if the Bankruptcy Court has not entered the Sale Order on or before September 30, 2022;

(c)     Failure to Close.  By Buyer or Debtor if the transactions contemplated hereby shall not have been consummated on or before the Outside Date, provided, however, that such right to terminate this Agreement shall not be available to any party whose failure to fulfill any of its covenants or obligations under this Agreement has been the sole or substantial cause of, and resulted in, the failure of the transactions contemplated hereby to be consummated on or before such date;

(d)     Termination by Buyer.  By Buyer, if (i) a material breach of any representation, warranty, covenant or agreement on the part of Debtor set forth in this Agreement shall have occurred, and such breach is incapable of being cured or, if capable of being cured, Debtor, within three (3) days of receipt of written notification thereof and prior to the Outside Date, has failed to cure such breach; (ii) a Material Adverse Effect shall have occurred; (iii) all conditions to Closing have been satisfied prior to the Outside Date, but Debtor fails to close after three (3) days' written notice that Buyer is prepared to close; or (iv) a trustee or examiner has been appointed to oversee Debtor's operations or its assets or the Chapter 11 Case is dismissed.

(e)     Termination by Debtor.  By Debtor upon (i) a material breach of any representation, warranty, covenant or agreement on the part of Buyer set forth in this Agreement shall have occurred, and such breach is incapable of being cured or, if capable of being cured, Buyer, within three (3) days of receipt of written notification thereof and prior to the Outside Date, has failed to cure such breach or (ii) all conditions to Closing have been satisfied prior to the Outside Date, but Buyer fails to close after three (3) days' written notice that Debtor is prepared to close.

(f)     Reserved.

DOCS_SF:107878.8 68795/001
Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 54 of
68

14.2    Procedure and Effect of Termination and Right to Proceed.

(a)    Notice. If this Agreement is terminated pursuant to Section 14.1, written notice thereof shall forthwith be given to the other Party to this Agreement and all further obligations of the Parties under this Agreement shall terminate; provided, however, that the Parties shall, in all events, remain bound by and continue to be subject to the provisions set forth in this Article XIV. In addition, anything in this Agreement to the contrary notwithstanding, if any of conditions to obligations specified in Article X hereof have not been satisfied, Buyer, in addition to any other rights which it may have, shall have the right to waive its rights to have such conditions satisfied and elect to proceed with the transactions contemplated hereby and, if any of the conditions to the obligations of Debtor specified in Article XI hereof have not been satisfied, Debtor, in addition to any other rights which may be available to it, shall have the right to waive its right to have such conditions satisfied and elect to proceed with the transactions contemplated hereby. Notwithstanding anything to the contrary herein, the Deposit shall be promptly returned to Buyer in the event of a termination of this Agreement under Sections 14.1(a), (b), or (c).

(b)    Effect of Termination by Buyer. If this Agreement is terminated by Buyer under Section 14.1(d), Buyer may seek, at its option, specific performance of this Agreement and other equitable relief or, alternatively, the Deposit shall be promptly returned to Buyer and Buyer may seek additional damages as appropriate under the circumstances. Debtor agrees that irreparable damage to Buyer, for which monetary relief, even if available, may not be an adequate remedy, may occur in the event that any provision of this Agreement is not performed in accordance with its specific terms or is otherwise breached, including if Debtor fails to take any action required of it hereunder to consummate the transactions contemplated by this Agreement. It is accordingly agreed that (a) Buyer will be entitled to seek an injunction or injunctions, specific performance or other equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof in the Bankruptcy Court without proof of damages or otherwise, this being in addition to any other remedy to which Buyer is entitled under this Agreement, and (b) the right of specific performance and other equitable relief is an integral part of the transactions contemplated by this Agreement and without that right, Buyer would have entered into this Agreement.

(c)    Effect of Termination by Debtor. If this Agreement is terminated by Debtor under Section 14.1(e), Debtor, as its sole remedy, shall be entitled to retain the Deposit paid to Debtor as liquidated damages. The Parties hereby agree that the amount of the Deposit is a fair and reasonable estimate of the total detriment that Debtor would suffer in the event of Buyer's default and failure to complete the transaction hereunder. Buyer acknowledges that the provisions of this paragraph are an integral part of the transaction contemplated by this Agreement, and that without these provisions, Debtor would not enter into this Agreement.

