Daren R. Brinkman (SBN 158698)
**BRINKMAN LAW GROUP, PC**
543 Country Club Drive, Suite B
Wood Ranch, CA 93065
Tel. (818) 597-2992
Fax (818) 597-2998
firm@brinkmanlaw.com

*Counsel for the Committee of
Creditors Holding Unsecured Claims*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PROFESSIONAL TECHNICAL SECURITY SERVICES, INC. D/B/A/ PROTECH,**<br><br>Debtor. | Case No. 3:22-bk-30062<br><br>Chapter 11<br><br>**COMMITTEE'S MOTION FOR STAY PENDING APPEAL OF ORDER OVERRULING OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OPPOSITION TO SALE MOTION [DKT. #235]**<br><br>Status Conference:<br>Date: TBD<br>Time: TBD<br>Judge: Hon. Hannah L. Blumenstiel<br>Place: Remote appearances only<br><br>*Please check www.canb.uscourts.gov for information regarding the court's operations due to the COVID-19 pandemic.* |

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE HANNAH L. BLUMENSTIEL, THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:**

COMES NOW the Committee of Creditors Holding Unsecured Claims (the "Committee") in the above captioned case, by and through its undersigned counsel, to hereby

1

move (the "Motion") this Court for entry of an order granting a stay of the Court's *Order Overruling Official Committee of Unsecured Creditors' Limited Opposition to Sale Motion*, dated October 25, 2022 [Dkt. #235] (the "Order"), pending the Committee's appeal therefrom [Dkt #251].

Through this Motion and attached memorandum, the Committee seeks to enjoin Professional Technical Security Services, Inc. (the "Debtor") from distributing the proceeds gained from selling its assets pursuant to the Court's *Order Granting Debtor's Motion for Entry of an Order (I) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of Liens (II) Approving the Assignment of Executory Contracts, (III) Allowing Payment of Compromised Fee to B. Riley Upon Closing and (IV) Granting Related Relief* [Dkt. #221]. Particularly, the Committee seeks to enjoin the Debtor from making distributions in the manner indicated in the Order and underlying stipulations referenced in the Order, pending the Committee's appeals.

Respectfully submitted this 13th day of November 2022.

*s/ Daren Brinkman*
Daren R. Brinkman (SBN 158698)
**BRINKMAN LAW GROUP, PC**
543 Country Club Drive, Suite B
Wood Ranch, CA 93065
Tel. (818) 597-2992
Fax (818) 597-2998
firm@brinkmanlaw.com

*Counsel for the Committee of Creditors Holding Unsecured Claims*

Daren R. Brinkman (SBN 158698)
**BRINKMAN LAW GROUP, PC**
543 Country Club Drive, Suite B
Wood Ranch, CA 93065
Tel. (818) 597-2992
Fax (818) 597-2998
firm@brinkmanlaw.com

*Counsel for the Committee of
Creditors Holding Unsecured Claims*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| In re: | Case No. 3:22-bk-30062 |
|---|---|
| **PROFESSIONAL TECHNICAL SECURITY SERVICES, INC. D/B/A/ PROTECH,** | Chapter 11 |
| Debtor. | **MEMORANDUM IN SUPPORT OF COMMITTEE'S MOTION FOR STAY PENDING APPEAL OF ORDER OVERRULING OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OPPOSITION TO SALE MOTION [DKT# 235]** |

This memorandum of points and authorities is submitted in support of the attached *Committee's Motion for Stay Pending Appeal of Order Overruling Official Committee of Unsecured Creditors' Limited Opposition to Sale Motion [DKT# 235]* ("Motion").

MEMORANDUM IN SUPPORT OF MOTION FOR STAY OF ORDER OVERRULING
OBJECTION PENDING APPEAL

1

# Table of Contents

JURISDICTION ................................................................................................................. 5

BACKGROUND ................................................................................................................ 5

   1. General Background ................................................................................................ 5

   2. The Order ................................................................................................................ 6

ARGUMENT ..................................................................................................................... 8

   3. The Committee Is Likely to Succeed on the Merits of Its Appeal ......................... 8

      a. The Order Granting the Stipulation Was Procedurally Improper. .................. 9

      b. The Stipulations Grant the IRS More than What It Is Entitled to. ................ 10

      c. The Stipulations Unjustly Benefit the Debtor Professional B. Riley. ........... 13

