Jeffrey N. Pomerantz (CA Bar No. 143717)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (*pro hac vice pending*)
**PACHULSKI STANG ZIEHL & JONES LLP**
One Sansome Street
34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jpomerantz@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Counsel for PalAmerican Security (California) Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PTSS, INC.,<br><br>Debtor. | Case No. 3:22-bk-30062-HLB<br><br>Chapter 11<br><br>**BUYER'S MOTION FOR AN ORDER ENFORCING THE SALE ORDER** |

PalAmerican Security (California) Inc. (the "Buyer") hereby files this motion (the "Motion") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order enforcing the Sale Order (as defined herein) with respect to the above-captioned debtor and debtor in possession (the "Debtor"), requiring the Debtor to immediately turn over at least $717,145.41 in Customer Payments (as defined herein) that it is wrongfully and illegally withholding from the Buyer. In support thereof, the Buyer submits the *Declaration of Tim Warner* (the "Warner Dec."), filed contemporaneously herewith.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION AND VENUE

The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). The Buyer confirms its consent, pursuant to Rule 7008 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The legal bases for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code.

## II. BACKGROUND

### A. *The Sale and the Court's Entry of the Sale Order*

On September 29, 2022, the Court entered the *Order Granting Debtor's Motion for Entry of An Order (I) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, (II) Approving the Assignment of Executory Contracts, (III) Allowing Payment of Compromised Fee to B. Riley Upon Closing and (IV) Granting Related Relief* [Docket No. 221] (the "Sale Order"), approving the sale of substantially all of the Debtor's assets (the "Sale") to Buyer pursuant to the *Asset Purchase Agreement* dated as of September 21, 2022 (the "APA").[1] Pursuant to the Sale Order, the Court "authorized and directed" the "Debtor, Buyer, and each of their respective officers, employees, agents, members, and managers . . . to fully perform under, consummate, execute, and implement" the APA.[2] The Sale closed on November 1, 2022 (the "Closing Date").[3]

On the Closing Date, "all of Debtor's legal, equitable, and beneficial right, title, and interest in and to, and possession of, the Acquired Assets" vested in the Buyer, free and clear of all liens, claims,

---

[1] The APA is attached to the Sale Order as Exhibit A.
[2] *Sale Order* at ¶ 7.
[3] *See* Docket No. 268.

and encumbrances.[4] The Acquired Assets consisted of all of the Debtor's assets as of the Closing Date with the exception of the Excluded Assets (as defined in section 2.3 of the APA).[5] As applicable to the instant Motion, the Acquired Assets included "[a]ll undisputed, bona fide, and current accounts and accounts receivable, including work-in-progress or unbilled amounts, that are not older than ninety (90) days as of the Closing Date, net of any and all credits and disputed amounts (collectively, "Accounts")."[6] The Debtor agreed that, from and after the Closing Date, "in the event it receives any cash or cash equivalents that properly constitute the property of Buyer in accordance with the terms of this Agreement, specifically including any proceeds or collections of the Accounts, such cash or cash equivalents shall be held by Debtor in trust for Buyer, and further shall be accounted for and paid over to Buyer promptly after its receipt."[7]

### B. *The Wrongly Withheld Customer Payments*

Notwithstanding the fact that the Buyer informed the Debtor's former customers (the "Customers") of the Sale and the occurrence of the Closing Date, certain Customers continued to remit payments to the Debtor with respect to Accounts (the "Customer Payments") that were, as of the Closing Date, properly payable to the Buyer. In some instances, the Buyer received a physical check for a Customer Payment that was payable to the Debtor, in which case the Buyer would photocopy the check prior to transmitting to the Debtor so the check could be cashed and the payment remitted to the Buyer. In other cases, a Customer would erroneously make a Customer Payment to the Debtor.

After the Closing Date, the Debtor and the Buyer agreed on a streamlined process to effectuate the reconciliation and remittal of the Customer Payments, as embodied in the APA.[8] Both Debtor's counsel and David Lefkowitz (an estate professional)[9] agreed with the Buyer's outlined process, which included timely transfers of Customer Payments from the Debtor to the Buyer, weekly reporting from the Debtor to the Buyer, and established that that Mr. Lefkowitz was the "point person" for the reconciliation of the Accounts.[10]

---

[4] *Sale Order* at ¶ 11.
[5] *APA* at § 2.1.
[6] *APA* at § 2.1(f).
[7] *APA* at § 8.9.
[8] *Warner Dec.* at ¶ 2.
[9] *See* Docket No. 63.
[10] *Warner Dec.* at ¶ 2.

