Stephen D. Finestone (125675)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Counsel for Debtor PTSS, Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 22-30062 |
| PTSS, Inc. (fka Professional Technical Security Services, Inc.), a Delaware corporation, | Chapter 11 |
| | **DEBTOR'S OPPOSITION TO BUYER'S MOTION FOR AN ORDER ENFORCING THE SALE ORDER** |
| Debtor. | |
| | Scheduled Hearing:<br>Date: February 9, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. Hannah L. Blumenstiel |
| | **Remote appearances only.** |
| | *Please check www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19* |

On January 12, 2023, PalAmerican Security (California) Inc. ("Buyer") filed *Buyer's Motion for an Order Enforcing the Sale Order* (the "Motion") [ECF No. 328]. Debtor PTSS, Inc. ("Debtor") hereby opposes the Motion (the "Opposition") for the reasons set forth below and in the supporting declaration by Sergio Reyes, Jr. (the "Reyes Decl."), filed concurrently herewith.

## I. BACKGROUND AND ADDITIONAL FACTS

The Motion arises from the efforts between Debtor and Buyer to reconcile payments on outstanding accounts receivable after the Closing Date.[1] Under the APA, Buyer designated which accounts it would acquire—the "Acquired A/R"—and any accounts or portions thereof not taken by Buyer remained with Debtor—the "Retained A/R." The purchase price under the APA included a dollar-for-dollar payment by Buyer for the value of all Acquired A/R.

The primary, though not only, requirement of Acquired A/R under the APA is that it not be older than 90 days as of the Closing Date. The Closing Date was November 1, 2022. However, the precise billings that fall within the 90-day cutoff could not be determined until after the Closing Date. The final billings to customers continued to accrue until the moment of closing, with Debtor's final payrolls capturing employee time through the evening of October 31, 2022. The precise allocation of accounts between Acquired A/R and Retained A/R was not completed until November 30, 2022, when the parties reached an agreement as to the "True Up" amount owing to Debtor under the APA. Reyes Decl., ¶3. This inevitable delay in capturing the cut-off for accruals as of the Closing Date was only one of the many challenges in the reconciliation of accounts between Buyer and Debtor.

The next complication, as noted in the Motion itself, was that far more payments were routed to Debtor than either party anticipated. Buyer advised continuing customers, in the time between the entry of the Sale Order and the Closing Date, to direct future payments to Buyer. Motion at 3:12-15. The cooperation clause in the APA, meant to address an occasional error in remittance, suddenly became a considerably larger burden on Debtor. At this same time, Debtor no longer had any employees to process such payments. The bulk of the remittances came in the beginning of each month—right around the Closing Date and before the True Up was complete.

Buyer made several demands for the turnover of Customer Payments. While Debtor tried to review and reconcile the payments against the Acquired A/R and Retained A/R lists as quickly as possible, this process was also complicated by another component to the APA. To the extent

---

[1] Capitalized terms not defined herein have the same meaning attributed in the Motion.

that payments attributable to Retained A/R have come in but are on Customer Accounts acquired by Buyer, the funds are to be remitted to Buyer, under the terms of the APA, until the Acquired A/R is brought current. Only after Buyer has been paid in full for the balance of Acquired A/R on such an account does any overage get returned to Debtor as the Retained A/R portion. Reyes Decl., ¶ 16.

In a good faith effort to respond to Buyer's demands for turnover of Customer Payments, Debtor remitted $975,904.64 to Buyer on November 22, 2022. Reyes Decl., ¶ 8. This was before the True Up was even finalized. Reyes Decl., ¶ 3. Debtor remitted another $564,231.49 on December 1, 2022. *Id.* at ¶ 9.

On December 16, 2022, Buyer requested Debtor remit an additional $711,515.35.[2] Reyes Decl., ¶ 10. However, Debtor only had approximately $230,000 remaining in its bank accounts. *Id.* at ¶ 11. Debtor attempted to remit $230,000 to Buyer on both December 29, 2022 and January 9, 2023, but the transfers did not go through successfully. *Id.* The day after the Motion was filed, Debtor obtained a cashier's check in the amount of $230,000 and delivered it to Buyer's employee. *Id.* at ¶¶ 13-14.

## II. LEGAL ARGUMENTS

The Motion seeks three types of relief. First, the Motion asks for an order directing Debtor to remit $717,145.41 to Buyer within two business days of entry of the order. As set forth above, Debtor has already remitted an additional $230,000 toward this amount on January 13, 2023. Debtor does not have any other funds available in its bank accounts. As such, Debtor does not have funds to turnover.

Second, the Motion asks that the Debtor be required to provide to Buyer "a full accounting of all money received and spent by the Debtor from and after the Closing Date." Debtor's November and December Monthly Operating Reports provide such an accounting. To the extent that Buyer wants a more extensive accounting, reconciling payments received and their application to the Acquired A/R and Retained A/R balances, it is inappropriate to require any such

---

[2] This amount was subsequently increased to $717,145.41 shortly thereafter.

accounting within the requested timeframe. The Court has issued an Order to Show Cause [ECF No. 325] directing Debtor to appear and show cause why this case should not be converted, dismissed or a Chapter 11 Trustee appointed. In response, *Debtor's Statement of Nonopposition to Conversion to Chapter 7* [ECF No. 349] was filed on January 20, 2022. The Order to Show Cause will be heard concurrently with the Motion. In light thereof, any reconciliation of accounts going forward will be through a yet-to-be appointed trustee. For both of these reasons, the relief of an ordered accounting should be denied and Buyer should be directed to work with the trustee upon appointment to try to resolve any accounting issues.

Finally, the Motion asks that Buyer be awarded its attorneys fees and costs incurred in bringing this Motion. There is no attorneys fees provision in the APA and no authority is cited in the Motion for such an award.

## III. CONCLUSION

For the above-stated reasons, Debtor respectfully requests that the Court deny the Motion.

Dated: January 24, 2023                    FINESTONE HAYES LLP

By: */s/ Stephen D. Finestone*
    Stephen D. Finestone
    Counsel for Debtor PTSS, Inc.