Stephen D. Finestone (125675)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Counsel for Debtor PTSS, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 22-30062 |
| PTSS, Inc. (fka Professional Technical Security Services, Inc.), a Delaware corporation, | Chapter 11 |
| Debtor. | **DECLARATION OF SERGIO REYES, JR. IN REPSONSE TO BUYER'S MOTION FOR AN ORDER ENFORCING THE SALE ORDER** |

I, Sergio Reyes, Jr., declare as follows:

1. I am the Chief Executive Officer and designated Responsible Individual of PTSS, Inc. ("Debtor"). Except as otherwise indicated herein, the facts set forth in this declaration are based upon my personal knowledge and my review of relevant documents. If called upon to testify, I could and would competently testify to the facts set forth in this declaration.

2. This declaration is submitted in response to *Buyer's Motion for an Order Enforcing the Sale Order* (the "Motion") [ECF No. 328].

3. Under the APA,[1] the value of the accounts receivable and work-in-progress on customer accounts acquired by Buyer totaled $2,870,639.58 (the "Acquired A/R"). Any balance

---
[1] Capitalized terms not defined in this declaration have the meanings designated in the Motion.

older than 90-days, as of the time of closing, remained with Debtor as well as certain terminated customer accounts (the "Retained A/R"). The value of the Retained A/R as of closing totaled $424,531.54. However, these balances were not finalized between Debtor and Buyer until November 30, 2022, when the parties reached an agreement as to the "True-Up" amount owing by Debtor under the APA.

4. The closing on the APA happened on November 1, 2022 (the "Closing").

5. The Closing occurred on a Tuesday. The final payroll to Debtor's employees was made on the Thursday and Friday of that same week. The amounts paid to employees for November for payroll totaled $1,165,739.52 ($890,617.59 for Guards and $275,121.93 for Managers). *See* Notes to November 2022 Monthly Operating Report [ECF No. 311].

6. As of November 1, 2022, Debtor's bank accounts had a cash balance of $1,253,887. *See* November Monthly Operating Report [ECF No. 310].

7. After the Closing, some Customer Payments which should have been directed to Buyer were instead remitted to Debtor, as noted in the Motion. The APA contemplated that such payments could occur and provided that Debtor and Buyer would cooperate after Closing to remit funds to the appropriate party.

8. On or about November 22, 2022, Debtor remitted $975,904.64 in Customer Payments to Buyer.

9. On or about December 1, 2022, Debtor remitted an additional $564,231.49 in Customer Payments to Buyer.

10. On December 16, 2022, Buyer requested Debtor remit an additional $711,515.35 in Customer Payments.

11. When I returned from my holiday vacation, I prepared to remit the payment to Buyer. However, Debtor only had approximately $230,000 in its bank accounts at that time. Any other amounts collected by Debtor, and not already remitted to Buyer, were used for final employment expenses, including severance payroll, payroll taxes, union dues, health insurance premiums, and other employee costs. On December 29, 2022 and on January 9, 2023, I initiated a

1 transfer of $230,000 to Buyer, and each time the funds were returned to Debtor's account with
2 Bank of America ending in 2808.

3     12. The Motion was filed on January 12, 2023.

4     13. On January 13, 2023, I obtained a cashier's check from Bank of America in the
5 amount of $230,000 and made payable to Pal American USA (the "Cashier's Check"). The funds
6 for the Cashier's Check were from funds in Debtor's account with Bank of America ending in
7 2808.

8     14. I hand delivered the Cashier's Check to Dino Dimov, a former employee of the
9 Debtor and current employee of Buyer.

10     15. Although Debtor still has roughly $400,000 in Retained A/R, Debtor has no
11 employees to pursue those collections. The former Debtor employees who historically collected
12 A/R were terminated and not hired by Buyer to continue their collection activities.

13     16. Further, to the extent that payments attributable to Retained A/R have come in but
14 are on Customer Accounts acquired by Buyer, the funds are to be remitted to Buyer, under the
15 terms of the APA, until the Acquired A/R is brought current. Only after Buyer has been paid in
16 full for the balance of Acquired A/R on such an account does any overage get returned to Debtor
17 as the Retained A/R portion.

18     17. On or about December 15, 2022, Debtor's QuickBooks file became corrupted and
19 was unable to generate reports on customers. The customer lists, Sales records, and A/R balances
20 could not be produced. Austin Wade of Bachecki, Crom & Co., LLP was subsequently able
21 recreate usable accounting records from a previous backup, for use in preparing the Debtor's
22 Monthly Operating Reports.

23     18. Debtor terminated the employment of Brickell Avenue Consulting LLC, Debtor's
24 acting Controller, in December 2022.

25     I declare under penalty of perjury that the foregoing is true and correct. Executed this 23
26 day of January 2023 in San Francisco, California.

27

28                         Sergio Reyes, Jr.

*Sergio REYES (Jan 24, 2023 09:57 PST)*