Jeffrey N. Pomerantz (CA Bar No. 143717)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (*pro hac vice pending*)
**PACHULSKI STANG ZIEHL & JONES LLP**
One Sansome Street
34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jpomerantz@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Counsel for PalAmerican Security (California) Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PTSS, INC.,<br><br>　　　　Debtor. | Case No. 3:22-bk-30062-HLB<br><br>Chapter 11<br><br>**DECLARATION OF TIM WARNER IN SUPPORT OF BUYER'S MOTION FOR AN ORDER ENFORCING THE SALE ORDER** |

I, Tim Warner, under penalty of perjury pursuant to 28 U.S.C. § 1746, hereby declare and state the following:

1. I am the Vice President of Finance of Paladin Security Group Ltd., the parent company of PalAmerican Security (California) Inc. (the "Buyer"). I submit this declaration (this "Declaration") in support of *Buyer's Motion for an Order Enforcing the Sale Order* (the "Motion"),[1] filed contemporaneously herewith. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and/or information provided to me by employees of or advisors to the Buyer. If called upon to testify, I would testify competently to the facts set forth in this Declaration on that basis.

---

[1] Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Motion.

2. On November 17, 2022, I sent an email on behalf of the Buyer to Debtor's counsel (the "November 17 Email") setting forth a proposed streamlined true-up process for money that the Debtor was collecting post-Closing Date on Accounts that were acquired by the Buyer pursuant to the Sale Order. A true and correct copy of the November 17 Email is attached hereto as **Exhibit 1**. Both Debtor's counsel and David Lefkowitz agreed with the outlined process, which included timely transfers of Customer Payments from the Debtor to the Buyer and weekly reporting from the Debtor to the Buyer. On November 30, 2022, Debtor's counsel confirmed by email (the "November 30 Email"), consistent with the parties' agreement set forth in the November 17 Email and the replies thereto, that Mr. Lefkowitz was the "point person" for the reconciliation of the Accounts. A true and correct copy of the November 30 Email is attached hereto as **Exhibit 2**.

3. On December 5, 2022, the Buyer received an email from Mr. Lefkowitz that attached what I understood to be the agreed-to Accounts report as of that date (together, the "December 5 Email"). A true and correct copy of the December 5 Email is attached hereto as **Exhibit 3**.

4. On December 13 and 14, 2022, the Buyer received a number of checks payable to the Debtor. Upon receipt, an employee of the Buyer scanned each check before transmitting to the Debtor to cash and remit those amounts to the Buyer that were Customer Payments relating to acquired Accounts. A true and correct copy of certain[2] of these checks is attached hereto as **Exhibit 4** (the "Customer Checks").

5. On December 16, 2022, Justin Chan, the Buyer's former Financial Controller, sent an email with attachment to the Debtor (the "December 16 Email"), noting that the Buyer had reconciled the information contained in the December 5 Email and the Customer Checks against payments made by the Debtor to the Buyer and discovered that the Debtor had yet to remit $711,515.35 to the Buyer. After the Debtor failed to acknowledge receipt, Mr. Chan followed up on the December 16 Email on December 20, 2022. I was copied on both e-mails.

6. On December 22, 2022, Mr. Chan sent an email with an attachment (collectively, the "December 22 Email") to the Debtor on the same email chain as the December 16 Email and the

---

[2] The Debtor did properly remit Customer Payments to the Buyer associated with some, but not all, of these checks. The check copies attached hereto as **Exhibit 2** are those that the Debtor did not remit to the Buyer.

subsequent follow-ups.  A true and correct copy of the December 22 Email is attached hereto as **Exhibit 5**.[3]  The attachment to the December 22 Email is substantially the same as that attached to the December 16 Email, except that the December 22 Email includes two additional invoices for Customer Payments totaling $5,630.06.  Accordingly, by the December 22 Email, the Buyer requested that the Debtor remit payment of $717,145.41 of Customer Payments to the Buyer pursuant to the terms of the APA.

7. Between mid-December 2022 and early January 2023, I attempted to engage with the Debtor, including through Sergio Reyes and David Lefkowitz, to reiterate the Debtor's obligations to promptly remit hundreds of thousands of dollars in Customer Payments that the Buyer purchased and to continue to provide reporting on the Accounts.[4]  On January 5, 2023, I received the following text message from Mr. Lefkowitz:

> Hi Tim, thanks for your message. I can report that $230,000 was wired last week, and also that I am no longer engaged by PTSS , Inc. I can refer you to Austin Wade CPA, who is handling the Debtors accounting. Sending his contact details in separate text message.

I spoke with both Mr. Wade and Debtor's counsel Ms. Fineman shortly after receiving this text message and neither was unaware of the termination of Mr. Lefkowitz's engagement nor Mr. Wade's alleged responsibilities with respect to the Customer Payments or the Accounts.

8. On January 5, 2023, I spoke with Mr. Wade, who stated that he understood that $230,000 was wired by the Debtor to the Buyer on December 29 or 30, 2022.  The following day, I participated on a telephone conversation with Mr. Reyes and Ashley Cooper, the Buyer's CEO, on which call Mr. Reyes stated that the $230,000 was wired but "reversed" from within the Debtor's banking system.

9. On January 9, 2023, I received a text message from Mr. Cooper, consisting of a screenshot of Mr. Reyes' phone that Mr. Reyes texted to Mr. Cooper.  The screenshot, which appears

---

[3] The email chain attached hereto as **Exhibit 3** also includes the December 16 Email.
[4] *See, e.g.,* **Exhibit 6** attached hereto.

to be from Bank of America's Mobile App, indicates the reversal of the initial $230,000 wire on January 4, 2023 and a "processing" re-issuance of the same amount. As of the date hereof, the Buyer has not received the $230,000 wire that was allegedly issued.



Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 12, 2023

/s/ Tim Warner
Tim Warner

4