Jeffrey N. Pomerantz (CA Bar No. 143717)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (admitted *pro hac vice*)
**PACHULSKI STANG ZIEHL & JONES LLP**
One Sansome Street
34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jpomerantz@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Counsel for PalAmerican Security (California) Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PTSS, INC.,<br><br>Debtor. | Case No. 3:22-bk-30062-HLB<br><br>Chapter 11<br><br>**REPLY IN SUPPORT OF BUYER'S MOTION FOR AN ORDER ENFORCING THE SALE ORDER**<br><br>**[Re Docket Nos. 328 AND 355**<br><br>Date: February 9, 2023<br>Time: 10:00 a.m. (Pacific Time)<br>Place: via Zoom<br>Judge: Honorable Hannah L. Blumenstiel |

PalAmerican Security (California) Inc. (the "Buyer") hereby replies (this "Reply") to the objection [Docket No. 355] (the "Objection") filed on January 24, 2023 by the above-captioned debtor and debtor in possession (the "Debtor") to *Buyer's Motion for an Order Enforcing the Sale Order* [Docket No. 328] (the "Motion").[1] In support of the Motion and this Reply, the Buyer submits the *Supplemental Declaration of Tim Warner* (the "Supplemental Warner Dec."), filed contemporaneously herewith and, in further support thereof, respectfully states as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

## I. INTRODUCTION

In the Objection, the Debtor does not dispute that the Customer Payments were at all times the Buyer's property held in trust by the Debtor until forwarded to the Buyer in accordance with the APA, nor does the Debtor dispute that the Customer Payments made on Accounts that the Buyer acquired are not (and have never been) property of the Debtor's estate. The Debtor also does not dispute that, as of the date the Motion was filed, the amount of Customer Payments received by the Debtor on account of the Accounts purchased by, but that had not been remitted to, the Buyer ("Withheld Customer Payments") was $717,145.41. Instead, the Debtor argues that the Court should deny the Motion because (a) the Debtor has no more money[2] and (b) the Debtor's November and December Monthly Operating Reports provide "a full accounting of all money received and spent by the Debtor from and after the Closing Date" and "it is inappropriate to require [the Accounting] within the requested timeframe."[3]

As set forth below, the Debtor's Objection raises even more serious issues with the Debtor's conduct and does not constitute a viable defense to the Motion. Accordingly, the Debtor should be ordered to immediately remit $594,138.73,[4] the currently-known amount of outstanding Withheld Customer Payments, to the Buyer, if necessary from the ample cash from the Sale proceeds paid by the Buyer that remain in the trust account of Debtor's counsel. In terms of the final Accounting, recognizing that the Court is likely to convert the Debtor's bankruptcy case to a chapter 7 proceeding, the Buyer is agreeable to setting a further hearing on the Motion at a later date provided that (a) the Debtor (or any successor trustee) is prohibited from any further disbursal of any funds pending a final order of this Court (except for the immediate distribution to the Buyer requested herein), and (b) all appropriate parties (whether the Debtor or a trustee) are directed to expediently work with the Buyer to complete the Accounting.

---

[2] *See, e.g.,* Objection at 3:20.

[3] *Id.* at 3:22 – 24; 3:26 – 4:1.

[4] As noted in the Objection and the Supplemental Warner Dec., after the Buyer filed the Motion, the Debtor delivered a $230,000 cashier's check to the Buyer. In addition, as noted in the Supplemental Warner Dec., on January 27, 2023, the Buyer informed the Debtor of an additional $106,993.32 in Customer Payments that were deposited by the Debtor but not remitted to the Buyer. Accordingly, as of the date hereof, the amount of the Withheld Customer Payments is $594,138.73.