14.3    Exclusive Remedies. Buyer and the Debtor acknowledge and agree that if this Agreement is terminated for any reason, the provisions of this Article XIV shall be the sole and exclusive remedies of the Parties for any breach of the representations, warranties, covenants or agreements contained herein.

DOCS_SF:107878.8 68795/001

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 55 of 68

# ARTICLE XV
## MISCELLANEOUS

15.1    <u>Expenses</u>.  Except as otherwise provided herein, each Party hereto shall bear its own expenses with respect to the transactions contemplated hereby.

15.2    <u>Amendment</u>.  This Agreement may be amended, modified or supplemented but only in a writing signed by each of the Parties hereto.

15.3    <u>Notices</u>.  Any notice, request, instruction or other document to be given hereunder by a Party hereto shall be in writing and shall be deemed to have been given, (i) when received if given in person or sent by email, (ii) on the date of transmission if sent by email or manner of electronic transmission upon the confirmation or acknowledgement of delivery of same (<u>provided</u> that a copy of such transmission is simultaneously deposited in the manner provided in <u>clause (iv)</u> below), (iii) one (1) Business Day after being delivered to a nationally known commercial courier service providing next day delivery service (such as Fed Ex), or (iv) three (3) Business Days after being deposited in the U.S. mail, certified or registered mail, postage prepaid:

(A)    If to Debtor, addressed as follows:

Professional Technical Security Services, Inc.
c/o Seth R. Freeman or George Demos
B. Riley Advisory Services
19800 MacArthur Boulevard, Suite 820
Irvine, CA 92612
Email: sfreeman@brileyfin.com and gdemos@brileyfin.com

With copies to Debtor's Counsel:

Stephen D. Finestone, Esq.
Finestone Hayes LLP
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Tel.: (415) 421-2624
Email: sfinestone@fhlawllp.com

(B)    If to Buyer, addressed as follows:

PalAmerican Security (California) Inc.
c/o Ashley Cooper
Suite 201 – 3001 Wayburne Drive
Burnaby, BC, V5G 4W3
Canada
Email: acooper@paladinsecurity.com

DOCS_SF:107878.8 68795/001

Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 56 of 68

With copies to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn: Jeffrey N. Pomerantz
Email: jpomerantz@pszjlaw.com

or to such other individual or address as a Party hereto may designate for itself by notice given as herein provided.

15.4    Reserved.

15.5    Interim Management.  Notwithstanding anything at law or equity to the contrary, each Party understands and agrees that Debtor is solely responsible for operating its Business prior to the Closing and in no event will Buyer or any of its affiliates or subsidiaries, or any of their respective equity holders, directors, officers, managers, employees, agents or representatives have any authority to conduct Debtor's Business with respect to any matter, obligation or decision prior to the Closing.

15.6    Waivers.  The failure of a Party hereto at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same.  No waiver by a Party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver of any such condition or breach in other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

15.7    Counterparts.  This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15.8    Headings.  The headings preceding the text of Articles and Sections of this Agreement and the Schedules thereto are for convenience only and shall not be deemed part of this Agreement.

15.9    Applicable Law and Jurisdiction.  SUBJECT TO ANY PROVISION IN THIS AGREEMENT AND ANY ANCILLARY DOCUMENT, TO THE CONTRARY, THIS AGREEMENT (AND ALL DOCUMENTS, INSTRUMENTS, AND AGREEMENTS EXECUTED AND DELIVERED PURSUANT TO THE TERMS AND PROVISIONS HEREOF (COLLECTIVELY, "ANCILLARY DOCUMENTS")) SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED WHOLLY WITHIN SUCH JURISDICTION.  BUYER AND DEBTOR FURTHER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT; AND/OR

DOCS_SF:107878.8 68795/001
Case: 22-30062    Doc# 221    Filed: 09/29/22    Entered: 09/29/22 09:24:10    Page 57 of 68

(ii) THE ACQUIRED ASSETS AND/OR ASSUMED OBLIGATIONS AND THE PARTIES EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST SUCH JURISDICTION.