   4. Unsecured Creditors Will Be Irreparably Harmed If a Stay Is Not Granted ....... 14

   5. A Stay of the Order Pending Appeal Will Not Injure Other Parties to These Proceedings 14

   6. A Stay is in the Public Interest ............................................................................... 15

   7. No Bond Is Necessary ........................................................................................... 15

CONCLUSION ................................................................................................................ 16

**Table of Authorities**

**Cases**

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) .......... 14

*DBD Credit Funding LLC v. Silicon Labs., Inc.*, No. 16-CV-05111-LHK, 2016 U.S. Dist. LEXIS 162930 (N.D. Cal. Nov. 23, 2016) ........................................................................................ 8

*GMAC Mortgage Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655 (9th Cir. BAP 1999) .............. 9

*I.J. v. Keeton*, No. CV-19-01904-PHX-SMB (JZB), 2019 U.S. Dist. LEXIS 229193 (D. Ariz. Apr. 17, 2019) ............................................................................................................................. 14

*In re Cochise Coll. Park*, 703 F.2d 1339 (9th Cir. 1983) .............................................................. 13

*In re Fullmer*, 323 B.R. 287 (Bankr. D. Nev. 2005) .................................................................... 14

*In re Rivera*, No. 5:15-cv-04402-EJD, 2015 U.S. Dist. LEXIS 151860 (N.D. Cal. Nov. 9, 2015) 8

*Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012) ........................................................................... 8

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) .................................................................. 8

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) .......................................................................................................................................... 9

*N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010) ...................................................... 15

*Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) ................................. 8

*Official Comm. of Unsecured Creditors v. Nilson (In re Woodside Grp., LLC)*, 427 B.R. 817 (Bankr. C.D. Cal. 2010) ............................................................................................................ 14

*Owens-Corning Fiberglass Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440 (9th Cir. 1985) ................................................................................................................... 9

*Small v. Avanti Health Sys., LLC*, 661 F.3d 1180 (9th Cir. 2011) .............................................. 14

*Thomas Corp. v. Nicholas*, 221 F.2d 286 (5th Cir. 1955) ........................................................... 13

| # | | |
|---|---|---|
| 1 | *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) | 14 |
| 2 | *Wagner v. Adickman*, No. CV-19-03216-PHX-SMB, 2019 U.S. Dist. LEXIS 113588 (D. Ariz. | |
| 3 | July 9, 2019) | 14 |
| 4 | *Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) | 13 |

**Statutes**

| | | |
|---|---|---|
| 6 | 11 U.S.C. § 1107(a) | 5 |
| 7 | 11 U.S.C. § 1108 | 5 |
| 8 | 11 U.S.C. § 1334 | 5 |
| 9 | 11 U.S.C. § 328 | 12 |
| 10 | 11 U.S.C. § 330 | 12 |
| 11 | 11 U.S.C. § 363(a) | 10 |
| 12 | 11 U.S.C. § 1102(a) | 5 |
| 13 | 28 U.S.C. § 1409 | 5 |
| 14 | 28 U.S.C. § 1408 | 5 |
| 15 | 28 U.S.C. § 157 | 5 |
| 16 | 28 U.S.C. § 157(b) | 5 |
| 17 | *Cal. Com. Code § 9102* | 11 |

**Rules**

| | | |
|---|---|---|
| 19 | B.L.R. 9014-1(b)(3) | 9 |
| 20 | B.L.R. 9014-1(b)(3)(A) | 9 |
| 21 | Fed. R. Bankr. P. 8007 | 5, 7, 14 |
| 22 | Fed. R. Bankr. P. 9013(a) | 9 |

# JURISDICTION

The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is Rule 8007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# BACKGROUND

**1. General Background**

On February 1, 2022 ("Petition Date"), Professional Technical Security Services, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue managing its properties and operating its business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On May 9, 2022 the Office of the United States Trustee for the Northern District of California (the "U.S. Trustee") appointed the Committee pursuant to 11 U.S.C. § 1102(a) [Docket No. 83]. No request for the appointment of a trustee or examiner in these has been made in these chapter 11 cases.