3

DOCS_DE:241932.1 68785/001
Case: 22-30062   Doc# 328   Filed: 01/12/23   Entered: 01/12/23 14:20:44   Page 3 of 13

On December 5, 2022, the Buyer received an email from Mr. Lefkowitz that attached a report of the Accounts as of that date.[11] Thereafter, the Buyer reconciled that report, along with checks for Customer Payments payable to the Debtor but received by the Buyer, against those Customer Payments that the Buyer had received from the Debtor in accordance with the APA.[12] On December 16, 2022, the Buyer sent an email to the Debtor, noting that the results of its reconciliation (which it attached to the email) was that the Debtor had yet to remit $711,515.35 in Customer Payments to the Buyer. After the Debtor failed to acknowledge receipt, Mr. Chan followed up on December 20, 2022.[13]

On December 22, 2022, the Buyer, following up on the above-referenced email chain, sent an updated reconciliation spreadsheet to the Debtor, which was substantially the same as the prior spreadsheet except for the inclusion of two additional invoices for Customer Payments totaling $5,630.06. Accordingly, the Buyer requested that the Debtor remit payment of $717,145.41 of Customer Payments to the Buyer pursuant to the terms of the APA.[14]

Between mid-December 2022 and early January 2023, the Buyer made numerous efforts to attempt to substantively engage with the Debtor, including through Sergio Reyes and David Lefkowitz, to reiterate the Debtor's obligations to promptly remit hundreds of thousands of dollars in Customer Payments that the Buyer purchased and to continue to provide reporting on the Accounts.[15] And, although the Buyer stood ready to reconcile any amounts that the Debtor believed were not purchased through the APA, the Debtor failed to engage at every turn, instead providing excuses and delay.

After one such attempt to engage with the Debtor on January 5, 2023, the Buyer's Vice President of Finance, Tim Warner, received a text message from Mr. Lefkowitz stating that he was "no longer engaged" by the Debtor and referring the Buyer to Austin Wade to handle the ongoing reconciliation of Customer Payments.[16] Mr. Warner spoke with both Mr. Wade and Debtor's counsel

---

[11] *Id.* at ¶ 3.
[12] *Id.* at ¶ 4.
[13] *Id.* at ¶ 5.
[14] *Id.* at ¶ 6.
[15] *Id.* at ¶ 7.
[16] *Id.* at ¶ 7.

4

Ms. Fineman shortly after receiving this text message and neither was unaware of the apparent termination of Mr. Lefkowitz's engagement nor Mr. Wade's alleged responsibilities with respect to the Customer Payments or the Accounts.[17] As of the date hereof, the Buyer has yet to receive any substantive engagement from the Debtor with respect to the reconciliation and, candidly, is unsure who (if anyone) with or acting on behalf of the Debtor is responsible for reconciling and safeguarding the Customer Payments that belong to the Buyer.

As of the date hereof, the Buyer has not received any of the $717,145.41 in Customer Payments that are the Buyer's property pursuant to the APA and the Sale Order. In both Mr. Lefkowitz's January 5 text message and Mr. Warner's follow up call with Mr. Wade, the Debtor purported to have transferred $230,000 to the Buyer on December 29 or 30, 2022.[18] On January 6, 2023, two of the Buyer's representatives, Ashley Cooper (the Buyer's CEO) and Mr. Warner, participated in a telephone conversation with Mr. Reyes, who stated that the $230,000 was wired but "reversed" from within the Debtor's banking system.[19] Then, on January 9, 2023, Mr. Cooper received a text message from Mr. Reyes, including a screenshot of Mr. Reyes' phone that appears to be from Bank of America's Mobile App. That screenshot shows the reversal of the initial $230,000 wire on January 4, 2023 and a "processing" re-issuance of the same amount. It also shows that the "available balance" in the account is $744.11 after deducting the $230,000 wire.[20] As of the date hereof, the Buyer has not received the $230,000 wire that was allegedly issued.[21]