## II. REPLY

The Debtor's two[5] arguments in opposition to the Motion lack merit. First, the Debtor states that "Debtor does not have any other funds available in its bank accounts" and therefore "does not have funds to turnover."[6] While the Debtor represents that its own bank accounts are basically empty, the majority of the Purchase Price (as defined in the APA) that the Buyer transmitted to the Debtor is currently held, as confirmed by the Debtor's counsel, in the trust account of such counsel.[7]

Notably, the Debtor does not deny that it collected Customer Payments for Accounts purchased by the Buyer and did not remit such payments to the Buyer as required to do pursuant to the APA (*i.e.* the Withheld Customer Payments). The Debtor also does not deny that, as of the date the Motion was filed, the amount of the Withheld Customer Payments was $717,145.41; indeed, Mr. Reyes seems to imply that he agreed with the amount of Withheld Customer Payments calculated by the Buyer.[8] Finally, the Debtor does not deny that the Customer Payments were, pursuant to the APA, held by the Debtor in express trust for the benefit of Buyer and were thus not property of the estate.[9]

Instead—in an extremely troubling admission[10]—Mr. Reyes states that "[a]ny other amounts collected by Debtor, and not already remitted to Buyer, were used for final employment expenses, including severance payroll, payroll taxes, union dues, health insurance premiums, and other employee costs,"[11] none of which was previously disclosed to (or permitted by) the Buyer. Moreover, as the

---

[5] The Debtor also notes that the Buyer requested an award of its attorney's fees and expenses in the Motion. The Buyer reserves all rights to seek such relief but focuses this Reply on the core relief it seeks—enforcement of the Sale Order and APA.

[6] Objection at 3:20 – 21.

[7] *See* Sale Order at ¶ 9.

[8] *See Declaration of Sergio Reyes, Jr. in Response to Buyer's Motion for an Order Enforcing the Sale Order* [Docket No. 356] (the "Reyes Dec.") at ¶¶ 10, 11 ("When I returned from my holiday vacation, I prepared to remit the payment to Buyer."). Evidently, the only reason that the Debtor did not attempt to pay the Buyer the full amount of the Withheld Customer Payments was due to the lack of funds in the Debtor's bank account.

[9] *See generally Braud v. Stokes*, 142 B.R. 908, 910 (Bankr. N.D. Cal. 1992) ("The essential elements of an express trust are: '1) sufficient words to create a trust; 2) a definite subject; and 3) a certain and ascertained object or res. The intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust.'") (quoting *In re Thornton*, 544 F.2d 1005, 1007 (9th Cir. 1976)).

[10] "Any diversion of funds held in trust constitutes embezzlement whether there is direct personal benefit or not as long as the owner is deprived of his money." *People v. Pierce*, 110 Cal.App.2d 598, 609 (2d App. Div. 1952).

[11] Reyes Dec. at ¶ 11.

3

Debtor necessarily admits,[12] all but $1.1 million of the Purchase Price paid by the Buyer was calculated as "the dollar-for-dollar value of the Accounts as of the Closing Date"[13] as provided by section 2.1(f) of the APA. Thus, contrary to both the APA and common sense, the Buyer has paid at least $594,138.73 (the Withheld Customer Payments) to the Debtor for an Acquired Asset (certain Accounts) that the Debtor has apparently re-appropriated for itself. Fortunately, as noted above, the majority of the Sale proceeds paid by the Buyer to the Debtor remain in the trust account of Debtor's counsel. The Debtor should be ordered to immediately utilize such funds, if necessary due to the lack of funds in the Debtor's own bank accounts, to pay the Buyer the currently-known Withheld Customer Payments in the amount of $594,138.73.

Second, the Debtor opposes the Accounting (*i.e.* "a full accounting of all money received and spent by the Debtor from and after the Closing Date"[14]) requested by the Buyer "so that the Buyer can quickly reconcile all Accounts and Customer Payments."[15] The Debtor incorrectly asserts that the November and December Monthly Operating Reports fulfill this request.[16] While certain specific Customer Payments to the Debtor can be identified on the November MOR and December MOR,[17] the vast majority—identified only as a "deposit"—cannot. Similarly, while certain specific payments made by the Debtor can be identified, like the November 22[18] and December 1, 2022[19] transfers on account of certain Customer Payments to the Buyer, most others cannot.[20] Therefore, by just

---

[12] Objection at 2:5 – 6.

[13] APA § 3.1.