15.10 <u>Binding Nature; Assignment</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interest or obligations hereunder shall be assigned by any of the Parties hereto without prior written consent of the other Party; <u>except</u> that (i) Buyer may assign any of its rights hereunder to any affiliates or wholly-owned subsidiaries (a "<u>Permitted Designee</u>"), and upon such designation as a Permitted Designee hereunder, such Permitted Designee shall become obligated to perform any and all obligations arising hereunder in respect of that portion of the Acquired Assets and Assumed Obligations allocable thereto; <u>provided</u>, <u>however</u>, that Buyer shall remain obligated to perform the obligations of "Buyer" hereunder, in the event any Permitted Designee thereof fails to perform any obligation arising under this Agreement required of it as a "Buyer" hereunder, and (ii) Buyer may grant a security interest in its rights and interests hereunder to its third-party lender(s).

15.11 <u>No Third-Party Beneficiaries</u>.  This Agreement is solely for the benefit of the Parties hereto and their respective affiliates.  Nothing contained herein, express or implied, is intended to confer on any Person other than the Parties hereto or their successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

15.12 <u>Tax Matters</u>.

(a)  Buyer shall make available to Debtor, and Debtor shall make available to Buyer, (i) such records as any such Party may require for the preparation of any tax returns required to be filed by Debtor or Buyer, as the case may be, and (ii) such records as Debtor or Buyer may require for the defense of any audit, examination, administrative appeal, or litigation of any tax return in which Debtor or Buyer was included.

(b)  Notwithstanding anything herein to the contrary, as soon as practicable following the Closing but in any event within sixty (60) days after Closing, Buyer shall, for United States income tax purposes, determine an allocation of the Purchase Price (and other capitalized costs) among the Acquired Assets, subject to the provisions of Section 1060 of the United States Internal Revenue Code of 1986, as amended, and both Buyer and Debtor shall report such allocation consistently on their respective income tax returns.

15.13 <u>Construction</u>.  The language used in this Agreement will be deemed to be the language chosen by the Parties to this Agreement to express their mutual intent, and no rule of strict construction shall be applied against any Party.

15.14 <u>Entire Understanding</u>. This Agreement, together with the Ancillary Documents set forth the entire agreement and understanding of the Parties hereto in respect to the transactions contemplated hereby, and this Agreement and the Ancillary Documents hereto supersede all prior agreements, arrangements and understandings relating to the subject matter hereof.  There have been no representations or statements, oral or written, that have been relied on by any Party hereto, except those expressly set forth in this Agreement or in any Ancillary Document hereto.

DOCS_SF:107878.8 68795/001

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed and delivered on the date first above written.

**BUYER**:

PALAMERICAN SECURITY (CALIFORNIA) INC.

By: _____
    Ashley Cooper (Sep 21, 2022 22:45 PDT)

    Name:    Ashley Cooper
    Its:       Chief Executive Officer

**DEBTOR**:

PROFESSIONAL TECHNICAL SECURITY SERVICES, INC.