On March 18, 2022 the Court entered the *Final Order Granting Motion of Debtor for Order Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363* [Docket No. 62] ("Cash Collateral Order") which states: "In consideration for the use of the Cash Collateral, the Secured Parties shall receive as adequate protection a post-petition replacement lien on all cash collateral generated post-petition, in the same order of priority as existed pre-petition." Cash Collateral Order, ¶ 5. The "Secured Parties" included the Internal Revenue Service ("IRS") among other parties. Docket No. 5, p. 5:12-13.

**2. The Order**

On September 12, 2022 the Debtor filed the *Debtor's Motion for Entry of an Order (I) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, (II) Approving the Assignment of Executory Contracts, (III) Allowing Payment of Compromised Fee to B. Riley Upon Closing and (IV) Granting Related Relief* [Docket No. 189] (the "Sale Motion"), wherein it stated (in a footnote) that, "Debtor [] anticipates that the IRS will agree to a carveout from the sale proceeds such that the estate will receive $500,000 – to be used to pay administrative claims, and $200,000 to cover B. Riley's fees. The IRS will then be paid the balance of the sale proceeds on its secured claim." Sale Motion, p. 18, footnote 7.

On September 19, 2022 the Debtor filed *Stipulation for Consent to Sale of Substantially All of the Debtor's Assets Free and Clear of Liens; for Carveout from Sale Proceeds and Payment of the Secured Claim to the IRS* [Docket No. 208] (the "IRS Stipulation"), stipulating that "When the sale to Buyer closes, Debtor shall be entitled to retain from the sale proceeds the Estate Carveout and the Commission Carveout." IRS Stipulation, p. 2, ¶ 4. The Commission Carveout is to be paid exclusively to administrative claimant and Debtor professional, the financial advising firm B. Riley Financial Advisors ("B. Riley").

On September 20, 2022 the Committee filed the *Committee of Creditors Holding Unsecured Claims' Limited Opposition to Debtor's Motion for Entry of Order Authorizing Sale* [Docket No. 212] (the "Objection").

On September 21, 2022 the Debtor filed a *Supplemental Stipulation for Consent to Sale of Substantially All of the Debtor's Assets Free and Clear of Liens; for Carveout from Sale Proceeds and Payment of the Secured Claim of the IRS* [Docket No. 213] ("Supplemental Stipulation," together with the IRS Stipulation, the "Stipulations") for the purpose of "clarifying

| | |
|---|---|
| 1 | the amounts of the Carveouts." Supplemental Stipulation, p. 2. The Supplemental Stipulation |
| 2 | specifies an Estate Carveout of $500,000 and a Commission Carveout of $200,000. Id. |
| 3 | On September 22, 2022 the Court held a hearing to consider the relief requested in the |
| 4 | Sale Motion and ordered supplemental briefing on the issue of the IRS Stipulation and set up a |
| 5 | status conference for October 25, 2022. |
| 6 | On September 29, 2022 the Court entered the *Order Granting Debtor's Motion for Entry* |
| 7 | *of an Order (I) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of* |
| 8 | *Liens (II) Approving the Assignment of Executory Contracts, (III) Allowing Payment of* |
| 9 | *Compromised Fee to B. Riley Upon Closing and (IV) Granting Related Relief* [Docket No. 221] |
| 10 | (the "Sale Order"). The Sale Order does not mention a carveout, and the only two instances of |
| 11 | "Internal Revenue Service" are: (1) to specify that the assets be sold "Free and Clear" of liens |
| 12 | (Sale Order, p. 6), and (2) where counsel for the Internal Revenue Service signed the model |
| 13 | order to approve it as to form (Sale Order, p. 23). |
| 14 | On October 25, 2022 the Court held a hearing to consider Objection and on the same day |
| 15 | entered its *Order Overruling Official Committee of Unsecured Creditors' Limited Opposition to* |
| 16 | *Sale Motion* [Docket No. 235] (the "Order"). |
| 17 | The sale contemplated in the Sale Motion was executed on November 1, 2022. Docket |
| 18 | No. 254, p. 2, ¶ 4. |
| 19 | On November 3, 2022, the Court entered its *Order Approving IRS Stipulation and* |
| 20 | *Authorizing Release of Sale Proceeds to the IRS* [Docket No. 246] ("Order Approving |
| 21 | Stipulation"). |

# ARGUMENT

Pursuant to Bankruptcy Rule 8007, the Committee requests that the Court stay the Order pending the Committee's pending appeal therefrom [Docket No. 251]. Bankruptcy Rule 8007 authorizes the Court to "stay the effect of a bankruptcy court order pending a resolution on appeal." "The legal principles relevant to a stay motion "have been distilled into consideration of four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re Rivera*, No. 5:15-cv-04402-EJD, 2015 U.S. Dist. LEXIS 151860, at *3-4 (N.D. Cal. Nov. 9, 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)).