### III. RELIEF REQUESTED

By this Motion, the Buyer respectfully requests entry of an order, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) compelling the Debtor to immediately transmit the $717,145.41 in Customer Payments to the Buyer; (b) requiring the Debtor to provide to the Buyer, within seven (7) calendar days of the entry of the Order, a full accounting of all money received and spent by the Debtor from and after the Closing Date (the "Accounting"); (c) ordering Debtor's counsel to maintain all Sale proceeds remitted

---

[17] *Id.*
[18] *Warner Dec.* at ¶¶ 7 – 8.
[19] *Id.* at ¶ 8.
[20] *Id.* at ¶ 9.
[21] *Id.*

5

by the Buyer in its trust account until further order of the Court pending the Accounting; (d) awarding the Buyer its fees and expenses incurred in bringing this Motion; and (e) granting related relief.

## IV. BASIS FOR RELIEF REQUESTED

Pursuant to the Sale Order, the Buyer purchased substantially all of the Debtor's assets, free and clear, as of the Closing Date. Thus, on the Closing Date, all of the Acquired Assets became property of the Buyer and ceased to be property of the Debtor's estate.[22] As contemplated by the APA, to the extent that the Debtor received any cash from its former Customers that constituted payments on Accounts purchased by the Buyer, after the Closing Date, such amounts were "held by Debtor in trust for Buyer" and the Debtor was required to pay all such amounts to Buyer "promptly after [their] receipt."[23] The Debtor has failed to do so and, as a result, is now wrongfully in possession of over $700,000 of Customer Payments.

It is well-settled that a "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."[24] Moreover, section 105(a) of the Bankruptcy Code "gives the bankruptcy court the power and the jurisdiction to enforce its valid orders."[25] Further, in the Sale Order, the Court explicitly "retain[ed] retain exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of this Sale Order and the [APA] . . . and decide any issues or disputes concerning this Sale Order and the Agreement or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired Assets."[26]

The Customer Payments, by the express terms of the APA, were and are at all times the Buyer's property being held in trust by the Debtor until forwarded to the Buyer. It is axiomatic that property

---

[22] *See, e.g., In re ICL Holding Co.*, 802 F.3d 547, 556 (3d Cir. 2015) ("Thus, once the sale closed, there was technically no more estate property."); *In re Cresta Tech. Corp.*, Case No. 16-50808 (MEH), 2018 Bankr. LEXIS 1569, at *17 (Bankr. N.D. Cal. May 29, 2018) ("It is undisputed that a sale pursuant to 11 U.S.C. § 363 divests the bankruptcy estate of an interest in property.").
[23] *APA* at § 8.9.
[24] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).
[25] *In re Marcus Hook Dev. Park, Inc.*, 923 F.2d 261, 266 (3d Cir. 1991) (internal quotation omitted). *See also In re McLean Indus.*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("All courts [ ] have inherent contempt power to enforce compliance with their lawful orders. The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order.").
[26] *Sale Order* at ¶ 36.

6

that a debtor holds in trust for a non-debtor is not property of the estate.[27] Thus, Customer Payments made on Accounts acquired by the Buyer were and are not property of the Debtor's estate. And, consistent with the APA, the Debtor is obligated (but has utterly failed) to promptly remit all such amounts to the Buyer. Despite the Buyer's repeated best efforts to collect over $700,000 of Customer Payments from the Debtor, the Buyer has only been met with excuses and delay from Mr. Reyes and Mr. Lefkowitz. Due to the complete lack of transparency (including the lack of any accounting since mid-December), the Buyer is concerned that the Debtor no longer has its money.

Given the foregoing, in addition to ordering the immediate payment of the $717,145.41 in *known* Customer Payments, the Buyer respectfully requests that the Court order (a) an immediate Accounting so that the Buyer can quickly reconcile all Accounts and Customer Payments and (b) a freeze on the proceeds of the Sale currently in Debtor's counsel's trust account pending the completion of the Accounting.

### V.   NOTICE

Notice of this Motion has been provided by email or U.S. first class mail to the Debtor and its counsel and the parties listed on the Master Service List. The Buyer that, in light of the nature of the relief requested, no other or further notice is required.

No prior request for the relief sought in this Motion has been made by the Buyer to this or any other court.