[14] Motion, at 5:24 – 25.

[15] *Id.* at 7:10.

[16] Objection at 3:24. The "November MOR" may be found at Docket Nos. 310 and 311 and the "December MOR" may be found at Docket Nos. 350 and 351.

[17] *See, e.g.*, Notes to November MOR [Docket No. 311] at p. 10 of 41 (identifying three electronic transfers from an identified Customer to the Debtor on November 18, 2022).

[18] *See* Notes to November MOR [Docket No. 311] at p. 14 of 41.

[19] *See* Notes to December MOR [Docket No. 351] at p. 12 of 30.

[20] For example, and without limitation, a review of the Notes to November MOR [Docket No. 311] reveal approximately $900 in payments made to Toyota (p. 10 of 41); $127,172.06 (p. 14 of 41), $973,030.60 (pp. 16 – 23), $12,450.63 (p. 26 of 41), and $197,603.30 (pp. 27 – 28 of 41) in checks to unidentified payees; and $32,760.57 in payments to an identified insider, GAB Holdings, Inc. (p. 8 of 41). Similarly, a review of the Notes to December MOR [Docket No. 351] reveal a $15,000 payment to Mr. Reyes (p. 8 of 30); a $16,174.25 withdrawal (p. 13 of 30); and $82,733.60 (p. 13 of 30), $34,628.49 (p. 15 of 30), and $19,743.91 (p. 18 of 30) in checks to unidentified payees. The Buyer has no insight into the nature or propriety of these payments, nor the source of money used to make them.

reviewing the November MOR and December MOR, no party (including the Buyer) can determine the Customer Payments that were received and/or processed by the Debtor after the Closing Date or the specific disposition (including remittance to the Buyer) of those Customer Payments.

The Debtor further states that if the Buyer "wants a more extensive accounting, reconciling payments received and their application to the Acquired A/R and Retained A/R balances, it is inappropriate to require any such accounting within the requested timeframe."[21] The Buyer does not merely "want" such accounting—it is required by the terms of the APA and no consensual reconciliation can be accomplished without the Debtor's participation.[22] The Debtor need not create a new reconciliation out of whole cloth; in the attachments to the December 15 Email and December 22 Email, the Buyer *already sent the Debtor a reconciliation* derived from the Debtor's own records that it provided to the Buyer and repeatedly invited the Debtor to discuss any disagreements it may have had with the calculation.[23] It was only after weeks of delay that the Buyer was compelled to file the Motion to request that the Court enforce the Debtor's obligations under the Sale Order and APA. Since then, the Debtor could have (but has not) engaged with the Buyer to review and discuss the detailed reconciliation spreadsheet that it has now had for over a month, which would have avoided the need for Court intervention and further delay occasioned by the appointment of a chapter 7 trustee.[24]

The Buyer has—at every turn—attempted to work with the Debtor in good faith, only to be met with delay and excuses. Now, on the cusp on the likely appointment of a chapter 7 trustee, the Buyer is agreeable to a continuance of the final hearing on the Motion until the Accounting can be completed by all appropriate parties. In the interim, the Buyer requests that (a) the Debtor (or any successor trustee) be prohibited from any further disbursal of any funds pending a final order of this Court (except for the immediate payment of $594,138.73 to the Buyer requested herein), and (b) all

---

[21] Objection, at 3:24 - 4:1.

[22] *See* APA § 9.4.

[23] *See* Exhibit 5 to Warner Dec.

[24] For the avoidance of doubt, any chapter 7 trustee is bound by the terms of the Sale Order and the APA. Sale Order at ¶ 15.

appropriate parties (whether the Debtor or a trustee) be directed to expediently work with the Buyer to complete the Accounting.

**WHEREFORE**, the Buyer respectfully requests entry of the Order granting the relief requested in the Motion (as modified herein) and for such other and further relief as the Court may deem just and appropriate.

Dated: February 1, 2023

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Maxim B. Litvak*
Jeffrey N. Pomerantz
Maxim B. Litvak
Steven W. Golden

Counsel for PalAmerican Security (California) Inc.