By: _____

    Name:    Sergio Reyes, Jr.
    Title:    Chief Executive Officer

DOCS_SF:107878.8 68795/001

**Schedule 2.1(a) – Intellectual Property**

**Schedule 2.1(c) – Fixtures and Equipment**

**Schedule 2.1(d) – Permits**

**Schedule 2.1(f) – Accounts**

DOCS_SF:107878.8 68795/001

## Schedules 2.2 – Leases, Contracts, and Cure Amounts

| Executory Contracts and Unexpired Leases | | | | |
|---|---|---|---|---|
| Counterparty to Lease/Contract | Title of Contract | Subject of Lease/Contract | Cure Amount (Past Due Amount as of 9/9/22) | Comments |
| 340 Pine Street LLC | Office Lease, dated as of 2/18/20 | Lease for office premises at 340 Pine Street, San Francisco (the "Pine Lease") | $0.00 | Commenced on 4/1/20 and expires on 10/31/23. Current rent is $11,862.33. Security deposit of $12,217.58. |
| Brickell Avenue Consulting LLC ("BAC") | Letter agreement dated 9/30/21 | Contract for Debtor's acting Controller | $0.00 | Fee is $8,500 per month |
| CEP Investors XII LLC | 111 Sutter Street Office Building Lease, dated as of July 15, 2016 | Lease for offices at 111 Sutter, Suite 550, San Francisco (the "Sutter Lease") | $0.00 | Commenced 3/1/17 and expires 3/1/24, with option to extend for one additional 5-year term. Current rent is $49,629.39. The base rent increases by $1,205.98 on 4/1/23. Security deposit of $82,908.42. |
| GAB Holdings, Inc. ("GAB") | Management Agreement, dated 1/1/02, as amended by 3/18/22 | Management contact related to CEO | $0.00 | Fee is $27,500 per month during the pendency of the Bankruptcy Case |
| Service Employees International Union ("SEIU") | (1) San Francisco Bay Area Master Collective Bargaining Agreement, effective 8/5/17 as extended and (2) Agreement dated 4/16/19 covering "One Market" Building | Union collective bargaining agreement for onsite employees | $0.00 | Proof of claim filed by General Employees Trust Fund on June 3, 2022 in the amount of $2,271.66 for "Unpaid liquidated damages and interest owed pursuant to Collective Bargaining Agreement." Debtor's record indicated paid in full. |

| Tower Building Investors | Lease Agreement, dated as of 5/10/07, as amended 3/21/11, 7/31/17 and 9/1/21 | Lease for office premises at 1970 Broadway (the "Oakland Lease") | $17,360.00 | Lease expires on 3/31/25. Current rent due is $5,520.00, increasing to $5,686.00 on 4/1/23 and to $5,857 on 4/1/24 through the remainder of the term of the lease. Security deposit of $3,400.00. |
|---|---|---|---|---|
| Wells Fargo Vendor Financial Services, LLC, fbo Ricoh USA, Inc. ("Wells Fargo") | Image management Plus Agreement | Lease of Ricoh copier | $129.64 | Expires 2/25; Proof of claim filed for $22,711.71 balance owing on lease as of Petition Date; Cure amount as noted in proof of claim. |

**Schedule 2.3(a) – Excluded Accounts**

**Schedule 2.3(j) – Excluded Assets**

None.

# DOCS_SF-#107878-v8-ProTech_-_Paladin_Asset_Purchase_Agreement

**Final Audit Report** 2022-09-22

| | |
|---|---|
| Created: | 2022-09-21 |
| By: | Kimberly Fineman (kfineman@fhlawllp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAjMfvIwNckseEI7xrMO5vNm6i36Vix2rr |

## "DOCS_SF-#107878-v8-ProTech_-_Paladin_Asset_Purchase_Agreement" History

Document created by Kimberly Fineman (kfineman@fhlawllp.com)
2022-09-21 - 10:28:59 PM GMT

Document emailed to Ashley Cooper (acooper@paladinsecurity.com) for signature
2022-09-21 - 10:30:17 PM GMT

Email viewed by Ashley Cooper (acooper@paladinsecurity.com)
2022-09-22 - 0:08:39 AM GMT

Document e-signed by Ashley Cooper (acooper@paladinsecurity.com)
Signature Date: 2022-09-22 - 5:45:46 AM GMT - Time Source: server

Document emailed to Sergio Reyes (sreyes@protechbayarea.com) for signature
2022-09-22 - 5:45:48 AM GMT

Email viewed by Sergio Reyes (sreyes@protechbayarea.com)
2022-09-22 - 4:49:36 PM GMT

Document e-signed by Sergio Reyes (sreyes@protechbayarea.com)
Signature Date: 2022-09-22 - 4:50:11 PM GMT - Time Source: server

Agreement completed.
2022-09-22 - 4:50:11 PM GMT

**Adobe Acrobat Sign**