Because each of these four factors militates in favor of staying the Order pending appeal, the Court should grant the Motion.

**3. The Committee Is Likely to Succeed on the Merits of Its Appeal.**

"[T]o justify a stay, petitioners need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Rather, "[t]here are many ways to articulate the minimum quantum of likely success necessary to justify a stay—be it a 'reasonable probability' or 'fair prospect,' . . . 'a substantial case on the merits,' . . . [or] that 'serious legal questions are raised.'" Id. at 967-68 (internal citations omitted). "These 'interchangeable' formulations each require, "'at a minimum,' . . . that there is a 'substantial case for relief on the merits,'" but do not require the movant "to show that 'it is more likely than not that [the party seeking stay] will win on the merits.'" *DBD Credit Funding LLC v. Silicon Labs.,*

*Inc.*, No. 16-CV-05111-LHK, 2016 U.S. Dist. LEXIS 162930, at *20-21 (N.D. Cal. Nov. 23, 2016) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012)).

### a. The Order Granting the Stipulation Was Procedurally Improper.

There was no motion to approve the Stipulations, which the Sale Motion only mentioned passingly in a footnote. At the time of the Sale Motion, the full contents of the final Stipulations were not disclosed to other parties, nor was any formal notice provided as required by the Federal Rules of Bankruptcy Procedure or due process. A judgment may be void or unenforceable against a party if it was entered or obtained "in a manner inconsistent with due process of law." *Owens-Corning Fiberglass Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440, 1448 (9th Cir. 1985). "If the notice is inadequate, then the order is void." *GMAC Mortgage Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 661 (9th Cir. BAP 1999). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

The Stipulations, upon which the Order is based, were never properly noticed for hearing separately from Sale Motion. The Stipulations were both filed separately from, and after the filing of the Sale Motion, but no separate date for hearing or deadline for objection were given. Federal Rule of Bankruptcy Procedure 9013 requires that a request for an order be written by motion, state with particularity the grounds therefore, and set forth the relief or order sought, and be served on the trustee and those entities specified by the Federal Rules of Bankruptcy

Procedure. Fed. R. Bankr. P. 9013(a). In the event of a request for relief without hearing, Local Bankruptcy Rule 9014-1(b)(3) requires that a notice be conspicuously placed in bold letters in the motion, with deadlines for objecting or requesting a hearing. B.L.R. 9014-1(b)(3)(A). None of these steps were taken.

A reference was made to a potential stipulation in a foot note to the Sale Motion. The two actual Stipulations were not negotiated and filed with the Court until a week later. Even then, they were filed without the required notice for hearing or opportunity to object, and the record is even devoid of any certificate of service for either of the Stipulations. Yet both stipulations were approved by a single order without proper notice having been given for either of them. With no disclosure as to the full contents of the Stipulations, the footnote in the Sale Motion alone cannot constitute proper notice.

**b. The Stipulations Grant the IRS More than What It Is Entitled to.**

The IRS Stipulation cedes all of the proceeds of the sale of the Debtor's assets to the IRS in exchange for a modest carveout. It is based upon the IRS' pre-petition lien in "all assets" of the Debtor, combined with the Cash Collateral Order. However, what it fatally neglects to consider is that the majority of the proceeds from the sale are attributable to assets in which the IRS had no valid lien, neither through its pre-petition statutory lien nor through the Cash Collateral Order. These assets were the Debtor's post-petition accounts receivable and work-in-progress. Through its forthcoming appeal of the Order, the Committee will reiterate these facts as mentioned in its Objection and subsequent *Committee's Omnibus Surreply to Debtor and IRS' Replies to Committee's Response in Limited Opposition to Sales Motion* [Docket No. 231].