**WHEREFORE**, the Buyer respectfully requests entry of the Order granting the relief requested herein and for such other and further relief as the Court may deem just and appropriate.

Dated:   January 12, 2023                           PACHULSKI STANG ZIEHL & JONES LLP

                                                    By: */s/ Maxim B. Litvak*
                                                        Jeffrey N. Pomerantz
                                                        Maxim B. Litvak
                                                        Steven W. Golden

                                                    Counsel for PalAmerican Security (California) Inc.

---

[27] *See, e.g., Mitsui Mfrs. Bank v. Unicom Computer Corp.* (*In re Unicom Computer Corp.*), 13 F.2d 321, 324 (9th Cir. 1994); *In re Nolan*, 618 B.R. 860, 866-67 (Bankr. C.D. Cal. 2020).

7

Jeffrey N. Pomerantz (CA Bar No. 143717)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (*pro hac vice pending*)
**PACHULSKI STANG ZIEHL & JONES LLP**
One Sansome Street
34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jpomerantz@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Counsel for PalAmerican Security (California) Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PTSS, INC.,<br><br>          Debtor. | Case No. 3:22-bk-30062-HLB<br><br>Chapter 11<br><br>**ORDER ENFORCING THE SALE ORDER** |

Upon the motion (the "Motion"),[1] dated January 12, 2023 of PalAmerican Security (California) Inc. (the "Buyer") in the above-captioned bankruptcy case (the "Bankruptcy Case"), pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, for an order enforcing the Sale Order with respect to the above-captioned debtor and debtor in possession (the "Debtor"), all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the Court having found and determined that notice of the Motion is reasonable and sufficient under the circumstances, and no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtor's estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.        The Motion is granted as provided herein.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

2. Within two (2) business days after entry of this Order, the Debtor is ordered to remit $717,145.41 to the Buyer.

3. Within seven (7) calendar days of the entry of this Order, the Debtor is ordered to transmit to the Buyer a full accounting of all money received and spent by the Debtor from and after the Closing Date (the "<u>Accounting</u>"). Pending the Buyer's receipt and reconciliation of the Accounting, Debtor's counsel is hereby ordered to maintain all Sale proceeds in its trust account until otherwise ordered by the Court.

4. Within seven (7) calendar days of the entry of this Order, the Buyer shall provide the Debtor with an invoice setting forth its attorney's fees and expenses incurred in connection with drafting, filing, and prosecuting the Motion, which amount must be paid by the Debtor to the Buyer within two (2) business days of the Debtor's receipt of such invoice.

5. The Debtor and the Buyer are authorized to take all actions necessary to carry out this Order.

6. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

** END OF ORDER **

Jeffrey N. Pomerantz (CA Bar No. 143717)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (*pro hac vice pending*)
**PACHULSKI STANG ZIEHL & JONES LLP**
One Sansome Street
34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jpomerantz@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Counsel for PalAmerican Security (California) Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PTSS, INC.,<br><br>    Debtor. | Case No. 3:22-bk-30062-HLB<br><br>Chapter 11<br><br>**DECLARATION OF TIM WARNER IN SUPPORT OF BUYER'S MOTION FOR AN ORDER ENFORCING THE SALE ORDER** |

I, Tim Warner, under penalty of perjury pursuant to 28 U.S.C. § 1746, hereby declare and state the following:

1. I am the Vice President of Finance of Paladin Security Group Ltd., the parent company of PalAmerican Security (California) Inc. (the "Buyer"). I submit this declaration (this "Declaration") in support of *Buyer's Motion for an Order Enforcing the Sale Order* (the "Motion"),[1] filed contemporaneously herewith. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and/or information provided to me by employees of or advisors to the Buyer. If called upon to testify, I would testify competently to the facts set forth in this Declaration on that basis.

---

[1] Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Motion.

1

2. On November 17, 2022, I sent an email on behalf of the Buyer to Debtor's counsel (the "November 17 Email") setting forth a proposed streamlined true-up process for money that the Debtor was collecting post-Closing Date on Accounts that were acquired by the Buyer pursuant to the Sale Order. A true and correct copy of the November 17 Email is attached hereto as **Exhibit 1**. Both Debtor's counsel and David Lefkowitz agreed with the outlined process, which included timely transfers of Customer Payments from the Debtor to the Buyer and weekly reporting from the Debtor to the Buyer. On November 30, 2022, Debtor's counsel confirmed by email (the "November 30 Email"), consistent with the parties' agreement set forth in the November 17 Email and the replies thereto, that Mr. Lefkowitz was the "point person" for the reconciliation of the Accounts. A true and correct copy of the November 30 Email is attached hereto as **Exhibit 2**.