First, the Cash Collateral Order does not define the term "Cash Collateral," but rather includes a footnote on the first page, stating: "Capitalized terms not defined in this Order shall

have the meanings given to them in the Motion." The Motion defines "Cash Collateral" to give it the same meaning "as such term is defined in section 363(a) to title 11 of United States Code…" Cash Collateral Motion, p. 2:8. The *Memorandum of Points and Authorities* to the Cash Collateral Motion includes a different definition for "Cash Collateral,"[1] but the Cash Collateral Order very clearly makes reference only to the definition in the 'Motion.'

An alternative interpretation gives the same result. In the language of the Cash Collateral Order quoted above, the first appearance of the term 'cash collateral' is capitalized ("[i]n consideration for the use of the Cash Collateral") while in the second instance of the term it is not ("the Secured Parties shall receive as adequate protection a post-petition replacement lien on all cash collateral generated post-petition"). With this discrepancy, one would again have to refer to the Cash Collateral Motion to interpret the first instance of the term, but then refer to the definition appearing in the Bankruptcy Code, at section 363(a), to interpret the second instance, giving the same result.

The definition of cash collateral in the Bankruptcy Code does not include all assets. The Cash Collateral Order only grants replacement liens in the Debtor's "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Conspicuously missing from this definition are 'accounts receivable' and 'work in progress.'

---

[1] "[A]pproximately $1.4 million in its bank accounts and $3.4 milllion in outstanding accounts receivable (collectively, the "Cash Collateral")." Memorandum of Points and Authorities to Cash Collateral Motion, p. 5:5-6.

Second, even if the definition of "Cash Collateral" in the Cash Collateral Order had included 'proceeds' (which it does not), Debtor provides services to its clients, and income earned from labor is not 'proceeds' under California law:

> "Proceeds," except as used in subdivision (b) of Section 9609 [where it is used as a verb], means any of the following property:
> **(A)** Whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral.
> **(B)** Whatever is collected on, or distributed on account of, collateral.
> **(C)** Rights arising out of collateral.
> **(D)** To the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral.
> **(E)** To the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

*Cal. Com. Code § 9102*.

Finally, Debtor states in the Sale Motion that the total sale purchase price would be "approximately $4.6 million." Sales Motion, p. 10:22-23 (purchase price: comments). According to Debtor, $3.5 million of this purchase price would be attributable to accounts receivable less than 90 days old (worth $1.6 million) and work in progress (worth $1.9 million). Id. It then provides that Debtor's cash on hand would be retained by Debtor and is therefore not considered in arriving at the sales price. Sales Motion, p. 11:15 (Cash on hand at closing and Avoidance Actions: Details). September 22, 2022, the date of the filing of the Sale Motion, is 7 months and 11 days after the petition date, February 1, 2022. The accounts receivable mentioned in the Sales Motion are by definition less than 90 days old, and therefore it is impossible that any of these accounts existed pre-petition. The carve-out deal between the Debtor and the IRS ignores the fact that the majority of the sales proceeds are unencumbered by IRS liens. The proposed "deal" was therefore contrary to the law, obviously not in the best interest of the estate, procedurally improper, and should have been denied by the court.

### c. The Stipulations Unjustly Benefit the Debtor Professional B. Riley.

Per the IRS Stipulation, the IRS is to carve out $200,000 specifically to compensate B. Riley. However, Debtor counsel and B. Riley must seek compensation on the same priority basis as all other professionals and administrative claimants.

On May 12, 2022, Debtor filed its *Application for Order Approving Employment of B. Riley Advisory Services as Financial Advisors* [Doc. 89] ("FA Application"), and an *Order Approving Employment of B. Riley Advisory Services as Financial Advisor* [Doc. 103] ("FA Order") was entered on May 19, 2022. The FA Order approves the FA Application pursuant to 11 U.S.C. § 328 and "on the terms and conditions set forth in Exhibit A to the Application." FA Order, ¶ 2. Exhibit A to the FA Application includes sections on compensation allowing "Hourly Compensation," "Incentive Compensation," "Discount on Aggregate Compensation," and "Retainer," contingent on "Court Approval." FA Application, pp. 9-11.