3. On December 5, 2022, the Buyer received an email from Mr. Lefkowitz that attached what I understood to be the agreed-to Accounts report as of that date (together, the "December 5 Email"). A true and correct copy of the December 5 Email is attached hereto as **Exhibit 3**.

4. On December 13 and 14, 2022, the Buyer received a number of checks payable to the Debtor. Upon receipt, an employee of the Buyer scanned each check before transmitting to the Debtor to cash and remit those amounts to the Buyer that were Customer Payments relating to acquired Accounts. A true and correct copy of certain[2] of these checks is attached hereto as **Exhibit 4** (the "Customer Checks").

5. On December 16, 2022, Justin Chan, the Buyer's former Financial Controller, sent an email with attachment to the Debtor (the "December 16 Email"), noting that the Buyer had reconciled the information contained in the December 5 Email and the Customer Checks against payments made by the Debtor to the Buyer and discovered that the Debtor had yet to remit $711,515.35 to the Buyer. After the Debtor failed to acknowledge receipt, Mr. Chan followed up on the December 16 Email on December 20, 2022. I was copied on both e-mails.

6. On December 22, 2022, Mr. Chan sent an email with an attachment (collectively, the "December 22 Email") to the Debtor on the same email chain as the December 16 Email and the

---

[2] The Debtor did properly remit Customer Payments to the Buyer associated with some, but not all, of these checks. The check copies attached hereto as **Exhibit 2** are those that the Debtor did not remit to the Buyer.

subsequent follow-ups.  A true and correct copy of the December 22 Email is attached hereto as **Exhibit 5**.[3]  The attachment to the December 22 Email is substantially the same as that attached to the December 16 Email, except that the December 22 Email includes two additional invoices for Customer Payments totaling $5,630.06.  Accordingly, by the December 22 Email, the Buyer requested that the Debtor remit payment of $717,145.41 of Customer Payments to the Buyer pursuant to the terms of the APA.

7. Between mid-December 2022 and early January 2023, I attempted to engage with the Debtor, including through Sergio Reyes and David Lefkowitz, to reiterate the Debtor's obligations to promptly remit hundreds of thousands of dollars in Customer Payments that the Buyer purchased and to continue to provide reporting on the Accounts.[4]  On January 5, 2023, I received the following text message from Mr. Lefkowitz:

> Hi Tim, thanks for your message. I can report that $230,000 was wired last week, and also that I am no longer engaged by PTSS , Inc. I can refer you to Austin Wade CPA, who is handling the Debtors accounting. Sending his contact details in separate text message.

I spoke with both Mr. Wade and Debtor's counsel Ms. Fineman shortly after receiving this text message and neither was unaware of the termination of Mr. Lefkowitz's engagement nor Mr. Wade's alleged responsibilities with respect to the Customer Payments or the Accounts.

8. On January 5, 2023, I spoke with Mr. Wade, who stated that he understood that $230,000 was wired by the Debtor to the Buyer on December 29 or 30, 2022.  The following day, I participated on a telephone conversation with Mr. Reyes and Ashley Cooper, the Buyer's CEO, on which call Mr. Reyes stated that the $230,000 was wired but "reversed" from within the Debtor's banking system.

9. On January 9, 2023, I received a text message from Mr. Cooper, consisting of a screenshot of Mr. Reyes' phone that Mr. Reyes texted to Mr. Cooper.  The screenshot, which appears

---

[3] The email chain attached hereto as **Exhibit 3** also includes the December 16 Email.
[4] *See, e.g.,* **Exhibit 6** attached hereto.

3

to be from Bank of America's Mobile App, indicates the reversal of the initial $230,000 wire on January 4, 2023 and a "processing" re-issuance of the same amount. As of the date hereof, the Buyer has not received the $230,000 wire that was allegedly issued.



Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 12, 2023

*/s/ Tim Warner*
Tim Warner

4