There is nothing contemplated in the FA Application or FA Order for B. Riley to step ahead of all other administrative claimholders to collect compensation upon Debtor's receipt of payment in the event of a successful sale. Although B. Riley's compensation may not be subject to the same standard of review under § 328 as if its employment were authorized under § 330 in the absence of some 'unforeseeable improvidence,' it is still subject to being paid only under the same priority as any other administrative claim. In addition, B. Riley has already received $25,000 as a retainer for its services – this must be contemplated and accounted for when determining the proper distribution for administrative claims. Administrative professionals must be paid on the same pro rata basis if there are insufficient funds to pay professionals. The Stipulation unfairly favors B. Reilly at the expense of other estate professionals. "All administrative expense creditors must be treated with "absolute equality," unless, of course,

some creditors, with full knowledge of the facts, have agreed to subordinate their claims." *In re Cochise Coll. Park*, 703 F.2d 1339, 1356 n.22 (9th Cir. 1983) (quoting *Thomas Corp. v. Nicholas*, 221 F.2d 286, 289 (5th Cir. 1955).)

**4. Unsecured Creditors Will Be Irreparably Harmed If a Stay Is Not Granted**

To demonstrate irreparable harm, a movant must demonstrate that irreparable injury is likely (more apt than not) in the absence of a stay. *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008).

Through the IRS Stipulation, Debtor and the IRS concede administrative insolvency of the estate by stipulating that the IRS was secured in all of the Debtor's pre-sale assets. However, as is apparent from the record and a plain reading of the Cash Collateral Order, the IRS had no lien on Debtor's post-petition accounts receivables or work-in-progress, and therefore has no ongoing interest in the proceeds from the sale of accounts receivable or work-in-progress. Therefore, the harm to unsecured creditors if the stay is not granted is essentially the loss of any prospect of recovering on their claims.

**5. A Stay of the Order Pending Appeal Will Not Injure Other Parties to These Proceedings**

The forthcoming appeal stands to benefit all creditors in this case except for one – the IRS. The IRS Stipulation cedes virtually all proceeds from the sale of the Debtor's assets to the IRS, rendering the estate administratively insolvent and denying a recovery to any other creditor or interest holder. If the appeal is ultimately unsuccessful, the IRS will have lost the expense of litigating if it chooses to join the Debtor in defending against the appeal, and time to recover on its claim.

**6. A Stay is in the Public Interest**

"As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Wagner v. Adickman*, No. CV-19-03216-PHX-SMB, 2019 U.S. Dist. LEXIS 113588, at *10 (D. Ariz. July 9, 2019) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)). Courts have identified the achievement of reorganization as a public interest worthy of protection. *Official Comm. of Unsecured Creditors v. Nilson (In re Woodside Grp., LLC)*, 427 B.R. 817, 850 (Bankr. C.D. Cal. 2010) (citing *In re Fullmer*, 323 B.R. 287, 305 (Bankr. D. Nev. 2005).

The public has a paramount interest in the correct application of the law, especially where the underlying dispute involves property rights. "Public interest favors the correct application of federal law." *I.J. v. Keeton*, No. CV-19-01904-PHX-SMB (JZB), 2019 U.S. Dist. LEXIS 229193, at *22 (D. Ariz. Apr. 17, 2019) (citing *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) and *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011); See also *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t is obvious that compliance with the law is in the public interest.")).

**7. No Bond Is Necessary**

The Court, in its discretion, may condition a stay on the posting of a bond. *See* Fed. R. Bankr. P. 8007. However, a bond is unnecessary where, as in the present case, a stay pending appeal will not cause any harm and is in the public interest and best interest of creditors (See above). Since no harm will result if the Court grants a stay, the Court should not require the Committee to post a bond in connection with the stay.

# CONCLUSION

WHEREFORE, for the reasons set forth above, the Committee respectfully requests that the Court (i) enter an order granting a stay of the Order pending the Committee's appeal; and (ii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 13th day of November 2022.

        *s/ Daren Brinkman*
        Daren R. Brinkman (SBN 158698)
        **BRINKMAN LAW GROUP, PC**
        543 Country Club Drive, Suite B
        Wood Ranch, CA 93065
        Tel. (818) 597-2992
        Fax (818) 597-2998
        firm@brinkmanlaw.com

        *Counsel for the Committee of*
        *Creditors Holding Unsecured Claims*